1  Douglas R. Young (State Bar No. 073248)
   Roderick M. Thompson (State Bar No. 96192)
2  Jessica K. Nall (State Bar No. 215149)
   Andrew W. Ingersoll (State Bar No. 221348)
3  Farella Braun & Martel LLP
   235 Montgomery Street, 17th Floor
4  San Francisco, CA  94104
   Telephone:  (415) 954-4400
5  Facsimile:  (415) 954-4480
   dyoung@fbm.com
6  rthompson@fbm.com
   jnall@fbm.com
7  aingersoll@fbm.com

8  Attorneys for Defendant
   RANDALL WULFF

9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13  MANI SUBRAMANIAN, as an individual      Case No. 08-cv-1426-VRW
    and citizen of Washington, and as a derivative
14  action plaintiff,                       **REQUEST FOR JUDICIAL NOTICE IN
                                            SUPPORT OF DEFENDANT RANDALL
15              Plaintiff,                   WULFF'S MOTIONS TO DISMISS OR, IN
                                            THE ALTERNATIVE, FOR SUMMARY
16        vs.                               JUDGMENT AND/OR  TO STRIKE
                                            COMPLAINT**
17  ST. PAUL FIRE AND MARINE
    INSURANCE COMPANY, a Minnesota          Date:      October 9, 2008
18  Corporation, and QAD INC., a Delaware   Time:      2:30 p.m.
    Corporation with principal place of business   Dept:      Courtroom 6
19  in California, and ARTHUR ANDERSEN      Judge:     Hon. Vaughn R. Walker
    LLP, a limited liability partnership
20  headquartered in Chicago, Illinois, and
    ANDERSEN WORLDWIDE SC, a Societe
21  Cooperative headquartered in Geneva,
    Switzerland, and JOHN DOORDAN, an
22  individual and citizen of California, and
    LAIFOON LEE, an individual and Citizen of
23  California, and ROLAND DESILETS, an
    individual and citizen of New Jersey, and
24  WILLIAM D. CONNELL, an individual an
    citizen of California, and GREENAN
25  PFEFFER, SALLANDER and LALLY LLP,
    a limited liability partnership headquartered
26  in California, and RANDALL WULFF, an
    individual and citizen of California, and
27  DOES 1-50,

28              Defendants.

REQUEST FOR JUDICIAL NOTICE I/S/O
WULFF'S MOTIONS TO DISMISS, ETC.
Case No. 08-cv-1426-VRW

23109\1645718.1

1    Pursuant to Federal Rule of Evidence 201, Defendant Randall Wulff ("Mr. Wulff")

2    respectfully requests that the Court, in considering Mr. Wulff's Motion to Dismiss the First

3    Amended Complaint, take judicial notice of the following documents:

4

5    A.  Dismissal Order in the matter *Vedatech, Inc., Vedatech KK, Mani Subramanian v.*

6    *St. Paul Fire & Marine Insurance Co., QAD Inc, QAD Japan KK, Randall Wulff*,

7    Nos. 04-1249, 04-1813, 04-1403 (U.S.D.C., Northern Dist.), dated June 22, 2005,

8    a true and correct copy of the which is attached as Exhibit A.

9    B.  Order affirming the District Court order in the matter *St. Paul Fire & Marine*

10    *Insurance Company and United States Fidelity and Guaranty Company v.*

11    *Vedatech International, Inc. et al.*, No. 05-16255 (9th Cir.), dated July 19, 2007, a

12    true and correct copy of the which is attached as Exhibit B.

13    C.  Plaintiff's First Amended Complaint in *Vedatech Inc., Vedatech K.K.,*

14    *Subramanian v. St. Paul Fire & Marine Insurance Company, United States*

15    *Fidelity and Guaranty Company, QAD Inc., QAD Japan K.K. and Randall Wulff*,

16    No. C-04-01249 (U.S.D.C., Northern Dist.), dated June 15, 2004, including

17    Exhibit A thereto, a true and correct copy of the which is attached as Exhibit C.

18    D.  Stipulation and Order regarding Mediation in the matter *St. Paul Fire & Marine*

19    *Insurance Company v. Vedatech International, Inc.*, No. CV-771638  (Cal Super.

20    Ct., Santa Clara County), dated March 4, 2004, a true and correct copy of the

21    which is attached as Exhibit D.

22    E.  Decree of Judgment in the matters *St. Paul Fire & Marine Insurance Company et*

23    *al. v. Vedatech International Inc.*, et al., No. 05-16255 and No. 05-16261 (9th Cir.)

24    and *Vedatech, Inc. v. St. Paul Fire & Marine Insurance*, No. 05-16405, dated July

25    19, 2007, a true and correct copy of the which is attached as Exhibit E.

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REQUEST FOR JUDICIAL NOTICE I/S/O
WULFF'S MOTIONS TO DISMISS, ETC.          - 2 -                    23109\1645718.1
Case No. 08-cv-1426-VRW

1    Pursuant to Fed. R. Evid. 201, the Court can take judicial notice of the contents of court

2  files such as exhibits A-E hereto.  *See, e.g.*, *Burbank Glendale Pasadena Airport Auth. v. City of*

3  *Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

4  Dated:  August 4, 2008                          FARELLA BRAUN & MARTEL LLP

5

6                                                  By: _____/s/_____

7                                                        Andrew W. Ingersoll

8                                                  Attorneys for Defendant
                                                   RANDALL WULFF

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE I/S/O
WULFF'S MOTIONS TO DISMISS, ETC.                - 3 -                              23109\1645718.1
Case No. 08-cv-1426-VRW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VEDATECH, INC, VEDATECH KK, MANI          No C 04-1249 VRW
SUBRAMANIAN (an individual),                   04-1818 VRW
                                               04-1403 VRW
          Plaintiffs,
                                          ORDER
          v

ST PAUL FIRE & MARINE INSURANCE
CO, QAD INC, QAD JAPAN KK,
RANDALL WULFF (an individual),

          Defendants.

_____/

          Mani Subramanian (Subramanian) owns Vedatech, Inc and

Vedatech KK (collectively "Vedatech") and appears in the cases at

bar in *propria persona*.  Subramanian and Vedatech have brought suit

against defendant QAD Inc (QAD) which moves in No 04-1249 to

dismiss Subramanian's and Vedatech's first amended complaint (FAC)

pursuant to FRCP 12(b)(6) and 41(e).  Doc #44.  Next, defendant QAD

Japan K K (QADKK) also moves in 04-1249 to dismiss the FAC pursuant

to FRCP 12(b)(5) and (b)(6).  Id.  Defendant Randall Wulff (Wulff)

United States District Court
For the Northern District of California

1   moves in 04-1249 the court to dismiss the FAC pursuant to FRCP

2   12(b)(6) and 41(e).  Doc #52.  Next, defendant St Paul Fire &

3   Marine Insurance Company (St Paul) moves in 04-1249 to dismiss the

4   FAC pursuant to FRCP 12(b)(6).  Doc #45.  Additionally, all

5   defendants seek sanctions pursuant to FRCP 11 or 28 USC § 1927.

6   (04-1249 Docs ##86, 97, 106).  Subramanian and Vedatech seek

7   sanctions pursuant to FRCP 11 against Wulff.  (04-1249 Doc #61).

8   Finally, St Paul seeks to remand Nos 04-1403 and 04-1818 to Santa

9   Clara superior court.  (C-04-1818 Docs ##7, 19) (C-04-1403 Docs

10  ##11, 40).

11

12                                  I

13                                  A

14                          *The First Action*

15          On January 26, 1998, QAD and QADKK filed suit against

16  plaintiffs Vedatech Inc and Vedatech KK (collectively "Vedatech")

17  and Mani Subramanian ("Subramanian"), owner of all Vedatech

18  entities, in the Santa Clara superior court (hereinafter, the

19  "first action").  The first action arose out of contractual and

20  tort disputes between QAD, QADKK, Vedatech and Subramanian

21  regarding QAD's hiring (and firing) of Vedatech and Subramanian to

22  develop computer software in Japan.  The substance of the

23  allegations in the first action need not be recited in depth.

24  Suffice it to say, QAD's and QADKK's allegations were premised

25  entirely on state law.

26

27                                  B

28                         *The Second Action*

                                    2

1    In September 1999, Vedatech and Subramanian filed their
2  own action in the Santa Clara superior court against QAD, QADKK,
3  Arthur Anderson LLP, Foon Lee and John Doordan alleging fourteen
4  causes of action including, but not limited to, breach of contract,
5  fraud, constructive fraud, negligent misrepresentation, trade libel
6  and state unfair competition (hereinafter, the "second action").
7  Like the first action, all claims in the second action were
8  premised entirely on state law.  In the second action, Vedatech and
9  Subramanian alleged that these defendants conspired to sabotage
10  (and did sabotage) Vedatech and Subramanian's contractual
11  performance of developing software for QAD and QADKK in Japan.   QAD
12  and QADKK filed a counterclaim in the second action essentially
13  duplicating their affirmative allegations in the first action.   The
14  first and second actions were consolidated in late 2001 and
15  assigned to Judge Jack Komar (hereinafter, the "consolidated
16  action").

17

18                                  C

19                          *The Third Action*

20    Between 1997 and 2000, St Paul issued Vedatech various
21  policies of comprehensive general liability insurance.
22  Accordingly, on January 14, 1999, Vedatech and Subramanian tendered
23  to St Paul the defense of Vedatech and Subramanian in the first
24  action.  St Paul agreed, under a reservation of rights, to provide
25  a defense for Vedatech and Subramanian in the first action (where
26  they were defendants) on May 5, 1999.  Moreover, the language of
27  the insurance policy stated, in pertinent part, that "St Paul may,
28  at [its] discretion, investigate any 'occurrence' and settle any

United States District Court

For the Northern District of California

3

United States District Court
For the Northern District of California

1    claim or suit that may result." St Paul explicitly declined to

2    defend Vedatech and Subramanian regarding the cross-claims filed by

3    QAD and QADKK in the second action.

4         After almost five years of defending Vedatech and

5    Subramanian in the first action, it became clear to St Paul that

6    the events giving rise to the first action occurred entirely in

7    Japan. St Paul's insurance policy with Vedatech and Subramanian,

8    however, provided only domestic coverage. Unsurprisingly, a

9    dispute arose between Vedatech and Subramanian and St Paul

10   regarding liability coverage and indemnity issues under the

11   insurance agreement. Based upon these disputes, on February 8,

12   2002, St Paul filed an action for declaratory relief (hereinafter,

13   the "third action") in the Santa Clara superior court against

14   Vedatech and Subramanian seeking a judicial determination regarding

15   the scope of St Paul's duty to defend and indemnify Vedatech and

16   Subramanian in the entire consolidated action. Vedatech and

17   Subramanian then began asserting that St Paul's duty to defend

18   extended to the second action as well.

19        Not to be outdone, Vedatech and Subramanian filed a

20   counterclaim against St Paul alleging a pattern of unfair

21   competition in denying benefits, breach of contract and bad faith.

22   Also in the counterclaim, Vedatech and Subramanian asserted, for

23   the first time, that St Paul had a duty to fund the prosecution of

24   Vedatech and Subramanian's affirmative claims in the second action.

25   On June 26, 2002, Subramanian individually removed the third action

26   to this court on the basis of diversity jurisdiction. On October

27   21, 2002, however, Judge Fogel remanded the third action pursuant

28   to 28 USC § 1446 because Vedatech had not joined Subramanian in the

4

1   petition for removal.  See C-02-3061, Doc #31 (Remand Order).  This

2   brief stint in Judge Fogel's court was only the first time, but far

3   from the last, that these parties would darken this court's doors.

4

5                                    D

6              *Court-Ordered Mediation of Consolidated Action*

7              In the meantime, Judge Komar set the consolidated action

8   for trial on May 3, 2004, in state court.  While Subramanian

9   appeared *pro se*, Vedatech was represented at all times by counsel,

10  namely Christina Gonzaga (Gonzaga) of the Law Office of James S

11  Knopf.  On January 13, 2004, Judge Komar <u>verbally</u> <u>ordered</u> all

12  parties to the consolidated action (including St Paul as Vedatech's

13  insurer) to attend mediation before Wulff, a private mediator.  C

14  04-1249 VRW, Doc #87, Ex F at 17:13-14 (transcript) (Judge Komar

15  stated:  "Right now, I'm <u>ordering</u> you [Vedatech and Subramanian] to

16  go to mediation") (emphasis added).  Judge Komar chose Wulff based

17  upon St Paul's representation that Wulff was a very skilled

18  mediator whom St Paul had previously worked with on other mediation

19  proceedings.  On March 4, 2004, Judge Komar, <u>in writing</u>, ordered

20  all parties to attend the Wulff mediation on March 12, 2004.  Id,

21  Ex H (Med Order).

22             On March 12, 2004, the mediation was held before Wulff

23  with all parties attending.  At the mediation, all parties were

24  required to sign a confidentiality agreement that provided, in

25  pertinent part, that "all parties agree that the mediator * * *

26  ha[s] no liability for any act or omission in connection with the

27  mediation."  Doc #54, Ex A (Conf Agreement).  Subramanian signed

28  the confidentiality agreement on his own behalf and Gonzaga (as

United States District Court
For the Northern District of California

                                    5

1  well as James Knopp) signed the agreement on behalf of Vedatech.

2  Id.  Although Subramanian altered the wording of portions of the

3  document, those changes did not alter the relevant language quoted

4  above.

5          The mediation commenced at 9:30 am and continued until

6  4:00 pm when Subramanian and Vedatech's attorneys abruptly left the

7  mediation.  But St Paul (as Vedatech's insurer), QAD and QADKK

8  elected to continue the mediation and eventually reached a

9  settlement of the consolidated action (the "settlement agreement").

10 Under this agreement, QAD and QADKK agreed to release and dismiss,

11 with prejudice, the entire first action (as well as all

12 counterclaims asserted by QAD and QADKK in the second action).  Doc

13 #46, Ex A (Sett Agreement).  In consideration of this dismissal, St

14 Paul agreed to pay QAD and QADKK the sum of $500,000.  Id at 3.

15 This agreement was signed and executed by QAD, QADKK and St Paul on

16 March 25, 2004.  Id at 6-7.  Moreover, the settlement agreement

17 specifically provided that Vedatech and Subramanian could continue

18 to litigate their affirmative claims against QAD and QADKK in the

19 second action.  Id.  Whether St Paul was contractually obligated to

20 fund such prosecution was, of course, a hotly contested issue in

21 the third action.

22                              E

23                    *The Fourth Action*

24         To say that Vedatech and Subramanian were unhappy with

25 the settlement agreement would be an understatement.  Specifically,

26 they were unhappy with the settlement agreement to the extent it

27 apparently relieved St Paul from its duty (a duty St Paul

28 vigorously disputes in the third action) of having to prosecute

United States District Court

For the Northern District of California

6

1   Vedatech's and Subramanian's affirmative claims in the second

2   action.  Vedatech and Subramanian turned their anger into action

3   and on March 30, 2004, they filed a lawsuit, in federal court,

4   alleging seven causes of action against St Paul, QAD, QADKK, Wulff

5   and 50 "Doe" defendants (hereinafter, the "fourth action").  This

6   action, based on diversity jurisdiction, was assigned to the

7   undersigned.  C 04-1249 VRW Doc #1.  Vedatech and Subramanian filed

8   their first amended complaint on June 15, 2004.  Doc #36 (FAC).

9   The FAC is currently the operative complaint in the fourth action.

10          The seven "causes of action" pled in the FAC include: (1)

11  declaratory judgment, (2) injunctive relief, (3) fraud,

12  (4) constructive fraud, (5) negligent misrepresentation, (6)

13  insurance bad faith and (7) unfair competition.  The sum and

14  substance of Vedatech and Subramanian's 49-page (sometimes

15  unintelligible) FAC appears to be that St Paul, QAD, QADKK, Wulff

16  and 50 unknown defendants covertly conspired and colluded to get

17  Vedatech and Subramanian to "consent" to mediate the consolidated

18  action.  Doc #36 at 19 (stating that Vedatech and Subramanian were

19  "tricked into 'consenting' to mediation before Wulff").  Once this

20  fraudulent plan came to fruition and the mediation took place, the

21  defendants further conspired in an effort to settle the

22  consolidated action on terms that were not in Vedatech and

23  Subramanian's best interests.  Id at 9 (stating that St Paul

24  "formulated a strategy for using the secrecy of mediation as a

25  cover for engaging in collusive and bad faith negotiations with QAD

26  * * * and Wulff").  As discussed above, the settlement agreement

27  was not "favorable," according to Vedatech and Subramanian, because

28  it "weaken[ed] Vedatech's [and Subramanian's] legal representation

7

1    for the affirmative claims" involved in the second action.  Id at

2    19.   The FAC was signed by Subramanian, on his own behalf, and

3    Gonzaga, as counsel for Vedatech.  All defendants, save the unknown

4    "Doe" defendants, have separately moved for dismissal of the FAC on

5    various grounds.  These dispositive motions are currently before

6    the court.

7

8                                    F

9                          *The Removal Rampage*

10         Vedatech and Subramanian's anger did not end with the

11   filing of the fourth action in federal court:  The settlement

12   agreement sent Vedatech and Subramanian on what can only be

13   described as a removal rampage.  As described in depth below, from

14   March 15, 2004, to May 6, 2004, Vedatech and Subramanian filed <u>four</u>

15   petitions for removal in this court; two petitions involved the

16   consolidated action (the action subject to the settlement

17   agreement) and two petitions involved the third action.

18

19                                    1

20                              *Removal #1*

21         On March 15, 2004, before St Paul and QAD had finalized

22   the settlement agreement, Vedatech and Subramanian removed the

23   consolidated action to this court.  The removal petition was

24   assigned to Judge Hamilton.  C-04-1035 PJH.  Vedatech and

25   Subramanian purportedly removed the consolidated action pursuant to

26   28 USC § 1446(b), asserting that federal question jurisdiction had

27   arisen on March 10, 2004.  In support of the removal, they offered

28   an interrogatory response from QAD and QADKK in which QAD claimed

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    that it reserved all of its rights, including copyrights, in the

2    software that Vedatech and Subramanian had created in Japan.

3    According to Vedatech and Subramanian, this interrogatory response

4    revealed that the basis for QAD's state law claims in the

5    consolidated action was, in actuality, the Copyright Act, 17 USC

6    §§ 101 et seq.  Since the consolidated action, according to

7    Vedatech and Subramanian, would now require an interpretation of

8    the federal Copyright Act, the consolidated action was removable

9    pursuant to 28 USC § 1446(b).

10

11                                2

12                           *Removal #2*

13         Additionally, on April 12, 2004, Vedatech and Subramanian

14   removed the third action to this court pursuant to 28 USC §

15   1446(b).  This removal petition, which contained nine exhibits and

16   totaled hundreds of pages, was assigned to Judge Conti.  C 04-1403

17   SC.  Vedatech and Subramanian's "removal logic" goes as follows:

18   For St Paul to prevail in the third action (the insurance

19   declaratory relief action), St Paul would be required to "litigate

20   the issues in the underlying cases [i e, consolidated action],"

21   which, as asserted by Vedatech and Subramanian, were now removable

22   pursuant to 28 USC § 1446(b).  Thus, according to Vedatech and

23   Subramanian, because the consolidated action now raised a federal

24   question (i e, application of the Copyright Act) and because St

25   Paul would necessarily have to litigate this federal question to

26   prevail in the third action, the third action itself was now

27   removable.

28   //

                                9

United States District Court

For the Northern District of California

**3**

*Remand #1*

On April 29, 2004, Judge Hamilton remanded the consolidated action finding: (1) the consolidated action raised no federal question and thus the court lacked subject matter jurisdiction and (2) even if subject matter jurisdiction existed, the removal was untimely.  C 04-1035, Doc #43 (Remand Order). Vedatech and Subramanian appealed Judge Hamilton's April 29, 2004, remand order to the United States Court of Appeals for the Ninth Circuit.  C-04-1305, Doc #48 (Not App).  On August 16, 2004, the Ninth Circuit dismissed Vedatech and Subramanian's appeal pursuant to 28 USC § 1447(d).

**4**

*Removal #3* and *Remand #2*

Not content to wait for the Ninth Circuit, Vedatech and Subramanian on May 6, 2004, filed a new petition for removal of the consolidated action pursuant to 28 USC § 1446(b).  This new petition was <u>63</u> pages long and contained 146 paragraphs purporting to demonstrate that Judge Hamilton had clearly erred in remanding the consolidated action and again argued that federal jurisdiction existed in the consolidated case pursuant to 28 USC § 1446(b).  The new removal petition was assigned to Judge Ware.  Judge Hamilton, however, intervened on May 26, 2004, and related the second removal petition to the first petition.  C-04-1806 PJH, Doc #15 (Related Case Order).  QAD and QADKK filed yet another motion to remand, Doc #16, and Vedatech and Subramanian immediately sought to have Judge Hamilton <u>recused</u> from adjudicating the motion to remand.  Judge

1  Hamilton denied the recusal motion and again heard oral arguments

2  on the motion to remand the consolidated case.  On July 16, 2004,

3  Judge Hamilton remanded the consolidated action for the second

4  time.  In her order, Judge Hamilton stated:  "As was true when this

5  same action was [first] removed * * *, the present notice of

6  removal does not establish the existence of a federal question."

7  Doc #45 (Remand Order).  Moreover, Judge Hamilton stated that

8  "should the removing parties remove this action yet another time,

9  the court will invite the QAD parties * * * to file a motion for

10 sanctions under [FRCP] 11."  Id.

11         Vedatech and Subramanian appealed Judge Hamilton's second

12 remand of the consolidated case to the Ninth Circuit.  Doc #47.

13 The Ninth Circuit, however, dismissed this appeal on August 16,

14 2004, citing 28 USC § 1447(d).  Astonishingly, on August 30, 2004,

15 Vedatech and Subramanian filed a petition for rehearing en banc of

16 the Ninth Circuit's August 16, 2004, order dismissing their appeal

17 of both of Judge Hamilton's remand orders.  On February 16, 2005,

18 the petition for rehearing en banc was denied and on February 23,

19 2005, Vedatech and Subramanian filed a motion to stay the Ninth

20 Circuit's mandate.  As of the date of this order, the motion to

21 stay is still pending before the Ninth Circuit.  The court will not

22 speculate whether Vedatech and Subramanian intend to petition the

23 Ninth Circuit's order to the United States Supreme Court for

24 certiorari.

25

26                                  5

27                            *Removal #4*

28      Falling further down the rabbit hole, on May 7, 2004,

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Vedatech and Subramanian filed a second petition for removal in the

2   third action, which, as described above, had <u>already been removed</u>

3   and assigned to Judge Conti for remand determination.  C-04-1403

4   SC.  What is more, Judge Conti had not yet remanded the third

5   action to state court; St Paul's motion to remand was still pending

6   before Judge Conti.  The second petition for removal of the third

7   action was assigned to Judge Fogel.  C-04-1818 JF.  The second

8   petition for removal of the third action was signed by Subramanian

9   and Gonzaga.

10

11                                    E

12                  *Present Status of Litigation*

13          In an attempt to corral this removal beast, on July 2,

14  2004, the undersigned related the fourth action (04-1249 VRW) and

15  <u>both</u> of Vedatech and Subramanian's petitions for removal of the

16  third action (04-1403 VRW and 04-1818 VRW).  The court has received

17  St Paul's motion to remand, Vedatech and Subramanian's opposition

18  and St Paul's reply.  C-04-1403, Docs ##11, 25, 30.  Accordingly,

19  the issue whether to remand the third action has been fully

20  briefed, is currently before the court and is ripe for

21  adjudication.

22          In the meantime, Vedatech and Subramanian filed a motion

23  to impose sanctions pursuant to Rule 11 against Wulff in the fourth

24  action.  Doc #61.  Wulff opposes this motion.  Doc #63.  This

25  motion is also before the court.

26          On September 16, 2004, the court heard oral arguments

27  regarding (1) the three motions to dismiss the FAC, (2) St Paul's

28

                                   12

motion to remand the third action and (3) Vedatech and Subramanian's motion for Rule 11 sanctions against Wulff. Doc #83. At oral argument, the court invited St Paul, QAD, QADKK and Wulff to file motions for sanctions pursuant to 28 USC § 1927 and Rule 11 against Vedatech and Subramanian. Id. All three have since filed such motions. It is also worth noting that less than one month after the hearing, on October 9, 2004, Gonzaga filed a motion to withdraw as Vedatech's attorney. (04-1249 Doc #90) (04-1403 Doc #47) (04-1818 Doc #27). The court denied this request on October 15, 2004. (02-1249 Doc #95) (04-1403 Doc #47) (04-1818 Doc #27). On March 16, 2005, Gonzaga (having apparently left the Law Offices of James Knopf) and Knopf himself filed a second motion to withdraw as Vedatech's attorney. (02-1249 Doc #148) (04-1403 Doc #70) (04-1818 Doc #51). This second motion is currently pending.

Accordingly, for the sake of clarity, the court will summarize the motions that are currently pending before this court. First, St Paul moves this court to remand the third action to state court. (04-1403 Docs ##11, 40) (04-1818 Docs ##7, 19). Second, QAD, QADKK, St Paul and Wulff separately move to dismiss the FAC in the fourth action. (04-1249 Docs ##44, 45, 52). Third, Vedatech and Subramanian request sanctions against Wulff pursuant to FRCP 11. (04-1249 Doc #61). Fourth, St Paul, QAD, QADKK and Wulff request sanctions pursuant to FRCP 11 and costs and fees pursuant to 28 USC § 1927 against Vedatech and Subramanian. (04-1249 Docs ##86, 97, 106) (St Paul 04-1403 Doc #52) (St Paul 04-1818 Doc #32). Gonzaga and Knopf move to withdraw as counsel of record for Vedatech. (04-1249 Doc #148) (04-1403 Doc #70) (04-1818 Doc

United States District Court
For the Northern District of California

13

**United States District Court**
For the Northern District of California

1

2   #51). Additionally, Gonzaga and Knopf have filed a motion to

3   strike portions of Subramanian and Vedatech's opposition to their

4   second motion to withdrawal. (04-1249 Doc #154) (04-1403 Doc #74)

5   (04-1818 Doc #55). Subramanian and Vedatech have filed a motion

6   requesting additional oral argument. (04-1249 Doc #112) (04-1403

7   Doc #63) (04-1818 Doc #43).

8           Taking a deep breath, the court proceeds to attempt to

9   resolve these disputes.

10

11                                    II

12                          *Motion to Remand*

13          As discussed above, Vedatech and Subramanian's first

14   petition for removal of the third action (a state declaratory

15   relief action regarding insurance contracts) is based on one single

16   piece of logic: "the removability of the underlying [consolidated

17   action] attaches *mutatis mutandis* to the removability of the

18   insurance case [third action]." C 04-1403, Doc #6 (Rem Pet) at 5.

19   Moreover, the second petition for removal states that "the

20   [consolidated action] [is] completely preempted by [the Copyright

21   Act]. This, in turn, justifies removal of this derivative action

22   [third action]." C 04-1818, Doc #1 (Rem Pet) at 5.

23          The court expresses no opinion regarding whether Vedatech

24   and Subramanian's logic is correct. Assuming arguendo that this

25   logic is correct, it is clear that the absence of a federal

26   question in the consolidated action would render the third action

27   unremovable. As mentioned above, this court (per Judge Hamilton)

28   has not once, but <u>twice</u>, held that the consolidated action contains

                                     14

no federal question sufficient to confer removal jurisdiction pursuant to 28 USC § 1446(b) and has <u>twice</u> remanded the consolidated action to state court.  In fact, Subramanian and Vedatech have been threatened with sanctions by Judge Hamilton should they try again to remove the consolidated action to this court.

Accordingly, the question whether a federal question exists in the consolidated action has been answered in the negative by Judge Hamilton – <u>twice</u>.  Under plaintiffs' own logic, because there is no federal question in the consolidated action, this court must remand the third action for lack of subject matter jurisdiction pursuant to § 1447(c).

Moreover, even if Judge Hamilton's remands were in error (which clearly they were not) and even if the consolidated action between QAD, QADKK, Vedatech and Subramanian hinged entirely on the adjudication of the Copyright Act, this court would <u>still</u> lack subject matter jurisdiction over the third action.

As discussed above, the third action is an action for declaratory relief brought by St Paul.  St Paul seeks a judicial determination whether it has a duty to defend Vedatech in the consolidated action if the events underlying the consolidated action occurred in Japan.  This is a matter governed completely by California law.  Under California law, "it has long been a fundamental rule of law that an insurer has a duty to defend an insured if [the insurer] becomes aware of, or if the third-party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement."  <u>Waller v Truck Insurance Exchange,</u>

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

*Inc*, 11 Cal 4th 1, 19 (1995) (citing <u>Gray v Zurich Insurance Co</u>, 65 Cal 2d 263, 276 (1966)). Accordingly, whether St Paul is under a duty to defend Vedatech in the consolidated action is determined by comparing the facts alleged in the consolidated action complaint and the language of the insuring agreement between St Paul and Vedatech. Even if the underlying claims were federal copyright claims (which they are not), resolution of the third action would hinge on whether the insuring agreement's scope was broad enough to encompass federal copyright claims arising from events that occurred in Japan. This analysis in no way involves interpretation of the Copyright Act; it is simply a matter of state contract interpretation.

Further, although Vedatech and Subramanian are diverse from St Paul, they cannot base their two petitions for removal on this fact; 28 USC 1446(b) requires a defendant to file a petition for removal within thirty days of the point when diversity jurisdiction is established. Vedatech's and Subramanian's petitions were filed more than two years after St Paul initiated the third action in state court.

No federal question exists in the third action and thus Vedatech and Subramanian's removal pursuant to 28 USC § 1446(b) was improper. Accordingly, St Paul's motion to remand 04-1403 and 04-1818 is GRANTED and the court REMANDS these cases to the Santa Clara superior court pursuant to 28 USC § 1447(c).

St Paul requests that the court order Vedatech and Subramanian to pay St Paul's reasonable attorney fees and costs incurred in these motions to remand. 28 USC § 1447(c) provides in

16

1  relevant part:  "An order remanding the case may require payment of

2  just costs and any actual expenses, including attorney[] fees,

3  incurred as a result of the removal."  As this court stated in

4  <u>Moore v Kaiser Foundation Hospitals, Inc</u>, 765 F Supp 1464, 1466 (ND

5  Cal 1991), aff'd 981 F2d 443 (9th Cir 1992):

6  >          As a matter of public policy, the party forced
   >          to bring a motion to remand an improperly
7  >          removed case generally should be fully
   >          reimbursed for its costs in remanding the case
8  >          whether the removal was in bad faith or
   >          otherwise.  The court's award of fees in this
9  >          case is not a punitive award against
   >          defendants; it is simply reimbursement to
10 >          plaintiffs of wholly unnecessary litigation
   >          costs the defendants inflicted.  Attorney fees
11 >          spent to remand an improperly removed case
   >          without bad faith cost just as much as fees
12 >          spent to remand a case removed in bad faith.

13         The court orders the remand of this case and,

14  accordingly, finds that an award of reasonable attorney fees is

15  appropriate.  To determine a reasonable attorney fee award, the

16  court employs the lodestar method, under which the court multiplies

17  the number of hours the prevailing party reasonably expended on the

18  litigation by a reasonable hourly rate.  <u>Yahoo!, Inc v Net Games,</u>

19  <u>Inc</u>, 329 F Supp 2d 1179, 1182 (ND Cal 2004).  "[T]o convert the

20  data provided by fee applicants to a 'reasonable attorney fee,' the

21  court first compares the requested number of hours to the number of

22  hours that 'reasonably competent counsel' would have billed."  Id

23  at 1188.

24         St Paul requests 108.5 hours for services performed by

25  attorneys in connection with (1) the preparation and filing of both

26  motions to remand, (2) its reply to Vedatech's and Subramanian's

27  opposition to its motions to remand and (3) preparation for the

28  September 16, 2004, hearing.  Doc #98, Ex A.  Having considered the

United States District Court

For the Northern District of California

17

**United States District Court**
For the Northern District of California

1   nature of the complex legal questions created by Vedatech's and

2   Subramanian's voluminous and repetitive removal petitions and

3   memoranda, as well as the quality of the attorneys' work, the court

4   finds the claim for 108.5 hours of attorney time to be reasonable

5   in preparing and defending its motions to remand in these cases.

6         The court now turns to determining a reasonable hourly

7   rate.  More than one methodology exists to make this determination.

8   In Laffey v Northwest Airlines, Inc, 572 F Supp 354 (D DC 1983),

9   aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir

10  1984) the court employed a variety of hourly billing rates to

11  account for the various attorneys' different levels of experience.

12  The Laffey methodology is useful when an unusually large fraction

13  of either senior or junior attorney time is necessary, and spent,

14  by counsel on behalf of a client.  The Laffey methodology allows

15  the court to reflect in the fee award the disproportion of the time

16  spent by senior or junior attorneys at a rate commensurate with

17  such attorneys' market hourly rate.  Cf In re HPL Technologies Inc,

18  Securities Litigation, 2005 US Dist LEXIS 7244 (ND Cal 2005)

19  (Walker, J).  In this case, 13.3 hours were spent by James Greenan

20  who claimed a billing rate of $250/hour and 96 hours by Enoch Wang

21  who claimed a $185/hour billing rate.  St Paul requests total fees

22  of $20,738.75.  Doc #162 at 2; Doc #98, Ex A.

23        A "blended hourly rate" rather than the Laffey

24  methodology would appear sufficient in this case to reflect the

25  market rate for counsel's services.  This is because "[t]he purpose

26  of using prevailing market rates is to estimate the hourly rate

27  reasonably competent counsel would charge[,] * * * [and] not to

28  determine whether or not a specific attorney could command a

1  specific hourly rate in the market."  The court concludes,

2  therefore, that "the average market rate in the local legal

3  community as a whole is a better approximation of the hourly rate

4  that would be charged by reasonably competent counsel than the

5  actual billing rate charged by a single attorney."  <u>Yahoo!</u>, 329 F

6  Supp 2d at 1185.

7          In several of the court's previous orders, the court has

8  calculated an average market rate in the local legal community as a

9  whole using public data from the United States Census Bureau and

10  Bureau of Labor Statistics ("BLS").  See, e g, <u>Yahoo!</u>, 329 F Supp

11  2d 1179; <u>Allen v BART</u>, 2003 WL 23333580 (N D Cal 2003); <u>Gilliam v</u>

12  <u>Sonoma City</u>, 2003 WL 23341211 (N D Cal 2003).  In <u>Yahoo!</u>, the court

13  explained that:

14          The BLS provides data on the hourly wages
           earned by attorneys * * *.  To estimate the
15          hourly rates billed to clients, the court first
           calculated the ratio of net receipts to gross
16          receipts from data compiled by the Census
           Bureau.  This ratio was used to approximate the
17          overhead costs that would be incorporated in
           the hourly rates billed to clients.  The court
18          then divided the BLS wage data ($w$) by the ratio
           of net receipts ($nr$) to gross receipts ($gr$) to
19          determine an estimated average market rate ($r$)
           * * *.

20

21  Id at 1189.

22          This methodology is represented by the following

23  equation:  $r = w / (nr/gr)$.  Stated another way, the average market

24  rate $r = w * (gr/nr)$.  The most recent census data describing gross

25  and net receipts by law partnerships are located in "Statistical

26  Abstract of the United States:  2004-2005" ("2004 Statistical

27  Abstract").  See United States Census Bureau, <u>Statistical Abstract</u>

28  <u>of the United States</u>:  2004-2005, tbl 718, available at

United States District Court
For the Northern District of California

1   http://www.census.gov/statab/www/.  The 2004 Statistical Abstract

2   provides gross and net receipts for the year 2001.  For law

3   partnerships, gross receipts totaled $91 billion and net receipts

4   totaled $32 billion.  This yields a ratio of net receipts to gross

5   receipts of 0.351.  Even though these data are four years old, it

6   is adequate for present purposes because law firm economics should

7   not vary significantly over such a short period.

8        The most recent data available from the BLS describing

9   hourly wages in the San Francisco area are located in "November

10  2003 Metropolitan Area Occupational Employment and Wage Estimates

11  San Francisco, CA PMSA," available at

12  http://www.bls.gov/oes/current/oes_7360.htm#b23-0000 ("2003 BLS

13  Wage Estimates").  The BLS provides wage estimates for "Legal

14  Occupations" in the year 2003.  The BLS's estimates for lawyers are

15  a median hourly wage of $65.01/hr and a mean hourly wage of

16  $70.23/hr.  Id.  As in Yahoo!, the court selects the higher of the

17  median or mean hourly wage because it is more favorable to the

18  party seeking the grant of attorney fees.  Id at 1191.

19       Dividing the most recent mean hourly wage for lawyers,

20  $70.23/hr, by the most recent ratio of net to gross receipts,

21  0.351, yields an estimate of $200/hr (rounded down from $200.08/hr)

22  as the average market rate for lawyers in the San Francisco area.

23  This, of course, is fairly close to the claimed hourly rate of St

24  Paul's counsel.  It should not be surprising that a large insurance

25  company would not allow itself to be overcharged for attorney

26  services and indeed it appears that St Paul has done just that.  In

27  any event, the court finds that a reasonable or market value

28  attorney fee for the work of St Paul's counsel is:  108.5 hours at

United States District Court

For the Northern District of California

20

United States District Court

For the Northern District of California

1  $200/hr, yielding a total of $21,700.  Accordingly, $20,738.75, the

2  amount requested by St Paul, is a reasonable attorney fees award;

3  indeed, it is actually almost $1,000 _less_ than the court's

4  calculation of a market value fee.  Given the unitary nature of

5  both petitions for removal, Vedatech and Subramanian are jointly

6  and severally liable for the full amount of St Paul's attorney

7  fees.  Kona Enterprises, Inc v Estate of Bishop, 229 F3d 877, 888-

8  89 (9th Cir 2000); see also Pekarsky v Ariyoshi, 575 F Supp 673,

9  676-77 (D Hawaii 1983) (Schwarzer, J).

10        Finally, the court turns to St Paul's motion for

11  sanctions pursuant to FRCP 11(c)(1)(A).  This is an appropriate

12  instance in which to impose FRCP 11 sanctions, as filing a

13  frivolous removal petition can be grounds for imposition of Rule 11

14  sanctions if there is no "good faith argument" for removal.  Hewitt

15  v City of Stanton, 798 F2d 1230, 1233 (9th Cir 1986); accord

16  Midlock v Apple Vacations West, Inc, 2005 US App LEXIS 6718 (7th

17  Cir 2005).

18        The court will liberally construe the phrase "good faith

19  argument" and thus will not sanction Vedatech and Subramanian for

20  the filing of the _first_ petition of removal (although Vedatech and

21  Subramanian will, as discussed above, pay St Paul's costs on

22  attorney fees associated with the first petition).  No amount of

23  leniency, however, can excuse the frivolousness of the _second_

24  petition for removal of the third action.  As discussed above, when

25  Vedatech and Subramanian removed the third action for the second

26  time, Judge Conti had not adjudicated the _first_ removal.

27  Accordingly, there was no action to remove from the state court, as

28  this court had jurisdiction over the third action as soon as it was

21

1    removed the first time.  28 USC § 1446(d).  To make matters worse,

2    the second petition (which is hundreds of pages in length)

3    essentially duplicates the meritless arguments enumerated in the

4    first petition.   Accordingly, to call the second petition

5    frivolous would be an understatement.  The question is not whether

6    the court should impose sanctions, the question is how much.

7            Rule 11 applies to *pro se* plaintiffs like Subramanian.

8    <u>Warren v Guelker</u>, 29 F3d 1386, 1390 (9th Cir 1994).  In determining

9    whether to sanction a *pro se* plaintiff, however, the Ninth Circuit

10   urges district courts to use caution.  Id.  But even exercising

11   extreme caution, the court determines sanctions are appropriate

12   against Subramanian.  "Rule 11 is intended to * * * <u>deter</u>[]

13   [parties] who submit motions or pleadings which cannot reasonably

14   be supported in law or fact."  <u>Golden Eagle Distributing Corp v</u>

15   <u>Burroughs Corp</u>, 801 F2d 1531, 1542 (9th Cir 1986) (emphasis added).

16   Subramanian has repeatedly abused the federal removal statutes and

17   shows no signs of stopping this practice.  He has filed not one,

18   but <u>four</u> frivolous petitions for removal, causing continuous and

19   unnecessary congestion of this court's docket.  Moreover, this

20   court (per Judges Hamilton, Fogel, Conti and the undersigned) has

21   expended a large amount of judicial resources in adjudicating these

22   petitions.  Clearly, the only way to deter Subramanian from

23   engaging in this behavior again is to invoke the monetary penalties

24   of Rule 11.

25           The reprehensible conduct engaged in by Subramanian is

26   magnified when it is applied to Gonzaga, an attorney.  It is clear

27   that Gonzaga (throughout this litigation) has simply signed off on

28   a myriad of frivolous motions and pleadings drafted by Subramanian

1  -- including all four petitions for removal.  As an officer of this

2  court, Gonzaga owes a duty not to file papers that are procedurally

3  defective and substantively indefensible.  The second petition for

4  removal of the third action alone demonstrates that Gonzaga has

5  egregiously breached her duty to this court.  The only method to

6  deter Gonzaga from engaging in this type of reckless legal

7  representation where she simply signs off on motions drafted by a

8  pro se litigant is to invoke Rule 11.

9        In determining the appropriate amount of sanctions, the

10  court is guided by the touchstone of Rule 11:  Deterrence.  As

11  between Subramanian and Gonzaga, the court concludes it is

12  Subramanian who needs to be deterred more from filing in the future

13  frivolous motions, petitions and complaints.  It is clear from

14  Gonzaga's motion to withdraw as counsel for Vedatech that she is

15  suffering the consequences of simply allowing Subramanian to run

16  the show in this litigation; the court doubts Gonzaga will make

17  this error in judgment again.  Accordingly, the court SANCTIONS

18  Gonzaga $5,000 pursuant to Rule 11.

19        Turning to Subramanian, the court concludes that although

20  a sanction pursuant to Rule 11 is required to deter future

21  frivolous filings, the large amount of attorney fees and costs

22  already imposed on Subramanian to compensate St Paul and the amount

23  that will be imposed on him to compensate Wulff, see infra Part

24  III(B), will certainly serve the function of deterring similar

25  filings in the future.  Accordingly, the court SANCTIONS

26  Subramanian $1,000 pursuant to Rule 11.  Subramanian is admonished,

27  however, that the court will not hesitate to impose much harsher

28  Rule 11 sanctions should he continue to engage in the conduct

United States District Court

For the Northern District of California

23

1    described in this order.  If Subramanian files in this court (1)

2    another frivolous petition for removal, (2) any frivolous motions

3    in these cases, (3) a new frivolous cause of action or (4) any

4    other filing worthy of Rule 11 sanctions, the court will impose

5    sanctions at $1,000 per page of each filing.

6         Pursuant to FRCP 11(c)(1)(2), Gonzaga and Subramanian's

7    sanctions are to be paid to the court on or before July 25, 2005.

8         Finally, to the extent St Paul seeks sanctions relating

9    to Vedatech and Subramanian's filing of the FAC (as opposed to the

10   two removal petitions), St Paul's motion is DENIED.

11

12                              III

13                       *Motions to Dismiss*

14        As mentioned above, in apparent anger over the settlement

15   reached between St Paul, QAD and QADKK regarding the consolidated

16   action, on March 30, 2004, Vedatech and Subramanian filed the

17   fourth action in this court.  Doc #1.  On June 15, 2004, Vedatech

18   and Subramanian filed the FAC.  Doc #35.  Named as defendants in

19   the FAC are:  (1) St Paul, (2) QAD, (3) QADKK, (4) Wulff and (5) 50

20   "Doe "defendants.  Id.  The 49-page, 160-paragraph FAC is truly a

21   frightful piece of legal work.  The FAC (1) makes dozens of

22   unintelligible factual assertions; (2) is fraught with arguments,

23   unsupported conclusions and case law citations; (3) contains two

24   portions written as if the FAC were an opposition to a motion to

25   dismiss and (4) even contains an internet article concerning

26   mediation.

27        The complaint lists seven "causes of action": (1)

28   declaratory judgment; (2) injunctive relief; (3) fraud and

United States District Court
For the Northern District of California

24

1   conspiracy to commit fraud; (4) constructive fraud and conspiracy

2   to commit constructive fraud; (5) negligent misrepresentation; (6)

3   breach of covenant of good faith and fair dealing; and (7) state

4   unfair competition.  As a preliminary matter, the court must

5   dismiss one of these seven claims out of hand.  Vedatech and

6   Subramanian's "second cause of action" is titled "INJUNCTIVE

7   RELIEF."  Id at 28.  Under California law, however, "[i]njunctive

8   relief is a remedy and not, in itself, a cause of action, and a

9   cause of action must exist before injunctive relief may be

10  granted."  Shell Oil Co, Inc v Richter, 52 Cal App 2d 164, 168

11  (1942)(citing Williams v Southern Pacific R R Co, 150 Cal 624

12  (1907)).  Accordingly, Vedatech and Subramanian's claim for

13  injunctive relief is dismissed pursuant to FRCP 12(b)(6).

14          All defendants (save the Doe defendants) move to dismiss

15  the FAC in its entirety under various state and federal rules.

16

17                              A

18                   *Wulff's Motion to Dismiss*

19          Vedatech and Subramanian allege five causes of action

20  against Wulff: (1) declaratory judgment; (2) fraud; (3)

21  constructive fraud; (4) negligent misrepresentation and (5) state

22  unfair competition.  In sum, Vedatech and Subramanian appear to

23  allege that Wulff was not a neutral mediator but instead was biased

24  in favor of St Paul which had used his services previously.

25  Because Wulff was apparently biased towards St Paul, he (1)

26  "tricked" Vedatech and Subramanian into signing the mediation

27  confidentiality agreement, (2) did not terminate the mediation when

28  Vedatech and Subramanian exited and (3) conspired with St Paul and

United States District Court

For the Northern District of California

25

United States District Court

For the Northern District of California

1   QAD to create a settlement that harmed Vedatech and Subramanian.

2   The court concludes that Wulff is immune from the claims asserted

3   against him in the FAC.

4          California law, which this court is required to apply in

5   diversity actions pursuant to Erie Railroad Co v Tompkins, 304 US

6   64 (1938), grants "quasi-judicial immunity" to persons who "fulfill

7   quasi-judicial functions intimately related to the judicial

8   process."  Howard v Drapkin, 222 Cal App 3d 843, 847 (1990).  In

9   Howard, the parties to an underlying custody dispute stipulated

10  that a psychologist could act as an independent fact-finder and

11  make non-binding recommendations regarding allegations of physical

12  and sexual abuse to the judge presiding over the dispute.  Id at

13  848.  This stipulation was ultimately signed by the court and

14  converted into an order.  Id.  The child's mother subsequently

15  disagreed with the psychologist's findings and recommendations,

16  asserting that the psychologist (1) was abusive during the six-hour

17  mediation-like setting, (2) negligently prepared her findings so as

18  to include false statements and omit critical information and (3)

19  failed to disclose certain conflicts of interest and lack of

20  expertise in child abuse matters.  Id.

21         Based upon such allegedly inappropriate behavior, the

22  mother filed a civil lawsuit against the psychologist, pleading

23  causes of action for (1) fraud, (2) negligent misrepresentation,

24  (3) professional negligence, (4) intentional infliction of

25  emotional distress and (5) negligent infliction of emotional

26  distress.  The psychologist filed a general demurrer, contending

27  that she enjoyed quasi-judicial immunity from the mother's suit.

28  Id at 850.  The trial court agreed and sustained the demurrer and

                                  26

1  the California court of appeal affirmed.

2         The <u>Howard</u> court began by stating that "under the concept

3  of quasi-judicial immunity, California courts have extended

4  absolute immunity to persons other than judges if those persons act

5  in a judicial or quasi-judicial capacity." Id at 852-53. Such

6  persons include court commissioners, grand jurors, administrative

7  law hearing officers, arbitrators and prosecutors. Id at 853.

8  Moreover, the court explicitly rejected the idea that only "public"

9  officials enjoyed quasi-judicial immunity, for "if that were so,

10 then arbitrators would not be protected by * * * [such] immunity."

11 Id at 854. The court further noted "the relevant policy

12 considerations of attracting to an overburdened judicial system the

13 independent and impartial services and expertise upon which that

14 system necessarily depends." Id at 857. Accordingly, the court

15 held that all "nonjudicial persons who fulfill quasi-judicial

16 functions intimately related to the judicial process should be

17 given absolute quasi-judicial immunity for damage claims arising

18 from their performance of duties in connection with the judicial

19 process." Id.

20        "Without [this] immunity, such persons will be reluctant

21 to accept court appointments or provide work product for the

22 courts." Id. Moreover, "in order to best protect the ability of

23 neutral third parties to aggressively <u>mediate</u> and resolve disputes,

24 a dismissal at the very earliest stage of the proceedings is

25 critical to the proper functioning and continued availability of

26 these services." Id at 905 (emphasis added).

27        Quite appropriately, Wulff cites <u>Howard</u> in support of his

28 motion to dismiss all claims against him in this case. It is very

                                   27

**United States District Court**
For the Northern District of California

1    telling that Vedatech and Subramanian's 25-page opposition to

2    Wulff's motion to dismiss devotes only two pages squarely to

3    addressing the <u>Howard</u> decision (while various and unintelligible

4    other references to <u>Howard</u> are sprinkled throughout).  Doc #65 at

5    15-17.  Inexplicably, Vedatech and Subramanian devote twelve pages

6    of their opposition to reciting (unnecessarily) the status of

7    quasi-judicial immunity under <u>federal</u> law (i e, statutes and

8    Supreme Court decisions).  Id at 3-14 (concluding that "[i]t is

9    clear that federal law is conclusively against the grant of any

10   such immunity to private commercial mediators such as defendant

11   Wulff.").  But it is <u>state</u> law, not federal law, that controls this

12   court's analysis in diversity cases.  See <u>Erie</u>, 304 US 64.

13          Vedatech and Subramanian's opposition makes, in essence,

14   two arguments why <u>Howard</u>'s logic does not mandate the dismissal of

15   all claims against Wulff.  First, they argue that <u>Howard</u>, insofar

16   as it extended quasi-judicial immunity to "neutral third-party

17   participants in the judicial process" was "unnecessary dictum," and

18   thus is not binding on this court under <u>Erie</u>.  Doc #65 at 16.  At

19   one point, Vedatech and Subramanian even make the assertion that

20   <u>Howard</u>'s extension of quasi-judicial immunity "is double-dicta."

21   Id at 15.  Next, Vedatech and Subramanian argue that "it is clear *

22   * * that the California Supreme Court itself is highly unlikely to

23   uphold the [<u>Howard</u>] decision, and most certainly not for the

24   extension of immunity to private commercial mediators."  Id at 2.

25   The court finds both arguments to be wholly without merit.

26          Far from being "unnecessary dictum" or "double dicta,"

27   <u>Howard</u>'s holding that "nonjudicial persons who fulfill quasi-

28   judicial function * * * should be given absolute quasi-judicial

1   immunity" was the court's *ratio decidendi*.  In fact, the court

2   devoted thirteen of the opinion's seventeen pages to the discussion

3   of quasi-judicial immunity.  Moreover, <u>Howard</u> was not appealed to

4   the California Supreme Court and thus the assertion that <u>Howard</u>

5   will not be "upheld" by the California Supreme Court is not only

6   unpersuasive, but plainly wrong.  Nor do Vedatech and Subramanian

7   offer any convincing explanation why the California Supreme Court

8   would disapprove of the reasoning in <u>Howard</u>.  Indeed, <u>Howard</u> has

9   been binding California precedent for over 14 years and a search of

10  subsequent treatment of <u>Howard</u> by California courts does not reveal

11  a <u>single</u> instance of negative treatment among the 22 cases which

12  have cited it.

13      Under <u>Howard</u>, Wulff is immune from all claims asserted

14  against him in the FAC.  Accordingly, the court GRANTS Wulff's

15  motion to dismiss with prejudice pursuant to 12(b)(6).  Because the

16  court finds Wulff immune from the claims asserted in the FAC, it is

17  unnecessary to decide whether communications made by Wulff during

18  mediation are protected by Cal Civ Code § 47(b) or whether Vedatech

19  and Subramanian have failed to exhaust state ADR-grievance remedies

20  pursuant to Cal R Court 1622.

21

22                                  B

23              *Rule 11 Sanctions Against Wulff*

24      On August 12, 2004, Vedatech and Subramanian filed a

25  motion for sanctions pursuant to FRCP 11 against Wulff, his

26  attorneys Douglas Young and Jessica Nall and the entire law firm of

27  Farella, Braun & Martel LLP (Farella).  Doc #61.

28      Throughout Wulff's motion to dismiss the FAC, Wulff

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   refers to himself as a "court-appointed" mediator, thus deserving

2   of _Howard_'s immunity.   Vedatech and Subramanian claim each time

3   this label precedes Wulff's name, a "bad faith misrepresentation"

4   to this court has occurred because the Santa Clara superior court

5   never "appointed" Wulff as a mediator.

6         Vedatech and Subramanian never specify which part of Rule

7   11 Wulff has allegedly violated, but since the sanctions are

8   directed at Wulff's defenses, the court presumes Rule 11(b)(2) is

9   the relevant provision.   Rule 11(b)(2) prohibits claims and

10  defenses that are not "warranted by existing law or by a

11  nonfrivolous argument for the extension or modification" of such

12  law.

13        Far from being unwarranted by existing law, Wulff's claim

14  that he was a court-appointed mediator is objectively true.   Judge

15  Komar's March 4, 2004, order states that all parties are to attend

16  mediation before Wulff.   Vedatech and Subramanian, however, argue

17  that this order does not make Wulff court-appointed:   "This order

18  does not in any way 'appoint' Mr Wulff as a mediator, is not

19  directed to Mr Wulff in any way or manner whatsoever, and does not

20  create any official relationship between the Court and Mr Wulff."

21  Doc #61 at 6.   Thus, because Judge Komar's order was directed to

22  the parties, rather than Wulff himself, Wulff is not "court-

23  appointed" even though all parties were ordered to mediate before

24  him.   Rule 11 sanctions cannot be based upon such meaningless word

25  play.

26        Further demonstrating the baseless nature of this Rule 11

27  motion, Subramanian himself recognizes that _Howard_'s grant of

28  immunity applies to mediators _regardless_ whether the mediator has

United States District Court
For the Northern District of California

1  been court-appointed.  See Doc #87 (Nall Decl), Ex C (9/16/04

2  Transcript) at 54:25-55:2 (acknowledging that "<u>Howard v Drapkin</u>

3  does not necessitate that the mediator be a court-appointed

4  mediator in order to qualify under its reasoning for absolute

5  immunity.")

6       Vedatech and Subramanian's motion to impose Rule 11 upon

7  Wulff and his attorneys is DENIED.

8       The court may award to the person who prevails on a

9  motion under Rule 11 reasonable expenses, including attorney fees,

10  incurred in presenting or opposing the motion. See Advisory

11  Committee Notes to 1993 Amendments to FRCP 11.  Because courts may

12  award fees to a party that prevails on a Rule 11 motion, "a cross

13  motion under Rule 11 should rarely be needed." Id.  As the target

14  of, and prevailing party on Vedatech's and Subramanian's Rule 11

15  motion, Wulff is entitled to an award of attorney fees.  The court

16  will employ the same calculation method explained above in awarding

17  St Paul its attorney fees under § 1447(c).  See *supra* Part III.

18       Wulff requests 197.8 hours for services performed by

19  attorneys at Farella in (1) researching and drafting an opposition

20  to Vedatech's and Subramanian's motion for Rule 11 sanctions, (2)

21  preparing for and attending oral argument on the Rule 11 motion and

22  (3) researching and drafting Wulff's counter-motion for sanctions.

23  Doc #87 (Nall Decl) at 3-4.  The court finds this to be an

24  unreasonable expenditure of attorney resources.

25       Among the factors to be taken into account in the

26  reasonable hours component of the lodestar calculation is (1) the

27  novelty and complexity of the issues and (2) the quality of the

28  attorneys' work.  <u>Morales v City of San Rafael</u>, 96 F3d 359, 364

United States District Court
For the Northern District of California

1   (9th Cir 1996).  Vedatech's and Subramanian's Rule 11 motion is

2   essentially five pages in length and the alleged grounds for

3   sanctions are hardly novel or complex.  And while the quality of

4   the attorneys' work is high, Wulff is not entitled recover for

5   extraordinary hours incurred by a legal dream team; he is entitled

6   to recover for the number of hours a reasonably competent counsel

7   would have billed.  Additionally, the court does not doubt that the

8   Farella attorneys spent a large amount of time preparing and

9   strengthening Wulff's defense; Wulff is a former Farella partner.

10  The fact that Wulff's attorneys worked almost 200 hours, however,

11  does not make this number of hours reasonable.

12          Indeed 197.8 hours represents about one-tenth of a

13  lawyer's annual billable hours.  Put in this context, the

14  unreasonableness of this extraordinary number of hours is evident.

15  After reviewing (1) Vedatech's and Subramanian's Rule 11 motion,

16  (2) Wulff's opposition, (3) the time needed to prepare oral

17  argument and (4) Wulff's counter-motion for sanctions, the court

18  concludes that it would take a reasonable lawyer about two weeks of

19  billable time -- or 75 hours -- effectively to oppose Vedatech's

20  and Subramanian's Rule 11 motion.  Multiplying this reasonable

21  number of hours by the average market rate for lawyers in the San

22  Francisco area calculated above, the court concludes that Wulff is

23  entitled to $15,000 (75 hours x $200/hour).  Accordingly, Vedatech

24  and Subramanian are jointly and severally liable to Wulff for

25  $15,000 incurred in opposing the unnecessary Rule 11 motion.

26          Additionally, Wulff moves for sanctions against Vedatech

27  and Subramanian pursuant to 28 USC § 1927.  Doc #86.  Wulff bases

28  his § 1927 cross-motion on Vedatech and Subramanian's "obstinate

1  refusal to acknowledge the effect of" <u>Howard</u>.  Id at 6.

2          "Any * * * person * * * who so multiplies the proceedings

3  in any case unreasonably and vexatiously may be required by the

4  court to satisfy personally the excess costs, expenses, and

5  attorney fees reasonably incurred because of such conduct."  28 USC

6  § 1927.  As this court has stated:  The purpose of § 1927 is "to

7  deter attorneys from multiplying legal proceedings unnecessarily,

8  and to compensate attorneys forced to endure such proceedings."

9  <u>Winfield v Beverly Enterprises</u>, 1994 US Dist LEXIS 2855, *10 (ND

10  Cal 1994) (Walker, J).  Sanctioning a party under § 1927 requires a

11  "finding of recklessness or bad faith."  <u>Barber v Miller</u>, 146 F3d

12  707, 711 (9th Cir 1998).  "Bad faith is present when a [party]

13  knowingly or recklessly raises a frivolous argument."  <u>Estate of</u>

14  <u>Blas v Winkler</u>, 792 F2d 858, 860 (9th Cir 1986).  Finally, "section

15  1927 sanctions may be imposed on a *pro se* plaintiff."  <u>Wages v IRS</u>,

16  915 F2d 1230, 1235-36 (9th Cir 1990).

17          The court agrees that Vedatech and Subramanian,

18  recklessly <u>and</u> in bad faith, multiplied the legal proceedings

19  against Wulff by recklessly raising frivolous arguments regarding

20  the inapplicability of <u>Howard</u>.  Wulff <u>repeatedly</u> and <u>clearly</u>

21  informed Vedatech and Subramanian of <u>Howard</u>'s holding regarding

22  quasi-judicial immunity and urged Vedatech and Subramanian to

23  dismiss Wulff from the current suit.  Vedatech and Subramanian

24  refused and instead chose to make substantively indefensible

25  attempts to distinguish <u>Howard</u>.  First, they argued that Wulff was

26  not "court appointed," as was the psychologist in <u>Howard</u>.  This

27  argument, however, has since been repudiated by Vedatech and

28  Subramanian.  Doc #128 at 7 (admitting that "the psychologist in

33

United States District Court

For the Northern District of California

1   Howard v Drapkin was not 'court-appointed').  Next, Vedatech and

2   Subramanian argued that this court should not follow Howard because

3   (1) the holding regarding quasi-judicial immunity is mere "dictum,"

4   and (2) the California Supreme Court is imminently preparing to

5   overrule Howard.  These legal contentions are unwarranted by

6   existing law.  As discussed above, there is no indication that this

7   fourteen-year-old decision, relied upon by numerous lower courts,

8   is about to be overruled by the California Supreme Court; Vedatech

9   and Subramanian's conclusory assertion to the contrary is baseless

10  and not offered in good faith.  Finally, calling Howard's quasi-

11  judicial immunity holding "dictum" evidences a fundamental

12  ignorance (either intentional or reckless) of the ability to read

13  case law.  This ignorance, however, is no defense to Wulff's cross-

14  motion for fees and costs.  See Temple v WISAP USA, 1993 US Dist

15  LEXIS 18453, *19 (D Neb 1993) ("Mistaken judgment, ignorance of law

16  or personal belief with regard to what the law should be," does not

17  negate the filing of a legally baseless document).

18      No doubt Vedatech and Subramanian wish Howard did not

19  exist or that its holding could be characterized as dictum.  These

20  personal beliefs, however, do not constitute good faith legal

21  arguments.  The court concludes that Wulff should never have been

22  forced into defending himself against Vedatech and Subramanian's

23  vexatious, frivolous and legally deficient claims in the FAC; he

24  should have been dismissed from the outset.  Vedatech and

25  Subramanian, however, "unreasonably and vexatiously" multiplied the

26  proceedings in this case against Wulff as prohibited by § 1927.

27      Accordingly, the court GRANTS Wulff's motion for § 1927

28  sanctions.  Wulff states that his attorneys billed 290.9 hours for

34

1  services performed and $2,300 in costs incurred in researching and

2  drafting his motion to dismiss the FAC.  Doc #87 at 4.  All

3  attorneys at Farella who worked on Wulff's case, however, charged a

4  uniform "reduced rate" of $225/hour.  Id.  Accordingly, Wulff

5  claims he incurred $67,752.50 in attorney fees, costs and expenses

6  associated with defending against the FAC (290.0 hours x $225/hour

7  = $65,452.50 + $2,300 in costs = $67,752.50).  This amount seems

8  too high.  This is confirmed by Wulff's request for only one-third

9  of this amount, $22,584.16 or, alternatively, $70/hour ($22,584.16

10  – $2,300 = $20,284.16 / 290.9 = $69.73/hour).  Id at 5.

11        Farella does not fully explain the steep discount from

12  their claimed normal billing rates.  This seems to confirm that

13  counsel's so-called normal billing rates are the starting point for

14  negotiations concerning fees.  In any event, in this case, the

15  court need not explore all the details as the amount claimed by

16  Wulff appears reasonable.  Applying the $200/hr average market rate

17  (not the $225/hour rate of the Farella attorneys) to the requested

18  $20,284.16 for attorney fees, it appears Wulff's request for fees

19  is tantamount to seeking compensation for 101.42 hours reasonably

20  expended in defending against the FAC ($20,284.16/$200 = 101.42).

21        Having considered the tangled and complicated nature of

22  the legal and factual issues raised by Vedatech's and Subramanian's

23  49-page FAC, as well as the quality of the attorneys' work product,

24  the court finds the claim for 101.42 hours of attorney services and

25  $2,300 in legal research and duplicating costs to be reasonable in

26  preparing and defending Wulff's motion to dismiss the hefty FAC.

27  Accordingly, the court finds the following award of attorney fees

28  and costs justified:  101.42 hours at $200/hour, yielding $20,284.

United States District Court

For the Northern District of California

1    The court then adds the $2,300 incurred in duplication and legal

2    research, yielding the requested total of $22,584.

3         Accordingly, pursuant to § 1927, the court finds

4    Subramanian and Vedatech jointly and severally liable to Wulff for

5    $22,584 in attorney fees, costs and expenses incurred in defending

6    against the FAC.

7

8                                    C

9              *St Paul's and QAD's Motions to Dismiss*

10        St Paul, QAD and QADKK all move to dismiss the FAC in its

11   entirety pursuant to FRCP 12(b)(6).  Docs #44 (St Paul Mot), #45

12   (QAD/QADKK Mot).  Because the legal arguments offered by St Paul

13   and QAD in support of their individual motions substantially

14   overlap and because Vedatech and Subramanian address both motions

15   in a single opposition memorandum, Doc #66, the court will address

16   these two dispositive motions in tandem.

17

18                                    1

19        FRCP 12(b)(6) motions to dismiss essentially "test

20   whether a cognizable claim has been pleaded in the complaint."

21   Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir

22   1988).  Although a plaintiff is not held to a "heightened pleading

23   standard," the plaintiff must provide more than mere "conclusory

24   allegations."  Swierkiewicz v Sorema NA, 534 US 506, 515 (2002)

25   (rejecting heightened pleading standards); Schmier v United States

26   Court of Appeals for the Ninth Circuit, 279 F3d 817, 820 (9th Cir

27   2002) (rejecting conclusory allegations).

28        Under Rule 12(b)(6), a complaint "should not be dismissed

United States District Court
For the Northern District of California

36

United States District Court
For the Northern District of California

1   for failure to state a claim unless it appears beyond doubt that

2   the plaintiff can prove no set of facts in support of his claim

3   which would entitle [her] to relief." Hughes v Rowe, 449 US 5, 9

4   (1980) (citing Haines v Kerner, 404 US 519, 520 (1972)); see also

5   Conley, 355 US at 45-46.  All material allegations in the complaint

6   must be taken as true and construed in the light most favorable to

7   plaintiff.  See In re Silicon Graphics Inc Sec Lit, 183 F3d 970,

8   980 n10 (9th Cir 1999).  But "the court [is not] required to accept

9   as true allegations that are merely conclusory, unwarranted

10  deductions of fact, or unreasonable inferences." Sprewell v Golden

11  State Warriors, 266 F3d 979, 988 (9th Cir 2001) (citing Clegg v

12  Cult Awareness Network, 18 F3d 752, 754-55 (9th Cir 1994)).

13      Review of a FRCP 12(b)(6) motion to dismiss is generally

14  limited to the contents of the complaint, and the court may not

15  consider other documents outside the pleadings.  Arpin v Santa

16  Clara Valley Transp Agency, 261 F3d 912, 925 (9th Cir 2001).  The

17  court may, however, consider documents attached to the complaint in

18  connection with a motion to dismiss.  Parks School of Business, Inc

19  v Symington, 51 F3d 1480, 1484 (9th Cir 1995).  Additionally, the

20  court may consider "documents whose contents are alleged in a

21  complaint and whose authenticity no party questions, but which are

22  not physically attached to the pleading." See Lapidus v Hecht, 232

23  F3d 679, 682 (9th Cir 2000) (internal quotation omitted).

24

25                                  2

26                          Declaratory Relief

27      In their first cause of action, Vedatech and Subramanian

28  ask this court for a declaratory judgment pursuant to 28 USC §

1    2201.  Regarding St Paul, Vedatech and Subramanian seek fourteen

2    judicial declarations.  Doc #35 (FAC) at 25-27.  This lengthy list

3    of requested declarations, in essence, requests this court to

4    declare that: (1) the settlement agreement with QAD is null and

5    void; (2) St Paul had no authority to enter into this agreement and

6    (3) St Paul has acted in bad faith and breached its fiduciary

7    duties to Vedatech and Subramanian in entering into the settlement

8    agreement.  Regarding QAD and QADKK, Vedatech and Subramanian ask

9    this court to declare that:  (1) QAD and QADKK cannot rely upon the

10   settlement agreement as a defense to Vedatech and Subramanian's

11   affirmative claims in the second action and (2) any release of

12   claims (affirmative or counterclaims) by QAD and QADKK under the

13   settlement agreement are final.

14          The court begins by noting the contradictory nature of

15   these requested declarations; Vedatech and Subramanian ask the

16   court to declare the settlement agreement non-binding on Vedatech

17   and Subramanian, but then request the court declare it binding and

18   final on QAD and QADKK.  More importantly, however, the court notes

19   the duplicative nature of these declarations – the issues

20   underlying these declarations (e g, the validity of the agreement,

21   St Paul's authority to enter into the agreement and the presence of

22   bad faith) are _all_ squarely before the Santa Clara superior court

23   in the twice-remanded consolidated action and in the now-remanded

24   third action.  Whether the settlement agreement is binding, void,

25   unconscionable or the product of bad faith are all arguments that

26   can be made to Judge Komar, the judge who will actually be the one

27   to enforce the settlement agreement in the consolidated action.

28   Moreover, Vedatech and Subramanian recognize this fact in their

United States District Court

For the Northern District of California

38

opposition by stating: "Any effect of any order preventing QAD and St Paul from proceeding with their "settlement," will be <u>exactly the same as an order that may be obtained within either of the underlying cases</u>." Doc #66 at 6-7. The court agrees with Vedatech and Subramanian's assertion.

Accordingly, Vedatech and Subramanian are asking the court to issue a declaratory judgment regarding certain contractual rights they, St Paul, QAD and QADKK <u>may</u> or <u>may not</u> have in two pending state court cases. It is clear that Vedatech and Subramanian are wary regarding whether Judge Komar will decide to enforce the settlement agreement. This apprehension, however, is insufficient to justify this court exercising its discretion to issue declaratory relief. The Ninth Circuit has made clear that the purpose of declaratory relief in federal courts is not to "provide insurance against [a] state court deciding the * * * issues less favorably than a district court." <u>Exxon Shipping Co v Airport Depot Diner, Inc</u>, 120 F3d 166, 169 (9th Cir 1997). "Declaratory relief is not authorized so that lower federal courts can sit in judgment over state courts, <u>and it is not a substitute for removal</u>." Id at 170 (emphasis added). See also 26 CJS Declaratory Judgments § 120 ("The declaratory judgment procedure should not be employed by federal courts to control state action, or to bring into the federal courts actions which are pending in the state courts.").

Under <u>Exxon</u>, Vedatech and Subramanian cannot avoid Judge Komar's adjudication of issues squarely before him in state court by seeking declaratory relief in federal court. Accordingly, the court refuses to exercise its discretion in issuing declaratory

United States District Court
For the Northern District of California

1  relief and GRANTS St Paul's, QAD and QADKK's motions to dismiss

2  with prejudice Vedatech and Subramanian's first cause of action for

3  declaratory relief.

4

5                                    3

6                                  *Fraud*

7          Next, Vedatech and Subramanian assert causes of action

8  for fraud against St Paul, QAD and QADKK.  Doc #35 (FAC) at 31-35.

9  Vedatech and Subramanian contend that St Paul intentionally "failed

10  to disclose the nature and details of [its] prior contacts and

11  relationship with Wulff."  Id at 32.  St Paul intentionally

12  withheld this information, according to Vedatech and Subramanian,

13  to "induce them to attend the mediation under terms that were

14  favorable to [St Paul, QAD and QADKK] and harmful to [Vedatech and

15  Subramanian]."  Id at 33.  Moreover, QAD and QADKK "became aware of

16  [St Paul's] fraudulent schemes during the mediation," but "with an

17  intent to harm Vedatech [and Subramanian] * * * QAD participated in

18  the ongoing fraudulent scheme * * * rel[ying] upon the idea that

19  the cloak of secrecy in mediation can be used to engage in

20  fraudulent and collusive schemes * * *."  Id at 35.  Finally,

21  Vedatech and Subramanian assert that they indeed relied upon these

22  fraudulent omissions when they "consented" to attend the mediation

23  and thus the fraud has caused them "heavy damages."  Id at 34.

24          To prevail on a claim for fraud in California, Vedatech

25  and Subramanian must prove by a preponderance of the evidence that:

26  (1) St Paul, QAD and QADKK made a knowingly false representation;

27  (2) the false representation was made with the intent to deceive or

28  induce reliance by Vedatech and Subramanian; (3) Vedatech and

United States District Court
For the Northern District of California

                                    40

United States District Court
For the Northern District of California

1    Subramanian justifiably relied on these false representations; and

2    (4) they incurred damages resulting from the fraud.  <u>Smith v</u>

3    <u>Allstate Insurance Co</u>, 160 F Supp 2d 1150, 1152 (SD Cal 2001)

4    (citing <u>Wilkins v Nat'l Broadcasting Co</u>, 71 Cal App 4th 1066

5    (1999)).  Additionally, alleged material omissions (as alleged in

6    this case) may constitute a "false representation" under the first

7    element of fraud "when the defendant[s] had exclusive knowledge of

8    material facts not known to the plaintiff[s]."  <u>Wilkins</u>, 71 Cal App

9    4th at 1082.

10        The court cannot grant St Paul's, QAD's and QADKK's

11    12(b)(6) motion to dismiss unless it appears beyond doubt that

12    Vedatech and Subramanian can prove no set of facts in support of

13    their fraud claim which would entitle them to relief.  <u>Hughes</u>, 449

14    US at 9.

15        Vedatech and Subramanian claim that St Paul, QAD and

16    QADKK concealed a material fact (known only to them) when they

17    failed to disclose that Wulff had conducted prior meditations for

18    St Paul.  Assuming that St Paul withheld such information, under

19    <u>Wilkins</u>, such an omission could meet the first element of a fraud

20    claim.  Next, they claim that these omissions and representations

21    were made to induce Vedatech and Subramanian to consent to

22    mediation before Wulff and thus the second element of a fraud claim

23    could be proven.  Vedatech and Subramanian's own submissions to the

24    court, however, show that they can prove no set of facts that would

25    meet the third and fourth elements of a fraud claim.  Vedatech and

26    Subramanian assert that they "were unaware of the information that

27    was deliberately withheld from them, and relied upon these

28    misrepresentations  * * * in consenting" to attend mediation before

41

1    Wulff.  Doc #35 at 34.  No facts can support this assertion for,

2    quite simply, it is not true.  Vedatech and Subramanian did not

3    "consent" to mediate before Wulff; they were ordered -- twice -- by

4    Judge Komar to attend the Wulff mediation.  Judge Komar first

5    ordered Vedatech and Subramanian to attend this mediation on

6    February 6, 2004.  Doc #84, Ex 6 (Med Order) ("It is ORDERED that

7    Mani Subramanian is required by the Court to appear in person at

8    mediation with St Paul and QAD parties in front of Randall Wulff *

9    * *.  Failure to appear at the mediation will bring Mr Subramanian

10   in contempt of the Court * * *.").  What is more, it was Vedatech

11   and Subramanian, not any of the defendants, that supplied the court

12   with a copy of Judge Komar's February 6, 2004, order.  On March 4,

13   2004, Judge Komar again ordered the parties to attend mediation

14   before Wulff.  Doc #46, Ex B (2d Med Order).  Accordingly, Vedatech

15   and Subramanian cannot prove facts showing their attendance at the

16   mediation was based upon justifiable reliance on defendants'

17   alleged omissions; their attendance was based upon court order.

18   Because they can offer no facts to prove this third element of

19   fraud, Vedatech and Subramanian have failed to state a cause of

20   action for fraud.

21        Because St Paul, QAD and QADKK cannot be held liable in

22   tort for fraud, it follows that none can be liable for conspiracy

23   to commit fraud.  "Standing alone, a conspiracy does no harm and

24   engenders no tort liability.  It must be activated by the

25   commission of an actual tort.  A civil conspiracy, however

26   atrocious, does not per se give rise to a cause of action unless a

27   civil wrong has been committed resulting in damage."  Allied

28   Equipment Corp v Litton Saudi Arabia Limited, 7 Cal 4th 503, 511

1  (1994) (internal quotations and citation omitted).

2          For these reasons, St Paul's, QAD's and QADKK's motions

3  to dismiss with prejudice the FAC's claims of fraud and conspiracy

4  to commit fraud are GRANTED.

5

6                              4

7                      *Constructive Fraud*

8          Next, Vedatech and St Paul assert a cause of action for

9  constructive fraud against St Paul.  Doc #35 at 36.  For the

10  reasons discussed above in connection with dismissal of the fraud

11  claims, Vedatech and Subramanian have failed to state a claim for

12  constructive fraud.

13          "Unlike actual fraud, constructive fraud depends on the

14  existence of a fiduciary relationship of some kind * * *.  The

15  elements of the cause of action for constructive fraud are: (1)

16  fiduciary relationship; (2) nondisclosure (breach of fiduciary

17  duty); (3) intent to deceive, and (4) reliance and resulting injury

18  (causation)."  Younan v Equifax, Inc, 111 Cal App 3d 498, 516-17n14

19  (1980).  Vedatech and Subramanian assert that St Paul owed them a

20  fiduciary duty as an insurer and thus element one is met (QAD and

21  QADKK have no fiduciary relationship with Vedatech and

22  Subramanian).  Next, they claim that St Paul failed to disclose its

23  prior connections with Wulff with the intent to deceive Vedatech

24  and Subramanian into consenting to attend the mediation (element

25  two and three).  The fact that Judge Komar ordered Vedatech and

26  Subramanian to attend the Wulff mediation, however, prevents them

27  from proving facts to support the last element of constructive

28  fraud.  Again, Vedatech and Subramanian's attendance at the

1  mediation was not the product of reliance on any alleged omission

2  by St Paul; the attendance was court-ordered.

3          For the same reasons discussed above in relation to

4  conspiracy to commit fraud, Vedatech and Subramanian cannot state a

5  cause of action for conspiracy to commit constructive fraud.  See

6  *supra* Part IV(C)(3).  St Paul's motion to dismiss with prejudice

7  the FAC's claim of constructive fraud and conspiracy to commit

8  constructive fraud is GRANTED.

9

10                              5

11              *Negligent Misrepresentation*

12          Next, Vedatech and Subramanian assert a cause of action

13  against St Paul for negligent misrepresentation.  Doc #35 at 39.

14  The allegations underlying this claim are the same omissions used

15  to form the basis for the fraud and constructive fraud claims (i e,

16  failure to disclose St Paul's prior connection with Wulff).  In

17  California, however, negligent misrepresentation requires a

18  "positive" assertion or representation which is false;

19  representation by omission is not sufficient.  Byrum v Brand, 219

20  Cal App 3d 926, 942 (1990).  See also Sharp v Hawkins, 2004 US Dist

21  LEXIS 22928, *11 (ND Cal 2004) (stating that under California law,

22  "omissions or non-disclosure * * * standing alone are insufficient

23  to sustain a claim for negligent misrepresentation." (citing Byrum,

24  219 Cal App 3d at 942)).

25          Because Vedatech and Subramanian's claim for negligent

26  misrepresentation is based upon non-disclosures, the court GRANTS

27  St Paul's motion to dismiss with prejudice the FAC's claims for

28  negligent misrepresentation.

                              44

6

*Insurance Bad Faith*

Next, Vedatech and Subramanian assert a cause of action against St Paul for "insurance bad faith (breach of covenant of good faith and fair dealing)." Doc #35 at 40-42.  In support of this claim, Vedatech and Subramanian offer the court a laundry list of alleged bad faith acts committed over a period of years by St Paul.  Id.  The court, however, need not determine whether Vedatech and Subramanian have stated a cause of action for "insurance bad faith," for even if such a claim has been stated, the court must abstain from adjudicating this claim pursuant to <u>Colorado River Water Conservation District v United States</u>, 424 US 800 (1976).

As ordered above, the third action is remanded back to state court (State Docket No 1-02-CV-805197).  See *supra* Part III.  In the third action, St Paul seeks a judicial declaration regarding the scope of its duty to defend Vedatech and Subramanian in relation to the consolidated action as well as other issues surrounding the insurance policy.  Vedatech and Subramanian filed a counterclaim in the this action alleging "insurance bad faith."  In fact, just prior to removing the third action to this court, Vedatech and Subramanian filed their 112-page fourth amended cross-complaint against St Paul in state court.  See 1-02-CV-805197, Doc #121.  Moreover, in asserting the claim for insurance bad faith, the FAC <u>directs</u> the court's attention to the <u>state</u> <u>court</u> fourth amended cross-complaint in the third action to detail fully the bad faith allegations against St Paul.  Doc #35 (FAC) at 40.  Because the court has now remanded the third action back to state court, there are now two "insurance bad faith" claims asserted by Vedatech

United States District Court
For the Northern District of California

1   and Subramanian against St Paul; one is in state court and the

2   other is in federal court.

3          As this court has recently stated, "the <u>Colorado River</u>

4   doctrine permits [dismissal of a case] in the interests of wise

5   judicial administration when substantially similar claims are

6   pending in state court." <u>Le v County of Contra Costa</u>, 1999 US Dist

7   LEXIS 19611, *2 (ND Cal 1999) (Walker, J) (citations omitted).

8   "The threshold question is whether the state and federal suits are

9   substantially similar." Id at 3 (citing <u>Nakash v Marciano</u>, 882 F2d

10  1411, 1416 (9th Cir 1989)). "If so, the factors to consider are:

11  (1) the desirability of avoiding piecemeal litigation; (2) the

12  inconvenience of the federal forum; (3) the order in which

13  jurisdiction was obtained; (4) the source of the governing law and

14  (5) whether the state court proceedings could adequately protect

15  the federal plaintiff's rights." Id (citing <u>Martinez v Newport</u>

16  <u>Beach City</u>, 125 F3d 777, 785 (9th Cir 1997)). Additionally, the

17  court may consider whether the plaintiff in the federal action has

18  engaged in forum shopping. <u>Silvaco Data Systems, Inc v Technology</u>

19  <u>Modeling Associates, Inc</u>, 896 F Supp 973, 975 (ND Cal 1995) (citing

20  <u>Nakash</u>, 882 F2d at 1417).

21         Here, the combination of these factors make a compelling

22  case for abstention under <u>Colorado River</u>. First, the state and

23  federal suits involve the same parties and claims and arise out of

24  the same conduct. California law regarding contracts and insurance

25  will govern both cases. Piecemeal litigation would certainly

26  result if the federal action were to proceed. The state court

27  obtained jurisdiction first; well over two years prior to the

28  federal court. The convenience factor is neutral. With respect to

the rights of Vedatech and Subramanian, the court is convinced that
the state court is up to the task of deciding state law claims
arising from an alleged breach of the duty of good faith and fair
dealing.  Finally, to say that Vedatech and Subramanian have
engaged in forum shopping would be an understatement; they are
desperate to obtain a federal forum to prevent the state court from
enforcing the settlement agreement, and they have employed several
inappropriate means to attain this forum.  These reasons, plus an
obvious advancement of judicial economy, convince the court it
should abstain from adjudicating Vedatech and Subramanian's claim
for insurance bad faith to avoid duplicative state proceeding.

"[D]istrict courts must stay, rather than dismiss, an
action when they determine that they should defer to the state
court proceedings under Colorado River."  Coopers & Lybrand v Sun-
Diamond Growers of California, 912 F2d 1135, 1138 (9th Cir 1990)
(emphasis added).  Accordingly, the court DENIES St Paul's motion
to dismiss the claim for insurance bad faith.  Rather, the court
STAYS adjudication of this claim pending the resolution of
Vedatech's and Subrmanian's fourth amended counterclaim in the
third action in the Santa Clara superior court.

Vedatech and Subramanian shall file with the court a
status report within 30 days of disposition of the insurance bad
faith claim in state court.  Failure timely to file such a report
shall be deemed a failure to prosecute and result in dismissal of
this action.  To be clear, Vedatech and Subramanian are not to file
any other memoranda relating to this cause of action save the above
described status report.

United States District Court
For the Northern District of California

47

7

*Unfair Competition*

Finally, Vedatech and Subramanian assert a claim for
unfair competition against St Paul, QAD and QADKK pursuant to Cal
Bus & Prof Code § 17200 et seq.  Cal Bus & Prof Code § 17203
provides, in pertinent part, that:

> any person who * * * has engaged * * * in unfair
> competition may be enjoined * * *.  The court may make
> such orders or judgments * * * as may be necessary to
> restore to any person in interest any money or
> property, real or personal, which may have been
> acquired by means of such unfair competition.

For the purposes of the current claim, the term "unfair
competition" is defined as "any unlawful, unfair or fraudulent
business act or practice."  Cal Bus & Prof Code § 17200.

According to Vedatech and Subramanian, St Paul, QAD and
QADKK have engaged in a "pattern of behavior that is unlawful,
unfair or fraudulent," including (as with most other claims in the
FAC):  (1) St Paul's failure to disclose its prior contacts with
Wulff, (2) fraudulently obtaining Vedatech and Subramanian's
"consent" to attend the mediation and (3) QAD and QADKK learning of
such deception and failing to disclose it in order to "benefit to
the tune of $500,000."  Doc #35 (FAC) at 42-46.  In essence,
Vedatech and Subramanian claim that St Paul and QAD engaged in
unfair competition by fraudulently obtaining Vedatech and
Subramanian's consent to attend mediation and the resulting injury
was the settlement agreement between St Paul, QAD and QADKK which
(1) deprived Vedatech and Subramanian of their right to pursue
affirmative claims against QAD and QADKK and (2) unjustly enriched
QAD and QADKK by $500,000 which belonged to Vedatech and

United States District Court

For the Northern District of California

1    Subramanian.

2         The FAC seeks restitution from QAD and QADKK in the

3    amount of $500,000 and requests (nebulously) the court to order St

4    Paul to disgorge "all benefits that are due to Vedatech under the

5    California Unfair Competition laws."  Vedatech and Subramanian are

6    careful to frame all requested relief in the form of equitable

7    remedies, as § 17203 does <u>not</u> allow damages to be recovered.  <u>Korea</u>

8    <u>Supply Co v Lockheed Martin Corp</u>, 29 Cal 4th 1134, 1144 (2003).

9    For several reasons, Vedatech and Subramanian can prove no set of

10   facts to support this cause of action and thus the claim must be

11   dismissed pursuant to FRCP 12(b)(6).

12        First, as the court discussed above, no fraudulent or

13   unfair practice on the part of St Paul, QAD or QADKK caused

14   Vedatech and Subramanian to attend the mediation; attendance was

15   court-ordered my Judge Komar -- twice.  Next, assuming arguendo

16   that the alleged non-disclosures did trick Vedatech and Subramanian

17   into attending the Wulff mediation, they cannot prove that the

18   resulting settlement agreement (the geneses of all ensuing

19   "damages") was, in the words of § 17203, "acquired by means of such

20   unfair competition."  The settlement agreement explicitly states

21   that "it is not intended to impair the prosecution by Vedatech of

22   any and all affirmative claims that may exists with respect to the

23   First or Second Action * * *."  Doc #35 (FAC), Ex A (Sett

24   Agreement) at 5 ¶8.  Moreover, as mentioned above, the settlement

25   agreement was not entered into until <u>after</u> Vedatech and Subramanian

26   left the mediation.  If Vedatech and Subramanian were not present

27   when the settlement agreement was negotiated, it follows that the

28   settlement agreement could not have been acquired by the means of

United States District Court

For the Northern District of California

1  St Paul, QAD and QADKK's alleged fraudulent scheme to trick

2  Vedatech and Subramanian into attending the mediation.

3          Finally, even if St Paul, QAD and QADKK engaged in unfair

4  practices (which the court assumes solely for this motion) and even

5  if these practices tricked Vedatech and Subramanian into attending

6  the mediation (which clearly they did not), Vedatech and

7  Subramanian can prove no facts showing that they are entitled to

8  any equitable relief.  First, Vedatech and Subramanian's nebulous

9  assertion that they are entitled to require St Paul to "disgorge

10  all such benefits that are due" to Vedatech and Subrmanian is

11  conclusory and unwarranted and thus does not suffice to state a

12  cause of action.  St Paul received <u>nothing</u> via the settlement

13  agreement that the court can order them to disgorge (if anything,

14  St Paul was forced to pay $500,000).  Nor can Vedatech and

15  Subramanian prove that they are entitled to restitution of the

16  $500,000 which was paid to QAD and QADKK by St Paul.

17  "[R]estitution [is an order] compelling a [] defendant to return

18  money obtained through an unfair business practice to those persons

19  * * * <u>who had an ownership interest in the property</u> * * *."  <u>Korea</u>

20  <u>Supply Co</u>, 29 Cal 4th at 1144-45.  Vedatech and Subramanian,

21  however, have pled no facts showing that they have any ownership

22  interest in the $500,000 St Paul paid to QAD and QADKK.  Rather,

23  the FAC simply states that St Paul paid QAD and QADKK the $500,000

24  "from funds that [were] held in trust for the Vedatech parties."

25  Doc #35 at 47.  This legal conclusion, however, is not supported by

26  any facts pled in the FAC and legal conclusions, standing alone,

27  cannot suffice to state a cause of action.  See <u>Sprewell</u>, 266 F3d

28  at 988 ("the court [is not] required to accept as true allegations

50

1   that are merely conclusory, unwarranted deductions of fact, or

2   unreasonable inferences.").

3         For the numerous and substantial reasons discussed above,

4   St Paul's, QAD's and QADKK's motions to dismiss with prejudice the

5   FAC's seventh cause of action for unfair competition are GRANTED.

6

7                                    IV

8                    *QAD and QADKK Motion for Sanctions*

9         Finally, QAD and QADKK move this court to sanction

10  Vedatech and Subramanian pursuant to FRCP 11.  The court, however,

11  has already sanctioned Vedatech, Subramanian and Gonzaga for the

12  improper behavior each has demonstrated throughout this litigation

13  and the court does not believe any further Rule 11 sanctions are

14  appropriate at this time.  Additionally, QAD and QADKK move for

15  sanctions pursuant to § 1927.  The court does not believe such

16  sanctions are appropriate.  QAD and QADKK have not had to defend

17  two frivolous petitions for removal (at least not in the present

18  action) as St Paul has had to do, nor have QAD and QADKK had to

19  defend a frivolous Rule 11 motion as Wulff has had to do.  QAD and

20  QADKK were named in the FAC, they filed a motion to dismiss and the

21  motion is now being adjudicated.  No doubt QAD and QADKK have

22  incurred costs and fees in defending against the FAC.  But every

23  defendant incurs costs and fees.  The costs and fees awarded to St

24  Paul and Wulff above did not stem from simply being named in the

25  FAC and having to defend themselves.

26        QAD and QADKK's motion to sanction is DENIED.

27  //

28  //

                                    51

United States District Court
For the Northern District of California

**V**

In sum, the court GRANTS St Paul's motions (04-1403 Docs ##11, 40) (C-04-1818 Docs ##7, 19) to remand and REMANDS Nos 04-1818 and 04-1403 to Santa Clara superior court.  The court ORDERS Vedatech and Subramanian to pay $20,738.75 to St Paul pursuant to 28 USC § 1447(c).  Additionally, the court GRANTS St Paul's motion for Rule 11 sanctions (04-1249 Doc #97) (04-1403 Doc #52) (04-1818 Doc #32) and SANCTIONS Subramanian $1,000 and SANCTIONS Gonzaga $5,000.  These sanctions are payable to the court on or before July 25, 2005.

The court GRANTS Wulff's motion to dismiss (04-1249 Doc #52).  The court DENIES Vedatech's and Subramanian's motion for Rule 11 sanctions against Wulff (04-1249 Doc #61).  The court ORDERS Vedatech and Subramanian to pay Wulff $15,000 for fees and costs incurred in opposing the Rule 11 motion.  Additionally, the court GRANTS Wulff's motion for sanctions pursuant to § 1927 (04-1249 Doc #86) and ORDERS Vedatech and Subramanian to pay $22,584 to Wulff.

QAD's and QADKK's motions to dismiss with prejudice all claims asserted against them are GRANTED (04-1249 Doc #44).  QAD and QADKK's motion for sanctions are DENIED (04-1249 Doc #106).  St Paul's motion to dismiss the FAC is GRANTED IN PART (04-1249 Doc #45).  The court STAYS adjudication of Vedatech's and Subramanian's claim for insurance bad faith against St Paul.

Hence, every action and claim (save one) to which Vedatech is a party has been either remanded or dismissed and the one remaining claim has been stayed pending state court resolution.  Accordingly, the court does not find it appropriate to rule on

United States District Court

For the Northern District of California

1   Gonzaga's and Knopf's second motion to withdraw as counsel for

2   Vedatech.  If they still wish to withdraw as counsel, they should

3   address their arguments to the Santa Clara superior court.

4   Accordingly, the second motion to withdraw is DENIED as moot (04-

5   1249 Doc #148) (04-1403 Doc #70) (04-1818 Doc #51).  Gonzaga and

6   Knopf's motions to strike are DENIED as moot.   (04-1249 Doc #154)

7   (04-1403 Doc #74) (04-1818 Doc #55).  Subramanian and Vedatech's

8   motion for further oral argument are DENIED as moot.   (04-1249 Doc

9   #112) (04-1403 Doc #63) (04-1818 Doc #43).  Finally, Subramanian

10  and Vedatech's request to remain an e-filer in 04-1403 is DENIED as

11  moot.

12          The clerk shall administratively close the file.  This

13  does not represent a final adjudication but an administrative

14  convenience for the court.  Upon receipt of the state court's order

15  resolving the insurance bad faith claim in the state court, the

16  clerk shall re-open the file upon a request of one of the parties.

19  IT IS SO ORDERED.

22  VAUGHN R WALKER

23  United States District Chief Judge

**United States District Court**
For the Northern District of California

53

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

**JUL 19 2007**

**CATHY A. CATTERSON, CLERK**
**U.S. COURT OF APPEALS**

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY and UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>  Plaintiffs- Appellees,<br><br>  v.<br><br>VEDATECH INTERNATIONAL, INC., et al.<br><br>  Defendants- Appellants. | No. 05-16255<br><br>D.C.No. CV-04-01403-VRW<br><br>MEMORANDUM[*] |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY and UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>  Plaintiffs- Appellees,<br><br>  v.<br><br>VEDATECH INTERNATIONAL, INC., et al<br><br>  Defendants- Appellants. | No. 05-16261<br><br>D.C.No.  CV-04-01818-VRW |

---

   [*]This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

VEDATECH INC., VEDATECH K.K., and
MANI SUBRAMANIAN,

    Plaintiffs-Appellants,

    v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, UNITED
STATES FIDELITY AND GUARANTEE
COMPANY, QAD INC., QAD JAPAN
K.K., and RANDALL WULFF,

    Defendants-Appellees.

No. 05-16405

D.C.No. CV-04-01249-VRW

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding
Argued and Submitted May 16, 2007
San Francisco, California

Before:    B. FLETCHER, SILER,** and HAWKINS, Circuit Judges.

    This is a consolidated appeal that began as a state court insurance coverage

action that was twice removed to federal court. Vedatech International Inc., Vedatech

Inc., Vedatech K.K. and *pro se* defendant Mani Subramanian (collectively

"Appellants") appeal the district court's remand orders, its order granting attorneys'

fees to St. Paul Fire & Marine Insurance Company ("St. Paul"), its order sanctioning

_____

    **The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the
Sixth Circuit, sitting by designation.

2

Appellants' attorney and Subramanian, and its dismissal of Appellants' claims that arose from a mediation among the parties. We affirm.

1.    **Standard of Review for Remand Orders**

Appellants argue that the Ninth Circuit should employ a good faith analysis when reviewing remand orders. *See, e.g., Archuleta v. Lacuesta*, 131 F.3d 1359, 1362 (10th Cir. 1997). However, the Supreme Court has held that "remands based on grounds specified in § 1447(c) are immune from review." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996). The district court remanded because no federal question existed, which is a ground enumerated in § 1447(c). Therefore, Appellants' argument is without merit.

2.    **Attorneys' Fees**

The district court has discretion to order attorneys' fees for an improperly removed case, and it did not abuse that discretion here. *See Moore v. Permanente Medical Group, Inc..* 981 F.2d 443, 447 (9th Cir. 1992). Notably, Appellants' central argument in favor of removal of district court cases 04-1818 and 04-1403 was fully adjudicated in the district court and in this court in earlier proceedings related to district court cases 04-1035 and 04-1806.

3.    **Sanctions for Second Notice of Removal**

3

"The imposition of Rule 11 sanctions . . . requires only a showing of objectively unreasonable conduct." *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004). Here, Appellants' conduct was objectively unreasonable, as they filed the second notice of removal before the first notice of removal had been adjudicated and, thus, at a time when the court lacked any ability to act on the notice at all. *See* 28 U.S.C. § 1446(d). The removal they filed was hundreds of pages in length and did nothing more than duplicate arguments from the initial removal.

**4.    Retrospective Rule 11 Motions**

Appellants argue that it was impermissible for the district court to invite St. Paul to file Rule 11 motions. Rule 11(c)(1)(B) allows the court to initiate sanctions on its own; therefore, the district court did not err by inviting the filing of motions for sanctions.

**5.    *Colorado River* Stay**

The district court declined to adjudicate Appellants' insurance bad faith claim under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because essentially the same claims were pending in state and federal court. All the parties, issues, and governing law are the same in both suits. The state court obtained jurisdiction two years prior to the federal court. Certainly, the state court could adequately protect Appellants' rights. The district court properly determined

4

that a stay was appropriate. *See Holder v. Holder*, 305 F.3d 854, 863 (9th Cir. 2002);

*Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997).

### 6.    Injunctive and Declaratory Relief

The district court correctly rejected the Appellants' claim for injunctive relief

as no cause of action existed under California law. *See Major v. Miraverde

Homeowners Ass'n, Inc.*, 7 Cal. App. 4th 618, 623 (1992). Because the requests for

declaratory relief are all related to the contractual rights at issue before the state court,

it was within the district court's discretion to decline the parties' requests. *See Wilton

v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).

### 7.    State Tort Law Claims

The district court correctly dismissed Appellants' fraud and negligent

misrepresentation claims against St. Paul and mediator Randall Wulff, as well as

Appellants' constructive fraud, conspiracy to commit fraud, and unfair competition

claims against QAD. As to the three fraud-related claims, the district court correctly

found no causal connection between the fraud alleged and any "harm" allegedly

sustained by Appellants. *Wilkins v. Nat'l Broadcasting Co.*, 71 Cal. App. 4th 1066,

1081 (1999) (noting that "resulting damages" must be alleged to make out cause of

action for fraud); *Hurvitz v. St. Paul Fire & Marine Ins., Inc.*, 109 Cal. App. 4th 918,

929-30 (2003) (holding that insurer may settle claims on insured's behalf without

insured's consent at least where the insurance policy does not provide otherwise).[1]

As to the negligent misrepresentation claims, the district court correctly found that

the misrepresentation complained of by Appellants—i.e., that St. Paul and Wulff

never told Appellants that Wulff was a "biased" mediator who had worked with St.

Paul before—was an *omission*, not an affirmative misstatement, and that California

negligent misrepresentation law covers only the latter. *See Vega v. Jones, Day,

Reavis & Pogue*, 121 Cal. App. 4th 282, 290 (2004) . As to the unfair competition

claim, the district court correctly found that the relief Appellants requested—i.e.,

"restitution" of the $500,000 QAD received as a result of the settlement—is

unavailable to Appellants under California law. *See Korea Supply Co. v. Lockheed

Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (holding that plaintiff cannot recover

damages under Cal. Bus. & Prof. Code § 17200 unless plaintiff has "an ownership

interest in the money it seeks to recover").

## 8.    Leave to Amend

The district court did not abuse its discretion by dismissing Vedatech's first

amended complaint without leave to amend. Appellants filed an initial complaint to

---

[1] The district court also correctly found that the constructive fraud claim against QAD should be dismissed because that claim can only be sustained against *fiduciaries*, and QAD stood in an *adversarial*, rather than a fiduciary, position with respect to Appellants. *See Tyler v. Children's Home Soc'y*, 29 Cal. App. 4th 511, 548 (1994).

6

which St. Paul and the QAD parties responded. Appellants then filed the first amended complaint. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).

## 9.    Section 1927 Sanctions

28 U.S.C. § 1927 provides that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Given the district court's first hand perspective on the numerous motions for extensions of time and errata briefs filed by Appellants, along with Subramanian's own admission that his filings against the mediator "were incomplete and inaccurate," the district court did not abuse its discretion in imposing sanctions under § 1927. *Cf. Grid Systems Corp. v. John Fluke Mfg. Co., Inc.*, 41 F.3d 1318, 1319 (9th Cir. 1994).

## 10.    Private Mediator Immunity

As this is a diversity action, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), requires the application of California law. California law affords quasi-judicial immunity to people who "fulfill quasi-judicial functions intimately related to the judicial process." *Howard v. Drapkin*, 222 Cal. App. 3d 843, 847 (1990); *see also*

*Asmus v. Pac. Bell*, 23 Cal. 4th 1, 6 (2000) (indicating that decisions from both the California Supreme Court *and* the California Court of Appeal are "controlling precedent" for federal courts in diversity cases); *Great W. Shows, Inc. v. L.A. County*, 229 F.3d 1258, 1259 (9th Cir. 2000) (same). A mediator, such as Randall Wulff, "fulfilling a quasi-judicial function intimately related to the judicial process" qualifies for such immunity. *Id.* at 854.

**11.    Private Mediator Sanctions under Rule 11**

Wulff described himself as a "court-appointed" mediator throughout his motion to dismiss. This was not a bad faith misrepresentation. Appellants offer no compelling argument why someone who was a court-appointed mediator could not refer to himself as such in court documents. The district court did not err in refusing to impose Rule 11 sanctions against Wulff. *See Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1546 (9th Cir. 1993).

**12.  Recusal**

Appellants' argument that the district judge should have recused himself is meritless. "[I]n the absence of some extrajudicial source of bias or impartiality," statements made by a judge during the course of trial or in an opinion are insufficient to support a recusal challenge. *United States v. Martin*, 278 F.3d 988, 1005 (9th Cir. 2002). Here, Appellants accused the district judge of bias only *after* learning of his

8

unfavorable ruling, and they base their challenge on that opinion.  This is not enough to demonstrate bias or impartiality.

**AFFIRMED.**

1  CHRISTINA GONZAGA (CSBN # 221187)
   LAW OFFICES OF JAMES S. KNOPF
2  1840 Gateway Drive, Suite 200
   San Mateo, CA 94404
3  Telephone: (650) 627-9595
   Facsimile: (888) 715-9583
4
   Attorney for Plaintiffs
5  VEDATECH K.K, and VEDATECH INC.

6  MANI SUBRAMANIAN (PRO PER)
   c/o LAW OFFICES OF JAMES S. KNOPF
7  1840 Gateway Drive, Suite 200, San Mateo, CA 94404
   Telephone: (650) 627-9595
8  Facsimile: (888) 715-9583

9

10              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
11                  (San Francisco Division)

12  **VEDATECH INC.**, a Washington State        **Case No.: C-04-01249 VRW**
    Corporation, *and* **VEDATECH K.K.**, a
13  Japanese Corporation, *and* **MANI**         **FIRST AMENDED COMPLAINT**
    **SUBRAMANIAN**, an Individual;             of Plaintiffs
14                                               **VEDATECH INC., VEDATECH K.K. and**
15                  Plaintiffs,                  **MANI SUBRAMANIAN for**
                                                 1.  **DECLARATORY JUDGMENT;**
16              vs.                              2.  **PERMANENT INJUNCTION;**
                                                 3.  **FRAUD / MISREPRESENTATION;**
17  **ST.PAUL FIRE & MARINE**                        **CONSPIRACY TO COMMIT FRAUD;**
    **INSURANCE COMPANY,**                       4.  **CONSTRUCTIVE FRAUD;**
18  a Minnesota Corporation, *and*                   **CONSPIRACY TO COMMIT FRAUD;**
    **UNITED STATES FIDELITY AND**               5.  **NEGLIGENT**
19  **GUARANTY COMPANY,**                            **MISREPRESENTATION;**
    a Maryland Corporation; *and*                6.  **INSURANCE BAD FAITH (BREACH**
20  **QAD INC.**, a Delaware Corporation; *and*      **OF COVENANT OF GOOD FAITH**
21  **QAD Japan K.K.**, a Japanese Corporation;      **AND FAIR DEALING)**
    *and*                                        7.  **UNFAIR COMPETITION;**
22  **RANDALL WULFF**, an individual;            *and*
    *and* **DOES 1-50;**
23                                               **DEMAND FOR JURY TRIAL**
24                  Defendants.
25

26  ────────────────────────────────────────────────────────────
                            Page 1 of 49
27  ────────────────────────────────────────────────────────────
            **First Amended Complaint** *of*
28  Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
    <u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

Plaintiffs VEDATECH INC., VEDATECH, K.K., and MANI SUBRAMANIAN

allege as follows:

**JURISDICTION**

1.     This court has jurisdiction under  28 USC §1332 (a)(3) ("citizens of different

States and in which citizens or subjects of a foreign state are additional parties" – please see

the section titled "THE PARTIES" in the next page.)

2.     The amount in controversy exceeds US$ 75,000.

**VENUE AND INTRADISTRICT ASSIGNMENT (SAN FRANCISCO)**

3.     Venue is proper in the Northern District of California as required under the

provisions of 28 USC § 1391 and according to the Northern District's Civil L-R 3-2.

4.     Defendant St.Paul Fire and Marine Insurance Co. is a resident of, and

maintains offices (its Regional Claims office) in, San Francisco County at 100 California

Street, Suite 300, San Francisco, California 94111.

5.     Defendant United States Fidelity and Guaranty Co., a wholly owned and

controlled subsidiary of defendant St.Paul Fire and Marine Insurance Co., is a resident of,

and maintains offices in San Francisco County at One Market Plaza, Ste., 2075 San

Francisco, CA 94105.

6.     Defendants QAD Inc. and QAD Japan K.K. are subject to personal

jurisdiction in the County of San Francisco.

7.     Randall Wulff, a key player in the events relevant herein is a resident of

Piedmont, California in Alameda County.

8.     A substantial part of the events that give rise to the Claims occurred in

Alameda County, California.  In addition, most or all of the negotiations regarding the

"agreement" attached as Exhibit-A and the subject matter of this complaint, were undertaken

by Mr. Tancredy of St.Paul from its Oakland offices in Alameda County.

Page 2 of  49

**First Amended Complaint** *of*
Plaintiffs Vedatech Inc., Vedatech K.K. and Mani Subramanian *against* defendants
St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff

1

**THE PARTIES**

2
**[Plaintiff] SUBRAMANIAN**

3     9.     Individual Plaintiff Mani Subramanian ("SUBRAMANIAN") is a United

4  States Citizen and is a resident of and domiciled in Seattle, Washington.

5
**[Plaintiff] VEDATECH INC.**

6     10.     Plaintiff Vedatech Inc., ("VEDATECH-USA") is a Washington State

7  corporation with principal place of business in Seattle, Washington.

8
**[Plaintiff] VEDATECH K.K.**

9     11.     Plaintiff Vedatech K.K., ("VEDATECH-JAPAN"), is a corporation organized

10  under the laws of Japan with its principal place of business in Yokohama, Japan.

11
**[Defendant] ST.PAUL FIRE & MARINE INSURANCE CO.**

12     12.     Defendant St.Paul Fire & Marine Insurance Co., ("ST.PAUL") is a Minnesota

13  corporation with principal place of business in Minneapolis (Saint Paul), Minnesota.

14
**[Defendant] UNITED STATES FIDELITY & GUARANTY CO.**

15
16     13.     Defendant Unites States Fidelity and Guaranty Co. (USF&G) is a Maryland

17  Corporation with its principal place of business in Baltimore, Maryland.

18
**[Defendant] QAD INC.**

19     14.     Defendant QAD Inc. ("QAD"), is a Delaware corporation, with its principal

20  place of business in Carpinteria, California.    QAD is an alter ego of each and every one of its

21  subsidiaries including QAD Japan K.K., a defendant in this action, and QAD Japan Inc., a

22  Delaware corporation founded solely to strip QAD Japan K.K. of its assets and value.

23
**[Defendant] QAD JAPAN K.K.**

24     15.     Defendant QAD Japan K.K..("QAD-JAPAN") is a Japanese corporation

25  which used to have its principal place of business in Yokohama, Japan.  In or around August

26

27
**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>
28

1    1997, QAD Inc. set up a parallel Delaware corporation called QAD Japan Inc., solely for the

2    purpose of usurping all of the business, customers, and capital value of QAD Japan K.K.,

3    reducing the value of Plaintiff Subramanian's share of the issued stock of QAD Japan K.K.

4    to a minimum or nothing, and rendering QAD Japan K.K. a defunct company.  This much,

5    QAD Inc. has achieved with great success.  In addition, QAD Inc. improperly concealed the

6    existence of QAD Japan Inc., the new company from the public in its SEC offerings.  QAD

7    Inc. went public in August of 1997.  The 10-K registrations of QAD Inc., (NASDAQ:

8    QADI), filed on April 29, 1998, lists only QAD Japan K.K. as a subsidiary of QAD Inc.  The

9    April 28, 2000 filing of QAD Inc. with the SEC lists both QAD Japan K.K. and the new

10   company QAD Japan Inc. as subsidiaries.  Since then, the April 27, 2001, April 30, 2002,

11   April 30, 2003, and April 15, 2004 10-K registrations with the SEC only show QAD Japan

12   Inc., the new company as a subsidiary of QAD Japan K.K.   QAD Japan K.K. as such does

13   not have a separate existence apart from QAD Inc., and to the extent it does, it is an "alter

14   ego" of QAD Inc.  To hold otherwise would cause great injustice to Plaintiffs.

15        16.    Valerie Miller ("MILLER") is an individual residing in or near Santa Barbara,

16   California.   MILLER serves as Vice President and Corporate Controller of QAD Inc.

17   MILLER works at the offices of QAD Inc. in or near Carpinteria, California.  MILLER also

18   signs official documents as an officer of QAD Japan K.K.  For example, MILLER signed the

19   "Settlement Agreement" that is at issue in this case and attached herewith as <u>Exhibit A</u>.  The

20   exact liability of MILLER, if any, with respect to these events is not known at this time.  If

21   such liability becomes known, Plaintiffs will join MILLER to the action at the right time.

22        **RANDALL WULFF**

23        17.    Randall Wulff ("WULFF") is an individual residing in Piedmont (Oakland),

24   in Alameda County, California.   WULFF conducts business as a "mediator" and works out

25   of offices in Oakland, Alameda County, California.

26

27

28   **First Amended Complaint** *of*
     Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
     <u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**DOE DEFENDANTS**

18.    The identity of the DOE defendants 1-50 are unknown or not determinable with certainty at this point in time.  Plaintiffs wish to amend the Complaint later as necessary as such defendants are identified.  From information and belief, such DOE defendants are responsible for some or all of the causes of action set out herein.  The term Defendants or DEFENDANTS shall refer to the named defendants and the DOE defendants collectively.

**NOMENCLATURE**

19.    Defendants ST.PAUL and USFG shall be referred to individually and jointly as "ST.PAUL" with distinctions made between the two if and when necessary.

20.    Defendants QAD and QAD-JAPAN shall be referred to individually and jointly as "QAD" with distinctions made between the two if and when necessary.

21.    Defendants VEDATECH-USA and VEDATECH-JAPAN shall be referred to individually and jointly as "VEDATECH" with distinctions made between the two if and when necessary.

22.    VEDATECH and defendants SUBRAMANIAN shall be collectively referred to as the "VEDATECH PARTIES" or "Vedatech Parties".

**PRELIMINARY NOTE**

23.    Since the filing of the original Complaint, Plaintiffs have come across a web article attached as Exhibit B to this Complaint, which provides support for Plaintiffs' claims herein.  This article appeared in the website of an insurance research organization in Dallas in March 2004.  The issues that are in dispute in this instant case raise difficult issues of developing areas of law.  It is Plaintiffs' contention that carriers such as St.Paul are abusing the process of mediation to engage in pre-meditated acts of bad faith under the cloak of confidentiality provided by such mediation.  These practices need to be stopped.

Page 5 of  49

**First Amended Complaint** *of*
Plaintiffs Vedatech Inc., Vedatech K.K. and Mani Subramanian *against* defendants
St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff

# FACTUAL BACKGROUND [1]

### The QAD-Case

24.     Litigation in California was initiated by QAD against VEDATECH-USA and SUBRAMANIAN in January 1998. This followed several months of efforts by various parties affiliated with QAD, and eventually QAD itself, to improperly terminate QAD's contractual obligations to Vedatech Parties. This case, originally filed in State Court in San Jose as CV 771638 is now pending in this district as C-04-01806. This case, C-04-01806, shall be referred to herein as the "QAD-Case". [2]

25.     The Complaint in the QAD Case, apart for some non-controversial background information, is a long list of fabrications. This was a naked attempt by QAD to put financial pressure on Vedatech Parties and thus force them to abandon their claims which might have been brought more economically in Japan. An accurate description of the background events is set out in great detail in the Third Amended Complaint of VEDATECH-JAPAN in the companion case, currently available as <u>Tab-90 of Exhibit B to the Notice of Removal (Docket #1) in C-04-01806.</u>

---

[1]     ST.PAUL has objected to the original Complaint on the basis that the Complaint did not have enough details (mostly referring to the State procedural rules for pleadings). Conversely, QAD has objected to the same Complaint on the basis that the Complaint had too many details. QAD has suggested that the Complaint be dismissed under FRCP 41(b) for not being concise enough. This First Amended Complaint attempts to comply with the heightened requirements for pleading Fraud under FRCP 9(b). The amount of detail is provided in the hope of discouraging QAD and St.Paul from filing further meritless 12(b)(6) motions claiming a failure to state a claim.

[2]     VEDATECH-JAPAN intervened in the QAD-Case by means of a second action, CV 784685 that has been consolidated into CV 771638 for all purposes. Thus, there is only one consolidated case extant. This was last removed to Federal Court as C-04-01806. QAD has filed a motion to remand and a hearing is currently set for July 7, 2004.

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Involvement of insurers, ST.PAUL**

26.     In January 1999, Vedatech Parties tendered defense of the QAD-Case to ST.PAUL.  Rather than provide a proper defense to the in the QAD-Case, insurers ST.PAUL engaged in a whole series of insurance bad faith acts against Vedatech Parties, weakening their position vis-à-vis QAD considerably.

**Crisis time in the QAD Litigation**

27.     In February 2002, independent attorneys hired directly by Vedatech Parties to defend the QAD-Case gave notice that they will quit for non-reimbursement (and non-likelihood of future reimbursements) of various attorney's fees from ST.PAUL.

**The ST.PAUL-Case**

28.     If February 2002, ST.PAUL, in an attempt to escape their contractual obligations and to take advantage of the developing situation where it seemed that Vedatech Parties would be left without legal help, purported to rescind their insurance obligations by initiating a Declaratory Action in State Court in San Jose as CV 805197.

29.     A full account of the bad faith actions of St.Paul in leading up to their Declaratory Action is described in the Fourth Amended Cross-Complaint of Vedatech Parties (who are defendants therein) as Tab-37, Docket #5, Exhibits (Parts 9-10) to the Notice of Removal, in C-04-01818.  C-04-01818 shall be referred to herein as the ST.PAUL-Case. [3]

**ST.PAUL's acts of insurance bad faith continued even after the filing of the counterclaims (cross-complaint) by Vedatech Parties in June 2002**

30.     In spite of the fact that Vedatech Parties filed their counterclaims in June 2002 in the ST.PAUL-Case, and detailed their grievances therein, ST.PAUL continued to deny proper defense benefits, did not appoint any defense counsel for the QAD Case, and

---

[3]     The ST.PAUL-Case, CV 805197 was also removed recently to this district as C-04-01403, and on additional evidence as C-04-01818.   ST.PAUL has filed motions to remand.

Page 7 of 49

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

provided sporadic, late, and partial reimbursements for some of the fees incurred by Vedatech Parties' independent counsel. In addition, ST.PAUL intentionally and falsely portrays its bad faith efforts in public documents (such as in filings in this case) as if it is or was providing a full defense in the QAD Case.

**SUBRAMANIAN forced to appear *pro se***

31. Since June 2002, Vedatech Parties have been struggling to maintain their defense of both the QAD-Case and the ST.PAUL-Case. As a result of the poor reimbursement policies of ST.PAUL, SUBRAMANIAN has been forced to appear *pro se*. This has played into QAD's strategy of stonewalling and denying proper discovery.[4]

**ST.PAUL's request for a status report**

32. In November 2003, in response to a request from ST.PAUL for a recommendation with respect to ADR / Mediation, Vedatech Parties suggested mediation with a view to a Global settlement, and floated two names Randall Wulff (WULFF) and Jack Williams as mediators that they had heard about. Vedatech Parties at that point in time were not aware of the prior relationship between ST.PAUL and WULFF. ST.PAUL did not respond substantively to this report. In fact, ST.PAUL, in spite of their duties to disclose the conflict they had with WULFF, failed to disclose their prior contacts with WULFF.

**The January 13, 2004 hearing**

33. On January 13, 2004, ST.PAUL lost its last attempt to dismiss Vedatech Parties' counterclaims in the ST.PAUL-Case. Before the hearing, ST.PAUL, without informing Vedatech Parties and outside their presence, discussed the matter of mediation

---

[4]    QAD refuses to provide even a copy of their CGL policies that might cover Vedatech's (counter-)claims against them in the QAD-Case. In addition, email archives have been withheld entirely by QAD, who are plaintiffs in a case they themselves chose to bring in California, on the basis that it is "oppressive", etc., etc. ST.PAUL's lack of proper defense support has assisted QAD in getting away with this for this long.

**First Amended Complaint *of***
Plaintiffs Vedatech Inc., Vedatech K.K. and Mani Subramanian *against* defendants
St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff

1  with QAD. ST.PAUL then requested the Judge to "order" mediation *specifically* before

2  WULFF. ST.PAUL did not disclose to the Vedatech Parties or to the Court, the detailed

3  nature of its prior relationship with WULFF either before or after this hearing.

4     **Pre-meditated plan of ST.PAUL regarding the mediation**

5     34.    In addition, ST.PAUL had before the time of this January 13, 2004 hearing,

6  already formulated a strategy for using the secrecy of mediation as a cover for engaging in

7  collusive and bad faith negotiations with QAD, and specifically with the help of WULFF, in

8  order to weaken the legal representation of Vedatech Parties and enhance their own position

9  in the insurance coverage litigation.

10    35.    Prior to the January 13, 2004 hearing, QAD had not made any open settlement

11 offers to ST.PAUL. Neither had ST.PAUL requested QAD (or the Vedatech Parties) to

12 make an offer. ST.PAUL itself had not made any offers to QAD. ST.PAUL knew that any

13 efforts by them to have open settlement discussions with QAD and conduct discussions

14 would be subject to approval of the Vedatech Parties. ST.PAUL knew fully well that they

15 had to give Vedatech Parties an opportunity to choose to undertake their own defense. But

16 this would defeat ST.PAUL's goal of freely being able to pursue their coverage litigation.

17 Thus, ST.PAUL concocted this plan to arrange a mediation with the specific intent of

18 engaging in bad faith tactics which they otherwise would not be able to engage in.

19    **Prior business dealings between WULFF and ST.PAUL**

20    36.    ST.PAUL and its attorneys had conducted prior business with WULFF

21 wherein both ST.PAUL and WULFF knew of the advantages of using the cloak of secrecy

22 provided by the mediation in order to strike deals with the plaintiffs in the underlying cases

23 (such as the QAD-Case) to the detriment of the insureds. ST.PAUL and Mr. Greenan did not

24 disclose the details of ST.PAUL's and/or his firm's prior dealings with WULFF. Instead,

25 before the January 13, 2004 order was made, ST.PAUL made brief general statements of

26 confidence in the ability of WULFF that failed to describe the close relationship and

27 understanding they had with WULFF regarding the conduct of insurance mediations.

Page 9 of 49

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Vedatech Parties tricked into "consenting" to mediation before WULFF**

37.    Vedatech Parties were unaware of the nature and extent of ST.PAUL's prior relationship with WULFF, and unaware of ST.PAUL's plans on using the mediation as a mechanism to safely (for ST.PAUL) engage in bad faith activities.  Accordingly, Vedatech Parties did not object to a mediation at the January 13, 2004 hearing.  Vedatech Parties made a reasonable assumption that it would be useful to mediate with QAD, and that ST.PAUL would not, for the purpose of the mediation, mix-up the coverage issues with the underlying liability issues in the QAD litigation.  Had Vedatech Parties been aware either of

    (a) the conflict that WULFF had because of a close working relationship with ST.PAUL and/or Mr Greenan on similar insurance related mediation;  *or*

    (b) the detailed nature of the prior relationship between ST.PAUL and WULLF; *or*

    (c) the detailed nature of the prior relationship between Mr Greenan and his firm with WULFF and the types of mediation they had conducted before; *or*

    (d) ST.PAUL's premeditated plans regarding the improper use of the mediation, *or*

    (e) ST.PAUL's premeditated plans of using the attorneys litigating the coverage issues (Mr Greenan, Mr Wang, et. al.) to "negotiate" with QAD and participate in the settlement of the QAD-Case,

they would not even have provisionally consented to this "Order", or the mediation.

38.    In any event, as decided on January 13, 2004, the mediation was contingent and conditional upon the consent and stipulation of all the parties.  For example, Arthur Andersen LLP (not a party to this case) did not consent to the proposed mediation, but the order that was prepared by ST.PAUL did not incorporate this condition.

**ST.PAUL handles mediation issues through the coverage attorneys**

39.    ST.PAUL moved quickly to arrange mediation.  This was done through its attorneys, Mr Greenan and Mr Wang, the same attorneys who were handling the coverage issues (i.e., prosecuting the Declaratory Relief action and defending Vedatech's bad faith action /counterclaims).  The mediation was thus tainted from the beginning.

Page 10 of 49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**ST.PAUL's desperate attempts to force the mediation to happen**

40.    ST.PAUL and WULFF tentatively set the mediation for March 3, 2004.  In early February 2004, SUBRAMANIAN had to attend to a family emergency.  This prevented him from attending on March 3, 2004, a date selected by ST.PAUL.  In response, ST.PAUL filed an *ex parte* motion in the State Court.  ST.PAUL obtained an order forcing SUBRAMANIAN to personally appear for the mediation on the March 3, 2004 date or face "contempt of Court". [5]    One of the grounds for such a request was the convenience of WULFF and his non-availability until May 2003.  ST.PAUL would not consider anyone except WULFF as a mediator.  This was not the first time that ST.PAUL would get an erroneous order signed at the hearing itself.  Due to ST.PAUL's practices of this nature, the State Court changed its policy with respect to this case, and began writing out its own orders.

**Attempts by WULFF to "make it happen"**

41.    Initially WULFF did not respond to calls from SUBRAMANIAN and his requests to change the mediation date.  The assistant to WULFF informed SUBRAMANIAN that he and WULFF only dealt with attorneys and not with *pro se* parties. SUBRAMANIAN intensified his efforts to alert all parties concerned about the difficulties he had in attending the March 3, 2004 date.  Subsequently, WULFF called SUBRAMANIAN and offered to reschedule the mediation date for March 12, 2004.  WULFF did this as a favor to ST.PAUL (in order to ensure that ST.PAUL had the forum to engage in their pre-planned collusive activities with QAD and bad faith tactics to threat SUBRAMANIAN).

---

[5]    ST.PAUL repeated this kind of extreme behaviour when it gave notice of an ex parte hearing for March 15, 2004 ostensibly for resolution of is discovery dispute asking VEDATECH to produce all the discovery documents disclosed by QAD in the underlying litigation.  When SUBRAMANIAN appeared for the hearing, Mr. Wang, an attorney for ST.PAUL, seconds before entering the chambers gave SUBRAMANIAN papers in support of a "contempt citation".  Of course, the Court did not issue any such contempt citation.

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**WULFF and the "Confidentiality Agreement"**

42.     In the way of preparation for mediation, on or around February 3, 2004, Michael Richards, assistant to WULFF sent copies of a fee schedules and a "CONFIDENTIALITY AGREEMENT". This document purported to be a proposed agreement between the various parties to the mediation and WULFF, the mediator.

**Vedatech Parties decline offer regarding multilateral agreements**

43.     SUBRAMANIAN refused to sign any further agreements with the parties just for the sake of engaging in the mediation process, especially given the multiplicity of disputes already ongoing between the parties. SUBRAMANIAN was willing to consider a separate limited bilateral agreement with the mediator as necessary and appropriate.

**Conference Call conducted by WULFF**

44.     The issue of the lack of consent of Arthur Andersen to the January 13, 2004 "consent" order came before the State Court again in February 2004. This resulted in the State Court deciding that the mediator should set the terms of the mediation. In a telephone conference call organized by WULFF in response to this, SUBRAMANIAN made clear the objection of Vedatech Parties to signing the Confidentiality Agreement or any sort of agreement with the parties. Mr Greenan, attorney for ST.PAUL (in the coverage action) was also participating in the conference call. He immediately said that this would be a "problem". ST.PAUL and Mr Greenan did not disclose to Vedatech Parties the real reason why this was a "problem". ST.PAUL and Mr Greenan then proceeded to put pressure on SUBRAMANIAN to sign the CONFIDENTIALITY AGREEMENT. ST.PAUL and Mr Greenan insisted on extended agreements on confidentiality with respect to the mediation.

**WULFF requests a Court Order**

45.     WULFF, at this conference call decided that the arrangements discussed at the conference call should be turned into an Order of the State Court. Arthur Andersen prepared a draft that was found unacceptable by Vedatech Parties. ST.PAUL put pressure on Arthur Andersen to submit that draft urgently to the State Court.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Further desperate and extreme measures adopted by ST.PAUL**

46.    SUBRAMANIAN and VEDATECH had rejected this proposed Order prepared by Andersen. ST.PAUL and QAD, yet again without notice and at a hearing on a different matter, persuaded the State Court Judge to sign the order setting various details of the mediation, including portions of a contract originally offered by the mediator and which SUBRAMANIAN had rejected. The State Court Judge signed this coercive order on the basis that the January 13, 2004 order was by "consent". The "consent" of Vedatech Parties to the January 13, 2004 was obtained through fraudulent non-disclosure by ST.PAUL.

**SUBRAMANIAN forced to attend the March 12, 2004 mediation**

47.    The net effect of all of this was that SUBRAMANIAN, although not desirous of participating in any mediation under these coercive conditions, was under a Court order (obtained fraudulently by ST.PAUL) to participate in the mediation on March 12, 2004. This mediation had been carefully stage-managed by ST.PAUL, and WULFF.

**The proposed agreement with WULFF**

48.    A few days before the mediation, SUBRAMANIAN reviewed the draft proposed agreement sent by the mediator, the original "CONFIDENTIALITY AGREEMENT". Upon inquiry with Michael Richards, the assistant to the mediator, Mr Richards informed SUBRAMANIAN's attorneys that the reference to "Confidentiality" in this agreement was to the agreement itself, and that the reference to "Conflicts Check" simply meant that a conflicts check had been completed and that there was no conflict. No reference to the "Mediation Procedures" was made and no such document was received. WULFF's assistant, Mr. Richards did not mention any conflict with ST.PAUL, nor did he provide any information at all about the past relationship WULFF had with ST.PAUL or Mr. Greenan or his law firm. On this basis that WULFF had performed a conflicts check and there was no known conflict with the participants, SUBRAMANIAN proposed a draft revised bilateral agreement and sent that proposal by email to WULFF and Mr Richards. No response was received until the day of the mediation.

---

**First Amended Complaint** *of*
Plaintiffs Vedatech Inc., Vedatech K.K. and Mani Subramanian *against* defendants
St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff

**EVENTS BEFORE THE MEDIATION STARTED**

49.    In light of the uncertainty over the admissibility of evidence of events at the actual mediation itself, Plaintiffs will only detail events before the official start of the mediation (around 11:00 AM) and after the end of the mediation (around 4:00 PM).  Further details will be provided if necessary and as the Court permits. [6]

**Coercion and Duress before the commencement of the Mediation**

50.    On the morning of March 12, 2004 the parties assembled BEFORE the start of the mediation for a discussion of contractual formalities etc.   SUBRAMANIAN objected to the participation by the coverage attorneys for ST.PAUL (Mr. James Greenan and Mr. Enoch Wang).  This was due to the conflict of interest arising from the coverage issues and the declaratory relief action, wherein ST.PAUL was trying to defeat coverage by taking positions that essentially put them in the same camp as QAD.   As a means to avoiding this conflict, SUBRAMANIAN further suggested that the insurance adjuster (Mr Joseph Tancredy) was the appropriate person to participate in the negotiations with QAD. [7]    ST.PAUL flatly rejected these offers.  Mr Tancredy insisted that Mr Greenan be in charge.

**SUBRAMANIAN attempted to leave before the mediation started**

51.    SUBRAMANIAN then informed WULFF, that he did not want to start the mediation under these conditions.  SUBRAMANIAN expressed his decision to leave before the mediation started.  After strong pressure and further promises from WULFF detailed

---

[6]    This clarification is provided to avoid unnecessary objections by QAD or ST.PAUL regarding the pleading of confidential matters.

[7]    VEDATECH's motion in State Court in late 2003 to have the insurance coverage litigation stayed pending the resolution of the QAD case was denied.  Because of the financial troubles caused by the lack of proper funding from ST.PAUL, no writ application has been filed yet although Vedatech Parties wish to make such an appeal.

Page 14 of  49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

herein, SUBRAMANIAN agreed to stay back for limited purposes only. One of the

conditions for SUBRAMANIAN's continued participation was that SUBRAMANIAN

should first be able to attempt mediation with QAD alone and then have the option of

terminating the mediation. SUBRAMANIAN also told WULFF that Vedatech Parties would

consider the entire mediation to be over if SUBRAMANIAN so chose to leave. WULFF

agreed to these conditions.

**The bilateral proposed agreement with WULFF**

52.    At this point, WULFF presented the old CONFIDENTIALITY

AGREEMENT to SUBRAMANIAN for signature and SUBRAMANIAN reminded WULFF

of the email he had sent with the proposed bilateral agreement. WULFF rejected the

proposal made by SUBRAMANIAN and started making several changes to the draft sent by

SUBRAMANIAN. In addition, SUBRAMANIAN explained Mr Richards' prior assurances

about the "conflicts check". Then, for the first time SUBRAMANIAN and VEDATECH

were given a document called "Mediation Procedures", which had buried among other

language the following text, and which SUBRAMANIAN did not notice at that time:

> "Any past professional acquaintance with counsel o[n] prior matters I have
> mediated for any counsel or parties will not be included in any disclosure being
> made; I rely on the parties and counsel to advise one another of this, if appropriate"

53.    This is made even more egregious because SUBRAMANIAN insisted

unsuccessfully that all terms of the confidentiality agreement should be within that one

document and should not refer to any another document. WULFF insisted on referring to

this separate document titled "CONFLICTS CHECK". In addition, WULFF assured

SUBRAMANIAN that the purpose of this separate page titled "CONFLICTS CHECK" was

to take into consideration the fact that he had worked for a large firm before. WULFF further

stated that this prior firm had many clients that WULFF did not even know anything about,

and it would be impossible for him to do a conflicts check with all such entities that he had

had no contact with or had not represented. At no point during this conversation did WULFF

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

1  mention that he had worked with ST.PAUL or Mr. Greenan before, nor did he alert

2  SUBRAMANIAN to the passage in the text (excerpted above) that was outside the scope of

3  the verbal assurances he was providing SUBRAMANIAN.

4      54.    Even at this stage, and especially at this stage, if SUBRAMANIAN had

5  known that Mr. Greenan or his firm or ST.PAUL had personally conducted prior mediations

6  of any sort with WULFF, or if ST.PAUL or WULFF had disclosed such matters to him, as

7  they should have, SUBRAMANIAN would have withdrawn before the start of the mediation.

8      **Duress in signing the bilateral agreement**

9      55.    Thus, although SUBRAMANIAN had sent WULFF a draft ahead of the

10  mediation, WULFF had not reviewed the draft, and at the last minute was making various

11  changes to it and insisting that the document be signed before he would start the mediation.

12  On the other hand, WULFF discouraged SUBRAMANIAN from leaving or canceling the

13  whole mediation, which is what SUBRAMANIAN wanted to do in light of the severe

14  conflicts of interest posed by ST.PAUL mixing up coverage and settlement issues.

15      **Document not signed by WULFF**

16      56.    In light of the various assurances provided by WULFF and on the assumption

17  that ST.PAUL and/or WULFF would have informed SUBRAMANIAN of any prior contacts,

18  SUBRAMANIAN signed this revised document titled "CONFIDENTIALITY

19  AGREEMENT". WULFF did not sign the document.

20      **Failure of discussions with QAD**

21      57.    The discussions with QAD eventually failed. At this point, around 4:00 PM,

22  SUBRAMANIAN informed the mediator that the mediation was formally over and promptly

23  left.  SUBRAMANIAN also explicitly informed the mediator that the mediation was

24  terminated. Vedatech Parties believe that many of the acts of WULFF, ST.PAUL and QAD

25  under the rubric of "mediation" are unlawful, unfair and fraudulent. Vedatech Parties will

26  further detail such activities if the Court permits such evidence to be introduced.

27

28

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Continuation of discussions between ST.PAUL and QAD and WULFF**

58.    Despite the departure by Vedatech Parties, WULFF continued the discussions with ST.PAUL and QAD and conducted various negotiations, even though the mediation was called off, and even though WULFF was well informed of the conflicts of interest between the two roles of ST.PAUL as insurer and the instigator of coverage disputes.

**WULFF as advocate of ST.PAUL and QAD and against SUBRAMANIAN**

59.    In continuing such mediations, WULFF breached his promises to the parties and his duties to be an impartial mediator, and worked with QAD and ST.PAUL in a collusive and conspiratorial manner to the detriment of Vedatech Parties.

**No agreement between ST.PAUL and QAD on Monday, March 15, 2004**

60.    On March 15, 2004, SUBRAMANIAN met Mr Enoch Wang, the associate working under Mr Greenan on the coverage issues, at an *ex parte* hearing at the Court. Later, Mr Wang came to the offices of attorneys for VEDATECH to go over documents produced by QAD in the underlying litigation. Mr Wang did not provide any information at all regarding any negotiations or agreement between QAD and ST.PAUL.

**Removal of QAD-Case to Federal Court on March 15, 2004**

61.    On March 15, 2004, Vedatech Parties removed the QAD-Case to federal court. Vedatech Parties had assumed that the mediation was called off after they left around 4:00 PM on March 12, 2004. No information to the contrary was received.

**Announcement of secretly concluded "settlement" between QAD and ST.PAUL**

62.    On March 16, 2004, ST.PAUL and QAD unsuccessfully attempted to have the QAD claims dismissed so that the removal of the QAD-Case can be defeated.

**Details of this clandestine agreement not provided in spite of repeated requests**

63.    On March 16, 2004, Mr Greenan, coverage attorney for ST.PAUL, after repeated requests from SUBRAMANIAN, would only state that no settlement papers had been prepared. On March 18, 2004, Mr Greenan for ST.PAUL, finally relented and stated

Page 17 of 49

First Amended Complaint *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

only that "an agreement in principle was reached with QAD ... the details of the agreement have not yet been reduced to writing, as the agreement was reached through the mediator."

### Confirmation of WULFF's role in the mediation

64.    Thus, it was Mr Greenan's email (ST.PAUL) dated March 18, 2004, that first alerted Plaintiffs to the fact that WULFF was continuing to assist ST.PAUL and QAD even though SUBRAMANIAN had specifically called off the mediation after discussions with QAD had failed to produce a negotiated settlement.

### NO OPTION TO VEDATECH PARTIES TO TAKE OVER DEFENSE

65.    This "settlement" and "agreement and release" was entered into without allowing Vedatech Parties the option of releasing ST.PAUL from any bad faith claims for not paying for future defense costs, partial or otherwise, going forward from the time of any such agreement.  Additionally, Vedatech Parties were not given the option of releasing ST.PAUL from any liability for Judgments in excess of policy limits.  Indeed, since even QAD's unrealistic estimates of damages were themselves much less than the policy limits, this scenario was improbable if not an impossibility.  ST.PAUL always knew that there was no realistic chance of any Judgment being in excess of the applicable policy limits.

### The "agreement" between QAD and ST.PAUL reached on March 25, 2004

66.    On March 25, 2004, Mr Wang for ST.PAUL sent a copy of a signed document attached as Exhibit A of this Complaint (titled "AGREEMENT AND RELEASE") that purports to be the settlement agreement that St.Paul reached with QAD.  It is signed by Karl Lopker, CEO of QAD Inc., and Valerie Miller, an officer of QAD Inc., for QAD Japan K.K., and (on a separate piece of paper) by Mr Joe Tancredy, claims adjuster for ST.PAUL.

### Real purpose of this secret "agreement and release"

67.    ST.PAUL wishes to escape its obligations regarding its duty to defend involving the QAD litigation.  ST.PAUL also wishes to find excuses for not paying outstanding legal bills to various attorneys.  ST.PAUL also wishes to weaken Vedatech

Page 18 of 49

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

Parties's legal representation in the coverage litigation. In this coverage litigation, Vedatech Parties have counterclaims for bad faith actions by ST.PAUL at least until the date of Vedatech's answer to the declaratory relief action by ST.PAUL. ST.PAUL also wishes to defeat Federal Jurisdiction which would involve further defense costs regarding copyright and other issues.

### QAD's multi-year effort to weaken Vedatech Parties' legal representation

68.    QAD wishes to weaken Vedatech Parties's legal representation for the affirmative claims. QAD knows that its own claims are meritless and is happy to accept ST.PAUL's monies if it would weaken the position of Vedatech Parties in the overall litigation. QAD has, since 1997 repeatedly tried to interfere with or weaken legal representation for Plaintiffs. These acts involved QAD's internal counsel, Mr Roland Desilets writing a letter to Morrison and Foerster and trying to conflict them out for representing a bank that was *adverse* to QAD! In addition, Mr Desilets made overtures to attorneys at Bogle and Gates after that firm fell apart in 1999, trying to get them not to represent SUBRAMANIAN or VEDATECH anymore. The current "agreement and release" has been intentionally designed by ST.PAUL and QAD, with the unlawful use of the process of mediation and the mediator to harm Plaintiffs for the benefit of ST.PAUL and QAD.

### ST.PAUL now refuses to pay even for past limited defense costs

69.    Predictably, after its secretly obtained "agreement and release" with QAD, ST.PAUL has refused to reimburse for large portions of even the limited defense costs that it had promised to Vedatech Parties in their standstill agreement of July 2002. These non-reimbursed amounts exceed US$ 200,000. ST.PAUL induced Vedatech Parties to hire attorneys in July 2002 with promises of limited reimbursement. Vedatech Parties would not have attended the mediation if they knew of ST.PAUL's plans to withhold their partial reimbursements for past defense costs. Now that ST.PAUL claims it has "settled" the QAD claims, it feels free to put pressure on Vedatech's attorneys.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**FIRST CAUSE OF ACTION**
**(DECLARATORY JUDGMENT)**

70.    Vedatech Parties reallege all of the allegations of paragraphs 1-69 above.

**Existence of Controversy**

71.    There has arisen between the parties, actual substantial and justiciable controversies over the validity, interpretation, authority to enter into, and other aspects of the purported contractual document in Exhibit A.  Specifically, Plaintiffs wish judicial determination of the validity, scope, and interpretation of this "agreement and release" between ST.PAUL and QAD (and which directly affects Plaintiffs' rights).  Plaintiffs contend that this "agreement and release" is void, was entered into by ST.PAUL without authority, and was the effort of collusive and unlawful secret negotiations by ST.PAUL. [8]

---

[8]    Both ST.PAUL and QAD attempt to rely on a California Court of Appeals decision in *Hurvitz v St.Paul Fire & Marine Insurance Co.*, (2003) 109 Cal.App.4th 918.  That decision cannot in any way support the propositions that ST.PAUL and QAD are advancing.  For example, in *Hurvitz, supra*, p.934, it is clearly explained that:

> The Hurvitzes attempted to prevent St. Paul from settling with Dr. Hoefflin, but, notwithstanding their professed expectations of an easy victory, at no time indicated a willingness to give up their right to indemnity from St. Paul if Dr. Hoefflin won a judgment in excess of the proposed settlement. Nor did they agree to give up their right to seek a bad faith recovery against St. Paul if a judgment was obtained against them in excess of policy limits.

In this case, first of all there was no open settlement offer from QAD. The whole process was a secret, collusive bad faith conspiracy by St.Paul and QAD to find a way to benefit themselves at Vedatech Parties' expense. Vedatech was not even informed of a tentative offer or settlement from QAD.  The result of an "oral agreement in principle" was "announced" in open Court to the surprise of Vedatech Parties on the morning of March 16, 2004.    St.Paul never gave Vedatech Parties a chance to consider such an offer.  Vedatech's attempts to raise such possibilities were summarily rejected by ST.PAUL through their coverage attorney Mr. Greenan.

**First Amended Complaint** *of*
Plaintiffs Vedatech., Vedatech K.K. and Mani Subramanian *against* defendants
St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff

72.    Furthermore, ST.PAUL still wishes to continue with the declaratory relief action to try to recover already disbursed costs of defense in the QAD case.

### Rescission of the CONFIDENTIALITY AGREEMENT with the mediator

73.    Plaintiffs have rescinded the CONFIDENTIALITY AGREEMENT with WULFF for fraud, misrepresentation, duress, want of execution, lack of acceptance of offer, and for other lawful reasons.  Plaintiffs have issued a proper notice of rescission to WULFF. In response, WULFF contests the rescission of this secondary agreement.   Plaintiffs seek a Judicial confirmation of the validity the rescission of this secondary agreement.

### Statutory basis for Prayer

74.    Plaintiffs base their request for declaratory judgment on Title 28, United States Code § 2201, for the purpose of determining questions of such actual controversies between the parties and as detailed more fully in this Complaint.

### The mischief in ST.PAUL's "settlement"

75.    ST.PAUL (and QAD and WULFF) know clearly that QAD's claims, even in the case of a default Judgment cannot result in damages in excess of the policy limits.  The policy limits are anywhere between $2 Million and more than $12 Million depending on the period of coverage and the inclusion of "umbrella" provisions.

76.    <u>WITHOUT THIS "SETTLEMENT":</u>

- ST.PAUL would still be prevented from proceeding full steam with its "coverage action" because of the conflicts with the QAD-Case.

- The insurance policies in question are not "self-burning" and hence the defense costs are not limited by the policy limits.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

- Withholding past defense costs (even on the limited basis that ST.PAUL has been reimbursing them for), would seriously expose ST.PAUL for further bad faith actions in light of interference with an ongoing defense.

77.   BUT WITH THIS "SETTLEMENT":

- ST.PAUL now claims to be free to litigate all of the QAD-related issues in order to try to recover their past defense costs

- ST.PAUL are withholding past defense costs (even on their own limited "standstill agreement," more than $200,000,);

- A side-benefit for ST.PAUL is weakening of Vedatech Parties legal representation (by causing financial distress to their attorneys) and thereby improving their position in the coverage litigation;

**There is real damage to Plaintiffs if declaratory relief is not granted**

78.   The threatened action by ST.PAUL and QAD, viz., the compromise of QAD's claims (ostensibly good for Plaintiffs) but on the condition that ST.PAUL will unilaterally exhaust $500,000 of Plaintiffs' available insurance limit and still "reserve" their rights to recover that from Plaintiffs is tantamount to a coercive and unlawful foisting of liability on Plaintiffs for which the apparent justification is that the insurance policies provide such a contractual right.

79.   Plaintiffs have been denied their rights to choose to pursue their own defense and clear their names [see footnote 9 above regarding the distinction with the *Hurvitz* case.]

80.   In addition, ST.PAUL is continuing with its coverage on the basis of "reservation of rights" with respect to various causes of action in the QAD-Case.  Plaintiffs will have to re-litigate the exact same issues that are purportedly "released".

Page 22 of  49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**St.Paul's Purported Authority to Settle QAD's Claims**

81.    The Commercial General Liability (CGL) policies of ST.PAUL issued to Vedatech Parties have the following language under the section titled

> COVERAGE B.   PERSONAL AND ADVERTISING INJURY LIABILITY
> [...]
> [...]   We may, at our discretion, investigate any "occurrence" or offense and settle any claim of "suit" that may result."

82.    On the other hand, in the coverage litigation (C-04-01818), ST.PAUL pleads rescission of these very same policies.  To wit, the Fifth Cause of Action of ST.PAUL is pleaded as follows ("Plaintiffs" in the excerpt below refers to ST.PAUL and "defendants" in the excerpt below to Vedatech Parties):

> FIFTH CAUSE OF ACTION
> (Declaratory Relief – Recission [sic])
> [...]
> 52.    Plaintiffs contend that defendants made false representations which were material to the issuance of the insurance policies, that Plaintiffs were unaware these representations were false, and that the policies should accordingly be rescinded and rendered null and void

83.    California Civil Code §1691 provides for a party to give a notice of rescission and thus effect the same (i.e. rescission).  It also provides that the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice.

84.    Since California abolished the equitable action for "rescission" in 1961, it has to be assumed that St.Paul in its Declaratory Action in State Court is asking for various declarations based on its own unilateral election to rescind and the effectiveness of the same, i.e. based on the premise that it has already rescinded the insurance policies.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

85.     Any orders by the Court restoring parties to the position before such rescission (if it is valid) does not affect the date or effectiveness of rescission, which is the date of commencement of the coverage litigation, viz., Feb 2002.

86.     If these insurance polices are "null and void", and already rescinded, as ST.PAUL claims, and especially if they are so null and void because of Vedatech's alleged pre-contractual misrepresentations, then it would be unlawful for ST.PAUL to depend on null and void agreements to gain the right to unilaterally, in their "discretion," to enter into this "agreement and release" with QAD that affects Vedatech's substantive rights, with respect to settlement of claims or otherwise. Furthermore, under California Civil Code §1691, ST.PAUL's declaratory suit itself serves as a notice of rescission and thus effects rescission unless found otherwise by the Court. Thus, until a final Judgment is reached in the insurance coverage litigation, and the issue and question of, and effectiveness of ST.PAUL's rescission is judicially determined, ST.PAUL cannot act inconsistently with its position that the policies have been rescinded. Thus, ST.PAUL on its own position has acted without authority, or ST.PAUL is estopped from asserting such authority while at the same time seeking to have the contracts be declared null and void in its coverage action.

87.     In addition, the purpose for which ST.PAUL has unlawfully manufactured this "agreement and release" has to do with gaining advantages in the coverage litigation, weakening Plaintiffs and helping QAD to indirectly weaken Plaintiffs (provide them funds for resisting Plaintiffs' counterclaims / affirmative claims). It would be inequitable for ST.PAUL to be permitted to proceed in this fashion.

88.     Plaintiffs would also not be able to clear their names and prove their innocence in the QAD case. Plaintiffs' rights to prosecute QAD for malicious prosecution would be compromised by this "settlement". Nevertheless, Plaintiffs would be facing litigation of the very same issues in the coverage case with ST.PAUL.

Page 24 of 49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

89.    In addition, the "agreement and release" has not prevented QAD from publicly accusing Vedatech of all of the matters (and more) that is the subject of its misguided Complaint in the QAD-Case. In its support of remand in C-04-01035, Mr Connell, attorney for QAD has elaborated on the fabrications of the original Complaint, further maligning Vedatech Parties in spite of an "agreement and release" where QAD apparently gives up its claims on all these matters. In proceeding with their affirmative claims against QAD, Vedatech Parties will have to "defend" against such claims in spite of this so-called "agreement". To the extent that it affects juries to diminish the award to Vedatech Parties, these allegations would act as a "set-off" for QAD, thus undermining any finality of this "release". It is for this reason also, the Settlement Agreement must be set aside and a declaration of its voidness made.

## DECLARATIONS REQUESTED

90.    Accordingly, Vedatech Parties respectfully request the Court for one or more of the following declarations or any other declaration in a form determined by the Court, all as the Court deems appropriate:

**With respect to Defendant ST.PAUL**

a.    THAT the purported settlement agreement, "agreement and release" dated March 25, 2004, between QAD and ST.PAUL is null and void, and/or unenforceable.

b.    THAT ST.PAUL had no authority to enter into this "agreement and release" on behalf of VEDATECH and/or SUBRAMANIAN;

c.    That any payment made by ST.PAUL cannot be used to deduct available benefits to Vedatech Parties from any of their policy agreements with ST.PAUL;

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

d.  THAT any payments ST.PAUL may make is not on behalf of the "Insured or Putative Insureds" as set out in paragraph 2 of this agreement but is a voluntary payment undertaken by ST.PAUL for its own benefit;

e.  That ST.PAUL has no right of reimbursement from VEDATECH or SUBRAMANIAN for the amounts it may pay under this agreement;

f.  That ST.PAUL is not permitted to "reserve" any rights with respect to any payment under this agreement;

g.  THAT ST.PAUL has acted in bad faith and breached its duties as an insurer to Vedatech Parties as insureds by collusively and secretly conducting such negotiations with QAD and by using the cloak of settlement privilege for unlawful and improper purposes;

h.  THAT ST.PAUL may not use any monies it may pay under the "agreement and release" as a set-off in any action between Vedatech Parties and ST.PAUL;

i.  THAT ST.PAUL cannot recover such payments even if the policies are null and void as ST.PAUL claims they are;

j.  THAT all discussions between ST.PAUL and QAD are not subject to any evidentiary privilege or protection and are discoverable;

k.  THAT all discussions between ST.PAUL and QAD made through or ostensibly through the mediator are also not subject to any evidentiary privilege of protection and are discoverable;

l.  THAT ST.PAUL is liable to pay past legal bills due on the same terms and conditions it has been paying them before this "agreement and release" was secretly concluded and that ST.PAUL take no efforts to unfairly withhold such payments under the excuse of having concluded such an agreement;

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

m.  THAT ST.PAUL has no rights to "audit" any such bills beyond legal proceedings for any fault it may think there is or, alternatively, raise such issues in this litigation or in the underlying coverage litigation;

n.  THAT ST.PAUL cannot re-litigate the QAD claims that are purportedly released in the "agreement and release" in the underlying coverage litigation or otherwise;

**With respect to Defendant QAD**

o.  THAT any release "with prejudice" by QAD parties not be referable to this "agreement and release";

p.  THAT any dismissal "with prejudice" of QAD's complaint(s) against any or all of the Vedatech Parties be final and shall not be affected by any adjudication of the status or validity or enforceability of the "agreement and release" signed between ST.PAUL and QAD.

q.  THAT to the extent that QAD has released or will release any claims against VEDATECH or SUBRAMANIAN its only remedies remain against ST.PAUL;

r.  THAT, if QAD releases any rights or claims under this agreement, then it may not raise any issues relating to such rights or claims in any judicial proceedings, as a defense or for any other purpose and that no setoff of any kind is permissible;

s.  THAT QAD, at a minimum, cannot rely upon the settlement evidentiary privilege for negotiations regarding this "agreement and release", especially after SUBRAMANIAN terminated the mediation around 4 PM on March 12, 2004;

t.  THAT QAD transfer to Vedatech Parties all of the monies it received from ST.PAUL under this "agreement and release", [either under a theory of Unjust Enrichment or as a remedy to the Cause of Action for Unfair Competition / disgorgement of profits as detailed below].

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**With respect to Defendants ST.PAUL and QAD**

u.     THAT, in any event, this "agreement and release" not be given effect until the underlying coverage litigation between ST.PAUL and Plaintiffs is finally resolved and all issues regarding the validity of the various policies and rights of the parties under such polices are finally determined by the Courts.

**With respect to Defendant WULFF**

v.     THAT, the "confidentiality agreement" has been properly rescinded.

w.     THAT no evidentiary privilege attaches to any aspect of the "mediation" described herein, especially after its termination by Vedatech Parties around 4:00 PM on March 12, 2004;

## SECOND CAUSE OF ACTION
### (INJUNCTIVE RELIEF)

91.     Vedatech Parties reallege paragraphs 1-90 above.

**Inadequacy of Remedy in Law**

92.     Plaintiffs have no adequate or speedy remedy at law for Defendants' conduct (and threatened conduct) detailed herein, and this action for injunctive relief is Plaintiffs' only certain means for securing relief.

93.     ST.PAUL has already rescinded its own policies (contracts) and if they prevail in their cause of action for "Declaratory Relief – Recission [sic]" in the underlying coverage case, then Plaintiffs are left with no meaningful remedy in law if, for example, QAD wishes to argue a basis for remand to State Court of C-04-01818 based on dismissal of claims in reliance of this ineffective "agreement and release."

First Amended Complaint *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

94.    ST.PAUL and QAD are clearly colluding to try to defeat Federal Jurisdiction with respect to the underlying consolidated actions removed from State Court.

95.    If the claims against Plaintiffs are dismissed but later found to be improperly dismissed (i.e. without affording Vedatech Parties a chance to clear their names, and the right to pursue QAD for malicious prosecution, etc.), then the results of any further proceedings both in the QAD matter and in the insurance matter cannot be reversed.

96.    Vedatech Parties are being forced to defend these "dismissed" claims in the context of the Coverage action. There is no real benefit to the insureds at all, which is the real problem with this "release".

**No Harm to ST.PAUL or QAD**

97.    ST.PAUL has provided a notice of rescission by filing their suit. There is no reason for ST.PAUL to have any expectation of being able to exercise any such rescinded contractual rights. Alternatively, ST.PAUL should be denied any rights to further rescind the insurance policies, having relied upon them to cause prejudice to Vedatech Parties.

98.    ST.PAUL has repeatedly referred to their partial reimbursement of defense costs in the underlying QAD litigation. But that was, and has always been voluntary and amounts to ST.PAUL's strategy of implementing a program of self-insurance and mitigation of damages, *in case* their baseless theories regarding rescission are judicially adjudged to be wrong. The fact that ST.PAUL was hedging their bets should not be a cause for any prejudice to Plaintiffs.    Indeed, Plaintiffs have not even been given an option of proceeding with their own defense as an alternative to ST.PAUL entering into such collusive and secret agreements behind the back of Plaintiffs. QAD still has to defend against Vedatech Parties' claims. The issues are identical and there is not savings in judicial time or efficiency in "settling" QAD's claims. If QAD sincerely considers its claims to be worth $500,000 or more, then not involving in this "compromise" exchange cannot harm QAD.

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Injunctive Relief Requested**

99.    WHEREFORE, Plaintiffs respectfully request the Court to issue an injunction with respect to one or more of the following imminent acts of Defendants (and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with Defendants), enjoining and restraining Defendants either, permanently and perpetually or until a final Judgment (including appeals) is entered in the underlying insurance Declaratory Relief action commenced by ST.PAUL (C-04-01818). The Court is also requested to order additional injunctions as appropriate:

a.    ST.PAUL to be ordered not to pay any monies directly or indirectly to QAD or related parties under paragraph 2 of the "agreement and release," a copy of which is attached as Exhibit A to this Complaint;

b.    ST.PAUL to be ordered not to pay directly or indirectly any monies to QAD or any other related party at all, wherein such a payment is or can be construed as being on behalf of Plaintiffs (referred to as "Insured and Putative Insureds" in Paragraph 2 of the "agreement and release");

c.    ST.PAUL to be ordered not to pay directly or indirectly any monies to QAD or any other related party at all, wherein such payments create any liability for payments or set-offs of any sort, present or future on the part of Plaintiffs;

d.    ST.PAUL to be ordered to pay past due legal bills without any further delays;

e.    ST.PAUL and QAD be enjoined from trying to enforce this "agreement and release" in this Court or otherwise until the underlying coverage litigation and this action itself is resolved;

f.    ST.PAUL be enjoined from re-litigating the QAD claims in part or whole in the underlying coverage litigation;

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

g.     ST.PAUL and QAD and WULFF to be ordered to provide full details of all their negotiations relating to the "mediation" and the "agreement and release";

h.     QAD be ordered not to bring any proceedings or motions in reliance of this "agreement and release";

i.     QAD be ordered not to act in reliance of this agreement in any way whatsoever;

j.     QAD be ordered to produce all insurance policies in the period 1994 through the current period, including D&O policies and CGL policies;

**Damages**

100.     As a proximate result of such threatened activities of Defendants, Vedatech Parties have sustained damages including various attorney fees and costs and pray that such amounts be ordered to be paid to Plaintiffs by Defendants.

101.     The actual damages to Plaintiffs if Defendants are permitted to pursue their threatened actions are in an amount in excess of $75,000.

**THIRD CAUSE OF ACTION**
**(FRAUD – INTENTIONAL MISREPRESENTATION)**

102.     Vedatech Parties reallege all of the allegations of paragraphs 1-101 above.

**Representations by ST.PAUL regarding purpose of "mediation" and the aggressive promotion of WULFF as a mediator**

103.     ST.PAUL concealed from Plaintiffs the true reasons for their desire to conduct a mediation. ST.PAUL's non-disclosure of their pre-meditated plans of using the cloak of secrecy surrounding the mediation to engage in insurance bad faith actions is a deliberate misrepresentation. Such misrepresentation and non-disclosure was intended by ST.PAUL to induce Plaintiffs to consent to such a *faux*-mediation. ST.PAUL obtained Court orders based on such fraudulently procured "consent" and then freely conducted their bad faith activities with the cooperation of WULFF and then QAD.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Representations by ST.PAUL regarding contacts with WULFF**

104.    Although ST.PAUL had fiduciary-like duties towards its insureds, it failed to disclose the nature and details of ST.PAUL's and its attorneys' prior contacts and relationship with WULFF.  ST.PAUL should have made such disclosure before it obtained Plaintiffs' consent which consent was the stated basis for the Court order(s) regarding mediation.  Such non-disclosure is deliberate misrepresentation.  In addition, ST.PAUL actively promoted WULFF as a proper neutral.  ST.PAUL aggressively prevented the choice of alternative neutrals even when there was a scheduling problem with WULFF vis-à-vis the convenience of SUBRAMANIAN.  Thus, the Court order of January 13, 2003 and all further orders regarding mediation were fraudulently obtained and the consent of Plaintiffs to such orders was obtained by such fraudulent representations and intentional non-disclosures.

**Representations by WULFF regarding neutrality**

105.    WULFF represented to Vedatech Parties that he would not act as an advocate for any party.  In addition, Mr Richards, the assistant to WULFF assured Vedatech Parties that a conflicts check had been made and there are no conflicts with respect to the actual parties to the mediation.  This was and is a deliberate misrepresentation.  Mr Richards at that time did not inform Plaintiffs about the more limited written "conflicts check" provision, which had loopholes for hiding the relationship that WULFF had with ST.PAUL.  Mr. Richards is an agent of WULFF.  WULFF is responsible for the fraudulent representations of Mr. Richards.  WULFF further confirmed and added to Mr. Richards' misrepresentations on the day of the mediation and before the mediation started.  Furthermore, WULFF did not provide Vedatech Parties with a reasonable opportunity to read or check the newly presented "conflicts check" documents, which was included in another document under duress.

106.    Before the start of the Mediation, WULFF further assured SUBRAMANIAN that SUBRAMANIAN could terminate the mediation any time SUBRAMANIAN wanted to,

Page 32 of  49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

and especially if and after SUBRAMANIAN initially made an effort to settle with QAD. WULFF had no intention of terminating the mediation if SUBRAMANIAN terminated it. Such assurances were false. ST.PAUL and WULFF needed the fig leaf of the participation by SUBRAMANIAN, just to lend an air of legitimacy for their premeditated plans for helping ST.PAUL benefit themselves (and QAD) at the expense of Vedatech Parties.

**Intention to Induce Plaintiffs**

107.    WULFF and ST.PAUL intended Plaintiffs to rely upon these misrepresentations and fraudulent statements and deliberate non-disclosures and thus intended to and did induce them to attend the mediation under terms that were favorable to them and harmful to Plaintiffs. WULFF and ST.PAUL knew at all times that Plaintiffs would rely upon such statements. WULFF and ST.PAUL needed SUBRAMANIAN to join the mediation at least in the beginning as they could not otherwise engage in such negotiations with QAD under the cloak of secrecy provided by a "mediation".

**Falsity and Knowledge of Falsity of these various representations**

108.    All of the representations above were false and WULFF and ST.PAUL always knew that they were so false. From information and belief, WULFF has conducted various other mediations for ST.PAUL and/or Mr Greenan, the attorney for ST.PAUL and/or the firm that Mr Greenan works in. Notwithstanding potential conflicts because of such prior representation, such information was not disclosed to Plaintiffs by ST.PAUL or its attorneys or by WULFF. Had Plaintiffs been aware of such prior contacts, they would not have agreed to participating in this mediation at all or consented to the January 13, 2004 "order"

109.    In addition, if Plaintiffs were aware of the falsity of such statements, even after the January 13, 2004 order or the further orders, they would have applied to the Court to set aside such Orders and would have sought relief from attending the mediation or withdrawn from it immediately.

Page 33 of 49

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Reliance on these Misrepresentations**

110.    Vedatech Parties were unaware of the falsity of these representations, were unaware of the information that was deliberately withheld from them, and relied upon these misrepresentations and, in the absence of proper disclosure, their reasonable beliefs as to the state of affairs, in "consenting" to the January 13, 2004 order, and not fully opposing further orders, participating even in the limited fashion in the mediation and in staying back briefly after initially telling WULFF before the mediation started that they wished to withdraw.

**Proximate Harm and Damages**

111.    As a proximate result of such reliance upon the false promises of these Defendants, Vedatech Parties have sustained heavy damages, and continue to sustain damages, including, but not limited to, further delay in pursuing legal remedies with respect to their claims, costs related to various satellite litigation necessitated by such fraud, potential compromise of their underlying claims, consequential damages caused by SUBRAMANIAN's inability to conduct other business and other incidental damages.

112.    The actual damages are in an amount in excess of $75,000, and to be determined at trial.

**Exemplary and Punitive Damages**

113.    The acts and conduct of these Defendants were, and continue to be oppressive, fraudulent, and malicious.  Defendants knew or should have known, (and, in addition, know or should know) that their conduct would harm Vedatech Parties.

114.    Defendants' actions were, and continue to be undertaken for the specific purpose of enriching themselves at the expense of Vedatech Parties.  Vedatech Parties therefore seek, and are entitled to recover, punitive and exemplary damages in the amount to be determined at trial.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**(CONSPIRACY TO COMMIT FRAUD / MISREPRESENTATION)**

115.    Plaintiffs reallege the allegations of paragraphs 1-114 above.

116.    The various defendants, ST.PAUL, and WULFF acted in collusion with each other and other parties, and intended to commit and had the common purpose of committing the fraud alleged herein and profiting from the same at the expense of Vedatech Parties.

**Participation by QAD**

117.    Defendant QAD became aware of the fraudulent schemes during the mediation, and initially through WULFF and/or ST.PAUL.  Subsequently, willingly, and with an intent to harm Vedatech Parties, and with full knowledge of the details, purpose and intent of the parties thereof, QAD participated in the ongoing fraudulent scheme of ST.PAUL and WULFF.  QAD especially relied upon the idea that the cloak of secrecy in mediation can be used to engage in fraudulent and collusive schemes to benefit themselves and ST.PAUL at the expense of Vedatech Parties.

118.    Defendants are jointly and severally liable for the fraud and misrepresentation that either of them engaged in.

**Exemplary and Punitive Damages**

119.    The acts and conduct of Defendants were, and continue to be oppressive, fraudulent, and malicious.  Defendants knew or should have known, (and, in addition, know or should know) that their conduct would harm Vedatech Parties.

120.    Defendants' actions were, and continue to be undertaken for the specific purpose of enriching themselves at the expense of Vedatech Parties.   Vedatech Parties therefore seek, and are entitled to recover, punitive and exemplary damages in the amount to be determined at trial.

Page 35 of 49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

## FOURTH CAUSE OF ACTION
## (CONSTRUCTIVE FRAUD)

121.    Vedatech Parties reallege paragraphs 1-120 above.

**Duty of Care / Confidential Relationship / Fiduciary-like duties**

122.    ST.PAUL in the position of an insurer had fiduciary-like duties towards its insureds. ST.PAUL further had a confidential relationship arising from the participation in a mediation. ST.PAUL breached their duties towards Vedatech Parties by their conduct described herein. ST.PAUL failed to disclose various material facts, and intended to conceal such material facts from Vedatech Parties, in an effort to harm Vedatech Parties and benefit themselves economically. Vedatech Parties relied to their own detriment upon the trust they placed in ST.PAUL (as the insurer).

123.    Accordingly the facts alleged above constitute liability on the part of ST.PAUL and WULFF for constructive fraud.

124.    WULFF in the position of a self-declared neutral and a mediator was in a confidential relationship with Vedatech Parties. WULFF further had a confidential relationship arising from the conduct of this particular mediation where he was supposed to help Vedatech Parties on the same footing as all of the other participants. WULFF breached his duties towards Vedatech Parties by his conduct described herein. WULFF failed to disclose various material facts, and intended to and did conceal such material facts from Vedatech Parties, in an effort to harm Vedatech Parties and benefit himself economically. Vedatech Parties relied to their own detriment upon the trust they placed in WULFF (as the mediator).

125.    Accordingly the facts alleged above constitute liability individually and jointly on the part of WULFF for constructive fraud.

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Damages**

126.    As a proximate result of such reliance upon the false promises and non-disclosures of Defendants, Vedatech Parties have sustained heavy damages, and continue to sustain damages, including, but not limited to, further delay in pursuing legal remedies with respect to their claims, costs related to various satellite litigation necessitated by such fraud, potential compromise of their underlying claims, consequential damages caused by SUBRAMANIAN's inability to conduct other business and other incidental damages.

127.    The actual damages are in an amount in excess of $75,000, and to be determined at trial.

**Exemplary and Punitive Damages**

128.    The acts and conduct of Defendants were, and continue to be oppressive, fraudulent, and malicious.  Defendants knew or should have known, (and, in addition, know or should know) that their conduct would harm Vedatech Parties.

129.    Defendants' actions were, and continue to be undertaken for the specific purpose of enriching themselves at the expense of Vedatech Parties.   Vedatech Parties therefore seek, and are entitled to recover, punitive and exemplary damages in the amount to be determined at trial.

**(CONSPIRACY REGARDING CONSTRUCTIVE FRAUD)**

130.    Plaintiffs reallege the allegations of paragraphs 1-129 above.

131.    Defendants WULFF was aware of the purpose and intent of ST.PAUL in their plans to harm Vedatech Parties.  WULFF acted in collusion with ST.PAUL in furtherance of the unlawful activities of ST.PAUL alleged herein.  WULFF joined in the conspiracy in furtherance of his own individual economic interests (e.g. continuing business with ST.PAUL and their attorneys, Mr Greenan and his law firm).

First Amended Complaint *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

132.    WULFF is jointly and severally liable for the constructive fraud committed on Vedatech Parties by ST.PAUL.

133.    Defendants ST.PAUL was aware of the purpose and intent of WULFF in his plans to harm Vedatech Parties.  ST.PAUL acted in collusion with WULFF in furtherance of the unlawful activities of WULFF alleged herein.  ST.PAUL joined in the conspiracy in furtherance of its own individual economic interests (e.g. unfairly gaining advantage in the coverage litigation, weakening Vedatech Parties' legal representation etc.).

134.    ST.PAUL is jointly and severally liable for the constructive fraud committed on Vedatech Parties by WULFF.

135.    Defendant QAD joined these conspiracies in furtherance of its own individual economic interests, and at the expense of Vedatech Parties.  QAD intended to gain various benefits (e.g. a Settlement amount from ST.PAUL in return for dropping its worthless claims, avoidance of malicious prosecution claims from Vedatech Parties, weakening Vedatech Parties' legal representation – the last a multi-year ongoing effort by QAD, their in-house counsel Mr Roland Desilets, and their attorney Mr. Connell that is ongoing to this day.)

136.    QAD intended to harm Vedatech parties and is liable as a co-conspirator for the acts and liabilities of ST.PAUL and/or WULFF. [9]

137.    In addition, *to the extent* that ST.PAUL, and/or WULFF and/or QAD rely upon any agreement, formal or informal to participate in the mediation (as a forum for negotiating a settlement,) that agreement or those agreements (or the Court order itself) include(s) an implied covenant of good faith and fair dealing towards Vedatech Parties.

---

[9]    See e.g., *City of Atascadero v St.Paul Fire & Merrill Lynch.*, (1998) 68 Cal.App.4[th] 445, 464 and n.14 thereof (discussing civil conspiracy):

*As long as the third parties were acting to further their own individual economic interests, they may be liable for actively participating in a fiduciary's breach of his or her trust.*

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Exemplary and Punitive Damages**

138.    The acts and conduct of Defendants were, and continue to be oppressive, fraudulent, and malicious.  Defendants knew or should have known, (and, in addition, know or should know) that their conduct would harm Vedatech Parties.  Plantiffs' actions were, and continue to be undertaken for the specific purpose of enriching themselves at the expense of Vedatech Parties.  Vedatech Parties therefore seek, and are entitled to recover, punitive and exemplary damages in the amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(NEGLIGENT MISREPRESENTATION)**

139.    Vedatech Parties reallege all of the allegations made in paragraphs 1-138 above.

140.    In the alternative to the cause of action for intentional fraud, it is alleged in the alternative that Defendants ST.PAUL, WULFF, and DOES 1-50 made the various representations without any reasonable grounds for believing them to be true.

**Damages**

141.    As a proximate result of such reliance upon the false promises of these Defendants, Vedatech Parties have sustained heavy damages, and continue to sustain damages, including, but not limited to, further delay in pursuing legal remedies with respect to their claims, costs related to various satellite litigation necessitated by such fraud, potential compromise of their underlying claims, consequential damages caused by SUBRAMANIAN's inability to conduct other business and other incidental damages.

142.    The actual damages are in an amount in excess of $75,000, and to be determined at trial.

Page 39 of  49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

# SIXTH CAUSE OF ACTION
## (INSURANCE "BAD FAITH")
## (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

143.    Vedatech Parties reallege all of the allegations of paragraphs 1-142 above.

**The insurance agreements**

144.    The contractual agreements between ST.PAUL and Vedatech Parties are detailed in the counterclaims (Fourth Amended Cross-Complaint) of the ST.PAUL-Case currently pending as C-04-01818.

**Bad Faith Acts by ST.PAUL**

145.    Some of the bad faith actions of ST.PAUL are detailed in para.153 below under the section for "Unfair Competition". A sample is reproduced below:

a.    Contrary to their fiduciary-like duties, planning to breach such duties under the cloak of the mediation in order to "cut a deal" with QAD outside the sunshine of normal open settlement offers for insurance claims and responses;

b.    Mixing coverage concerns, nay, permitting coverage concerns to dominate and be the sole concern in dealing with settlement and mediation issues;

c.    Withholding reimbursement for defense costs already incurred based on past promises of ST.PAUL regarding their commitment at least regarding partial payments in limited areas, suddenly after the purported "settlement" with QAD;

d.    Permitting Mr. Greenan, Mr. Wang and their law firm to viciously attack Vedatech Parties (the insureds) in the coverage litigation and bringing meritless *ex parte* motion after *ex parte* motion in State Court with respect to the coverage litigation, mostly in violation of State Court procedural rules and thus compromising the preparation and work that insureds could put into defending

Page 40 of 49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

the QAD-Case;  Harassing Plaintiffs with meritless "contempt of court" motions

or inserting unwarranted "contempt of court" provisions in proposed orders etc.

e.    Failure to present any settlement "offer" from QAD to Vedatech Parties (even if

made under the excuse of "mediation") to see if Vedatech Parties were willing to

continue defense without any help from ST.PAUL and see whether Vedatech

Parties were willing to waive any excess liability for judgments that may exceed

policy limits, especially when such a contingency (for excess Judgment) is non-

existent;

**Continuing Bad Faith Acts**

146.    Plaintiffs especially wish to emphasize the bad faith acts of ST.PAUL that

have occurred since the answer in the original coverage action, viz. June 2002.

**Proximate Harm and Damages**

147.    As a proximate result of such reliance upon the false promises of these

Defendants, Vedatech Parties have sustained heavy damages, and continue to sustain

damages, including, but not limited to, further delay in pursuing legal remedies with respect

to their claims, costs related to various satellite litigation necessitated by such fraud, potential

compromise of their underlying claims, consequential damages caused by

SUBRAMANIAN's inability to conduct other business and other incidental damages.

148.    The actual damages are in an amount in excess of $75,000, and to be

determined at trial.

**Exemplary and Punitive Damages**

149.    The acts and conduct of these Defendants were, and continue to be oppressive,

fraudulent, and malicious.  Defendants knew or should have known, (and, in addition, know

or should know) that their conduct would harm Vedatech Parties.

Page 41 of  49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

150.    Defendants' actions were, and continue to be undertaken for the specific

purpose of enriching themselves at the expense of Vedatech Parties.   Vedatech Parties

therefore seek, and are entitled to recover, punitive and exemplary damages in the amount to

be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(UNFAIR COMPETITION)**

**(CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et. seq.)**

151.    Vedatech Parties reallege all of the allegations or paragraphs 1-150 above.

**Pattern of behavior**

152.    From information and belief, Defendants have engaged in a pattern of

behavior that is unlawful, unfair or fraudulent, including (in addition to all of the allegations

in the Complaint set out above):

**ST.PAUL**

**Fraudulent Behavior**

a.    Fraudulently inducing Plaintiffs to "consent" to an order by the Court on January 13,

2004 (and inducing Plaintiffs not to oppose in full, subsequent orders) with respect to

a mediation with premeditated plans for using the cloak of secrecy provided by

mediation, so that they could, with the help of WULFF, and QAD, make collusive

arrangements with QAD that would be harmful to their insureds;

b.    Fraudulently and coercively forcing Plaintiffs into such a mediation;

c.    Failure to disclose the detailed nature of ST.PAUL's (and their attorneys') prior

relationship and dealings with WULFF to insureds, both before the January 13, 2004

hearing / order, and through the end of the mediation and afterwards;

d.    Other fraudulent behavior as detailed above;

Page 42 of 49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**Abuse of Process**

e.  Inserting items such as "contempt of court" etc in Court orders even though the Court did not make such orders;

f.  Inserting various other provisions into proposed orders where the Court did not make such orders or made contrary orders;

g.  Harassing insureds by bringing improper "contempt of court" applications for trivial and disproportionate normal discovery issues and that too without notice and at ex parte hearings, with such documents being served literally seconds before the parties enter the chambers;

**Insurance Bad Faith and Conspiracy to Harm Plaintiffs**

h.  Compromising the defense of the QAD-Case by their vicious attacks on their own insureds;

i.  Failure to terminate the mediation when Vedatech Parties terminated it at or around 4:00 PM on March 12, 2004;

j.  Failure to separate coverage issues from settlement issues before and after the mediation;

k.  Failure to have a separation of duties and responsibilities between the coverage attorneys and the insurance adjuster so that the settlement discussions are not tainted with coverage concerns;

l.  Failure to inform or update insureds of secret negotiations undertaken with QAD and WULFF even after the mediation was terminated by SUBRAMANIAN;

m.  Failure to present any settlement "offer" from QAD to Vedatech Parties to see if they were willing to continue defense without any help from ST.PAUL and see whether Vedatech Parties were willing to waive any excess liability for judgments that may exceed policy limits;

Page 43 of 49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

n. Continuing with the mediation between QAD and ST.PAUL even after mediation was terminated by SUBRAMANIAN;

o. Conspiring with QAD and others to weaken Plaintiffs' legal representation with respect to the coverage litigation and concurrently getting released from their risk of bad faith behavior with respect to inadequate responses to their duties to defend;

p. Asking WULFF to act as an advocate for ST.PAUL and QAD while sacrificing the interests of SUBRAMANIAN and VEDATECH;

q. Withholding even the partial skimpy payments for past defense costs and fees already incurred (even for dates before March 15, 2004);

r. Refusal to provide even this skimpy limited and partial reimbursement of defense costs for defense activities after the purported "settlement" of March 15, 2004;

s. Making false statements in Court pleadings and letters to the Court in the insurance coverage litigation;

t. Refusing to make any arrangements for advance payments in the QAD-Case and compromising the defense and discovery activities;

u. Other fraudulent, unfair, and unlawful activities as detailed above;

**WULFF**

v. Non-disclosure of relationship with ST.PAUL and their attorneys (including Mr Greenan and his law firm) to Vedatech Parties;

w. Non-disclosure regarding past insurance related three-party mediation (such as between insurer, insured and plaintiffs in underlying litigation triggering insurance);

x. Using Unfair and Unlawful activities during the mediation to favor one set of parties over the weaker, smaller party (the insured in this case);

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

y.  Falsely presenting himself as a neutral while at the same time favoring large clients such as ST.PAUL and QAD to the detriment of small businesses and one-time clients;

z.  Permitting the fact that ST.PAUL and QAD agreed to reimburse mediation fees affect neutrality;

aa. Adopting coercive tactics such as using ST.PAUL and QAD to obtain Court orders compelling Vedatech Parties to undertake various activities, all in relation to his own mediation while confessing that he himself had no such coercive authority;

bb. Misrepresenting the results of conflicts check and using small print for escape clauses buried in an addendum to the main form contracts.  Using such hidden disclaimers to shift the burden of disclosure on voluntary acts of counsel;

cc. Misrepresenting the effect of the separate document of "conflicts check" as solely dealing with former clients of former law firm, while suppressing the vital information about non-disclosure of prior business relationship with other parties to the mediation and their attorneys;

dd. Using duress and coercive tactics to force Vedatech Parties to sign an agreement they did not want to sign;

ee. Continuing with the mediation after SUBRAMANIAN terminated it around 4:00 PM on March 12, 2004 in spite of knowing about the various conflicts and specifically in light of SUBRAMANIAN's pre-mediation query about the legality.  Undertaking such activities in spite of opining to SUBRAMANIAN before the mediation started that this was an unsettled area of law.  A mediator presenting himself as a neutral should not continue conflicting duties if there was even a hint of potential illegality;

ff. Unlawfully conspiring with ST.PAUL and QAD in the above activities;

gg. Other fraudulent and unlawful activities as detailed above;

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

**QAD**

hh. Unlawfully conspiring with ST.PAUL and WULFF in the above activities;

ii. Conspiring to unlawfully, fraudulently and unfairly benefiting to the tune of $500,000 with such monies coming out of the insurance benefits of Vedatech Parties;

jj. Hiding the true nature of QAD Japan K.K. and QAD Japan Inc. in its SEC filings;

kk. Refusing to provide CGL policies covering relevant periods in spite of repeated requests for the same, while at the same time engaging in secret collusive deals with the insurer of Vedatech Parties;

ll. Refusing to provide timely information on insurance coverage for SUBRAMANIAN under QAD Inc.'s policies;

mm.    After the mediation, cooperating with ST.PAUL in furtherance of ST.PAUL's insurance bad faith activities.

**ST.PAUL, WULFF and QAD**

nn. Other fraudulent, unfair and unlawful activities as detailed in the Complaint and to be proven at trial;

153.    Defendants' behavior, and pattern of behavior, including the unlawful, unfair and fraudulent acts alleged above constitute a violation of the Unfair Competition Laws of California, as set out in the California Business and Professions Code §§ 17200 et seq.

**(CONSPIRACY REGARDING UNFAIR COMPETITION)**

154.    Plaintiffs reallege the allegations of paragraphs 1-155 above.

155.    The various defendants acted in collusion with each other (as detailed above), and with the common purpose of engaging in and with prior knowledge of the unfair, unlawful and fraudulent business practices alleged herein and profiting from the same at the

---

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

1  expense of Vedatech Parties.  Defendants are jointly and severally liable for their conduct

2  and for the conduct of each other.

3  ### RESTITUTION /DISGORGEMENT OF PROFITS

4  156.  ST.PAUL is enriched by withholding defense costs and benefits to Vedatech

5  Parties.  It is further enriched by its other bad faith activities described herein at the expense

6  of Vedatech.  ST.PAUL is liable to disgorge all such benefits that are due to the Vedatech

7  Parties under the California Unfair Competition laws.

8  157.  QAD is enriched by gaining the right to receive (or by actually receiving)

9  $500,000 from ST.PAUL from funds that are held in trust for the Vedatech Parties.  QAD is

10  also liable to Vedatech Parties for all of the amounts that ST.PAUL or WULFF are liable, on

11  the basis of their participation in the conspiracies as alleged herein.

12  158.  WULFF is liable to Vedatech Parties for all of the amounts that ST.PAUL or

13  QAD are liable, on the basis of his participation in the conspiracies as alleged herein.

14  159.  Defendants are also liable for any and all other remedies available to Vedatech

15  Parties under the California Business and Professions Code §§ 17200 et seq.

16  160.  The actual amounts in restitution /disgorgement of profits and other damages

17  prayed for herein are in an amount in excess of $75,000, and to be determined at trial.

18

19  ### PRAYER FOR RELIEF

20  WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

21

22  (1)  Declaratory and injunctive relief as sought herein or as deemed appropriate by the Court;

23

24  (2)  damages be awarded as sought herein;

25  (3)  for consequential and economic losses in an amount to be proven at trial;

26  (4)  restitution be provided for the unlawful profits made by Plaintiffs;

27  Page 47 of  49

28  **First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

(5)     for interest on such amounts;

(6)     for general damages to compensate Plaintiffs for their lost business opportunities, goodwill, and other losses in an amount to be proven at trial;

(7)     for punitive damages;

(8)     for attorney's fees and for costs of suit;

(9)     for equitable relief stripping defendants of their unjust enrichment;

(10)    for appropriate injunctions preventing defendants from continuing their unlawful, and/or unfair and/or fraudulent activities;  *and*

(11)    for such and any other relief as the Court deems proper.


**Respectfully submitted** on behalf of Plaintiffs VEDATECH INC., VEDATECH K.K. and MANI SUBRAMANIAN.

Dated: June 15, 2004                    **LAW OFFICES OF JAMES S. KNOPF**


By _____//s//_____
**CHRISTINA GONZAGA**
ATTORNEY FOR PLAINTIFFS
VEDATECH INC., *and*
VEDATECH K.K.


Dated: June 15, 2004                    **MANI SUBRAMANIAN (pro per)**


By _____//s//_____
**MANI SUBRAMANIAN (pro per)**


<u>Next Page:</u>     **<u>Demand for Jury Trial</u>**

Page 48 of  49

**First Amended Complaint** *of*
Plaintiffs <u>Vedatech Inc., Vedatech K.K. and Mani Subramanian</u> *against* defendants
<u>St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff</u>

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiffs VEDATECH K.K. and MANI SUBRAMANIAN request a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by a jury.

Dated: June 15, 2004                    **LAW OFFICES OF JAMES S. KNOPF**


                                        By _____//s//_____
                                           **CHRISTINA GONZAGA**
                                           ATTORNEY FOR PLAINTIFFS
                                           VEDATECH INC., *and*
                                           VEDATECH K.K.



Dated: June 15, 2004                    **MANI SUBRAMANIAN (pro per)**


                                        By _____//s//_____
                                           **MANI SUBRAMANIAN (pro per)**

**First Amended Complaint** *of*
Plaintiffs Vedatech Inc., Vedatech K.K. and Mani Subramanian *against* defendants
St.Paul Fire and Marine Insurance, USF&G, QAD Inc., QAD Japan K.K. and Randall Wulff

C-04-01249 VRW

### AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is made between QAD INC., and QAD

JAPAN K.K. (collectively "the QAD Parties") and ST. PAUL FIRE & MARINE INSURANCE

COMPANY and UNITED STATES FIDELITY AND GUARANTY COMPANY ("St. Paul"), as

insurer for insured and putative insureds Vedatech Inc., Vedatech K.K., and Mani Subramanian

(collectively "Insured and Putative Insureds").

### Recitals

A.    On January 26, 1998, QAD Inc. and QAD Japan K.K. filed suit against Vedatech

Inc. and Mani Subramanian in the Santa Clara County Superior Court, Case Number 1-98-CV-

771638 (the "First Action"), arising out of a dispute relating to events and circumstances arising

from a commercial relationship between the parties dating to March 24, 1994.  On July 29, 1998,

Vedatech Inc. removed the First Action to the United States District Court for the Northern

District of California (Case No. C98-20792-SW).

B.    On September 17, 1999, Vedatech K.K. and Mani Subramanian filed suit in the

Santa Clara County Superior Court, Case No. 1-99-CV-784685 (the "Second Action") against

QAD Inc., among other defendants.  On September 29, 1999, a First Amended Complaint was

filed in the Second Action adding new causes of action and new defendants, including QAD

Japan Inc., among others.  On December 23, 1999, QAD Japan Inc. removed the Second Action

to the United States District Court for the Northern District of California (Case No. C99-21241-

SW).

C.    On March 9, 2000, QAD Inc. and QAD Japan K.K. filed Counterclaims in the

Second Action against Mani Subramanian and Vedatech K.K., also arising out of the dispute

1

## EXHIBIT A to First Amended Complaint

C-04-01249 VRW

relating to events and circumstances arising from the commercial relationship between the parties dating to March 24, 1994.

    D.     On April 10, 2000, the United States District Court for the Northern District of California remanded both the First Action and the Second Action to Santa Clara County Superior Court.

    E.     On September 1, 2000, QAD Inc. and QAD Japan K.K. filed a First Amended Cross-Complaint against Vedatech K.K. ("QAD Cross-Complaint") in the Second Action. Mani Subramanian, who had by now filed an Answer to the Complaint in the First Action, was dismissed as a cross-defendant in the QAD Cross-Complaint. Vedatech K.K. subsequently filed an Answer to the QAD Cross-Complaint.

    F.     The First Action and the Second Action were consolidated by the Santa Clara County Superior Court in early 2002 under the Lead Case Number 1-98-CV-771638.

    G.     On March 12, 2004, pursuant to an Order of the Court, the QAD Parties, St. Paul, and the Insured and Putative Insureds, among other parties in the First and Second Actions, participated in a mediation session before Randall Wulff, from which this Agreement arises.

    H.     On or about March 16, 2004, Mani Subramanian, Vedatech Inc., and Vedatech K.K. removed the consolidated First Action and Second Action to the United States District Court for the Northern District of California (Case No. C-04-01035-PJH).

    I.     St. Paul, as the insurer for Insured and Putative Insureds as to claims against them in the First and Second Actions, and the QAD Parties hereby wish to resolve all affirmative claims asserted by the QAD Parties against St. Paul's Insured and Putative Insureds in the First and Second Actions.

2

# EXHIBIT A to First Amended Complaint

C-04-01249 VRW

<u>Agreement</u>

In consideration of the foregoing and the following terms and conditions, it is hereby agreed:

1.    The QAD Parties and St. Paul wish to effect a settlement and release of all claims asserted by the QAD Parties against Vedatech Inc. and Mani Subramanian in the First Action and a settlement and release of all claims asserted by the QAD Parties against Vedatech K.K. in the QAD Cross-Complaint filed in the Second Action. Accordingly, the QAD Parties shall take all steps necessary to effect a dismissal, with prejudice, of any and all claims asserted or that could be asserted against Vedatech Inc., Vedatech K.K. and Mani Subramanian, or any of them, in either the First Action or the Second Action, by way of complaint, counterclaim, or cross-complaint.

2.    In exchange for the consideration set forth in Paragraphs 1, 3, 4, and 5 herein, St. Paul, on behalf of its Insured and Putative Insureds, agrees to pay to the QAD Parties, by check made payable to "QAD Inc.," the sum of Five Hundred Thousand Dollars Exactly ($500,000). Said payment shall be made by St. Paul to QAD Inc. simultaneously with the entry of dismissal, with prejudice, by the Court in which the First Action and Second Action are then pending, of all claims of the QAD Parties against the Insured and Putative Insureds, including, specifically, the Complaint in the First Action and the First Amended Cross-Complaint in the Second Action.

3.    The QAD Parties, on behalf of themselves and their principals, assigns, parents, subsidiaries, affiliated and related entities (including, but not limited to, QAD Japan Inc.), agents, officers, directors, and all persons, firms, associations and/or corporations connected with them (including, but not limited to, John Doordan and Lai Foon Lee), hereby agree to and do release and forever discharge Vedatech Inc., Vedatech K.K. and Mani Subramanian, and each of them,

3

**EXHIBIT A to First Amended Complaint**

C-04-01249 VRW

and any and all affiliated persons or entities including, but not limited to their executors spouse and family estate, administrators, trustors, trustees, beneficiaries, predecessors, successors, assigns, partners, partnerships, parents, subsidiaries, affiliated and related entities, officers, directors, principals, agents, employees, servants, representatives, insurers, attorneys and all persons, firms, associations and/or corporations connected with them (collectively "Vedatech"), jointly or severally, from all claims, demands, actions, or causes of action that the QAD Parties have, have had, or may in the future have against Vedatech of any kind or nature, arising out of matters, events, or facts existing up to and including the date of this Agreement, including specifically, but not limited to, any claim, demand, action, or cause of action alleged in the Complaint in the First Action or the QAD Cross-Complaint in the Second Action. The QAD Parties further agree that they shall not seek to hold Vedatech responsible for any fees or costs the QAD Parties have incurred in prosecution of the First Action or the QAD Cross-Complaint. St. Paul agrees that it shall not seek to hold the QAD Parties responsible for any fees or costs Vedatech has incurred in prosecution of the First Action or the Second Action.

4.    The QAD Parties recognize the possibility that presently unknown damages may exist or develop in the future with respect to the matters released pursuant to Paragraph 3 and that there is the possibility that the QAD Parties may have sustained damages as a result of the actions of the Insured and Putative Insureds, including but not limited to damages resulting from the matters described in Paragraphs A through I above, which are not yet known or anticipated. The QAD Parties desire, however, in contemplation of receiving the consideration set forth herein, to accept the risk that such damages may exist or develop and, accordingly, expressly release Vedatech from any and all such damages based upon facts that may become known to it in the future.

4

# EXHIBIT A to First Amended Complaint

C-04-01249 VRW

5.    The QAD Parties acknowledge and expressly agree to waive, in regard to all matters released by this Agreement, including any and all claims in the First Action and in the QAD Cross-Complaint in the Second Action, the provisions of California Civil Code, section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

6.    The extent of the damages sustained by the QAD Parties hereto is unknown. The QAD Parties and St. Paul, respectively, rely wholly on their own judgment as to the extent of these damages and have not been influenced by any statement made by the other.

7.    The QAD Parties and St. Paul, respectively, have carefully read this Agreement, know what is in it, and sign it freely and voluntarily.

8.    This Agreement is intended not to impair the prosecution by Vedatech (as defined in Paragraph 3 above) of any and all affirmative claims that may exist with respect to the First or Second Action, or that may otherwise be available to Vedatech as against the QAD Parties, or either of them, and the prosecution of any and all such claims is in no manner impacted, affected, modified, cancelled, settled, released or waived by way of the release and discharge or any dismissal entered pursuant to this Agreement.

9.    Nothing in this Agreement shall or may be construed as estoppel, waiver or admission by St. Paul of the existence of coverage under any insurance for any Vedatech entity or for Mani Subramanian with respect to the First Action or Second Action, and St. Paul reserves all rights with respect to its pending action, Santa Clara County Superior Court, Case No. 1-02-CV-805197. Furthermore, nothing in this Agreement is intended as, nor shall it be deemed to be or

5

**EXHIBIT A to First Amended Complaint**

C-04-01249 VRW

construed as, an admission by the QAD Parties, or either of them, of any liability with respect to any claims, demands, or causes of action alleged by Vedatech (as defined in Paragraph 3 above) in the First Action, the Second Action, or otherwise. The QAD Parties expressly deny any and all such liability. In addition, nothing in this Agreement is intended as, nor shall it be deemed to be or construed as, an admission by Vedatech (as defined in Paragraph 3 above) of any liability with respect to any claims, demands, or causes of action alleged by the QAD Parties, or either of them, in the First Action, the Second Action, or otherwise. St. Paul admits no liability on behalf of Vedatech through execution of this Agreement.

    10.    This Agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of California.

    11.    This Agreement contains the entire agreement between the parties hereto.

    12.    This Agreement constitutes an integration of the understanding and agreement of the parties. Any representation, warranty, promise or condition, whether written or oral, not specifically incorporated in this Agreement shall not be binding upon any of the parties, and all parties acknowledge that in entering into this Agreement they have not relied upon any representations, promises or conditions not specifically set forth in this Agreement.

    13.    This Agreement may be executed in counterpart, and each such counterpart shall be deemed an original.

    IN WITNESS WHEREOF, the parties have executed this Agreement and Release as of the date set forth below.

Dated: _March 24_ , 2004.        QAD Inc.

                                By: _Karl Lopker_

6

**EXHIBIT A to First Amended Complaint**

C-04-01249 VRW

Dated: March 25, 2004.

QAD Japan K.K.

By: Valeri Miller


Dated: _____, 2004.

St. Paul Fire & Marine Insurance Company
and United States Fidelity and Guaranty
Company


By: _____


7

**EXHIBIT A to First Amended Complaint**

C-04-01249 VRW

Dated: _____, 2004.

QAD Japan K.K.

By: _____

Dated: 3/25 , 2004.

St. Paul Fire & Marine Insurance Company
and United States Fidelity and Guaranty
Company

By: _____

7

**EXHIBIT A to First Amended Complaint**

C-04-01249 VRW

# GREENAN, PEFFER, SALLANDER & LALLY LLP

Two Annabel Lane, Suite 200
Post Office Box 10
San Ramon, California 94583-0010
Telephone: (925) 866-1000 ● Fax: (925) 830-8787

---

*The information contained in this facsimile is legally privileged and confidential information intended only for the use of the individual or entity named below. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the address above via the United States Postal Service. Thank you.*

---

## Fax Cover Page

To: Jim Knopf                     Fax No. (888) 808-5001
    Mani Subramanian              Phone No. (650) 627-9500

From: Enoch Wang                  Date: 3-26-04

                                  Client: St. Paul

Re: Signature page

Number of pages to follow (excluding this page): ____1____

---

Comments:

F:\LIT\Wang, E\Fax Form.wpd

# EXHIBIT A to First Amended Complaint

03/09/2004 13:50 FAX 408 882 2293     SCCSC D17C     ☒002/008

M D# 0224     UCS

FREDERICK S. FIELDS (# 36354)
SUSAN K. JAMISON (# 131867)
GAIL G. QUAN (#203705)
COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200
San Francisco, California 94111
Telephone: (415) 391-4800
Facsimile: (415) 989-1663

Attorneys for Defendant
ARTHUR ANDERSEN LLP

**F I L E D**

MAR - 4 2004

KIRI TORRE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
ROWENA A. WALKER

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

Case No. 1-98-CV-771638

| | |
|---|---|
| QAD INC., a Delaware corporation, and QAD JAPAN K.K., a Japanese corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MANI SUBRAMANIAN, an individual, VEDATECH INCORPORATED, a Washington corporation, and DOES 1 through 50, inclusive,<br><br>Defendants | Case No. CV 784685<br><br>Date Action Filed: September 17, 1999<br><br>**STIPULATION AND ORDER REGARDING MEDIATION**<br><br>Date:   March 13, 2004<br>Time:   9:30 a.m. |
| VEDATECH K.K., a Japanese corporation; MANI SUBRAMANIAN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>QAD Inc., a Delaware corporation; QAD JAPAN Inc., a Delaware corporation; et al.,<br><br>Defendants. | Case No. CV 784685<br>(Consolidated with Case No. CV 771638) |
| AND RELATED CROSS-COMPLAINT. | |

COBLENTZ, PATCH, DUFFY & BASS, LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CA 94111-4213
(415) 391-4800 • FAX (415) 989-1663

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08696.004.0230.5

1
STIPULATION AND ORDER REGARDING MEDIATION

1    By and through their respective counsel, and by and through Mani Subramanian acting in

2  pro per, the parties, Mani Subramanian, Vedatech Inc. and Vedatech KK. (collectively,

3  "Vedatech"), Q*D, Inc., QAD Japan K.K., and QAD Japan, Inc. (collectively "QAD"), Lai Foon

4  Lee, John Doordan, Arthur Andersen LLP ("Andersen"), and St. Paul Fire and Marine Insurance

5  Company ("St. Paul")) hereby stipulate and agree as follows, and stipulate and agree that the

6  court may order them as follows:

7      (1)    The parties' mediation will occur on March 12, 2004, at 9:30 a.m. at the location

8  designated by the parties' mediator, Mr Randall Wulff.

9      (2)    The following parties shall appear in person, either personally, in the case of the

10  listed individual parties, or by an authorized representative, in the case of the listed entities:

11         (a)    Mani Subramanian
12         (b)    Vedatech
13         (c)    John Doordan
           (d)    St. Paul

14      (3)    The following parties shall be represented at the mediation by counsel, and shall

15  be excused from appearing personally at the mediation, but shall provide a telephone number by

16  which she or, in the case of the entities, their authorized representatives can be reached during the

17  mediation. In the case of QAD, QAD shall make a senior executive with appropriate authority

18  available by telephone and shall make all reasonable efforts to have Karl Lopker personally

19  available by telephone as well.

20      The below-listed parties will, in use their best efforts to be accessible to the mediator and

21  their counsel by telephone from 9:30 AM Pacific Standard Time until the conclusion of the

22  mediation (which may not occur until after 5:00 p.m. Pacific Standard Time) or until released by

23  the mediator:

24         (a)    QAD
25         (b)    Andersen.
           (c)    Lai Foon Lee.

26      (4)    Each party shall be prepared to sign an agreement with the mediator at the

27  mediation, or, in the case of those parties who plan to participate by phone, shall execute and sign

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CA 94111-4213
(415) 391-4800 • FAX (415) 989-1663

08696.004.0730b

2

1   an agreement in advance of the mediation, such as the mediator may desire, which protects the

2   mediator from personal liability, defines his role, and protects communications made to him from

3   compelled disclosure, as is customary.  (5)   The parties shall abide by the usual, ordinary, and

4   customary confidentiality rules governing mediations.  Specifically, no aspect of the mediation

5   shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding,

6   including but not limited to:

7           (a)    Views expressed or suggestions made by a party with respect to a possible

8   settlement of the dispute;

9           (b)    Admissions made in the course of the mediation proceedings; and

10          (c)    Proposals made or views expressed by the mediator or the response of any

11  party.

12          This Order does not apply to any executed settlement agreement.

13          California Evidence Code sections 1115 through 1128 shall apply to this mediation and

14  their provisions are incorporated by this reference in this Order, including specifically, but

15  without limitation:

16          Section 1119:

17          (a)    No evidence of anything said or any admission made for the purpose of, in

18  the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to

19  discovery, and disclosure of the evidence shall not be compelled, in any arbitration,

20  administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to

21  law, testimony can be compelled to be given;

22          (b)    No writing, as defined in Section 250, that is prepared for the purpose of, in

23  the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to

24  discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative

25  adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony

26  can be compelled to be given.

27

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CA 94111-4213
(415) 391-4800 • FAX (415) 989-1663

08696.004.0230.5

3

(c)    All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential.

Section 1127: If a person subpoenas or otherwise seeks to compel a mediator to testify or produce a writing, as defined in Section 250, and the court or other adjudicative body determines that the testimony or writing is inadmissible under this chapter, or protected from disclosure under this chapter, the court or adjudicative body making the determination shall award reasonable attorney's fees and costs to the mediator against the person seeking the testimony or writing.

(6)    Mediation briefs, with the exception of any "confidential/for mediator's eyes only" portion thereof, will be provided to the mediator and exchanged no later than March 8, 2004.

(7)    The mediator's fee shall be paid in equal parts by St. Paul and QAD. If extraordinary fees result from unanticipated events requiring the mediator's attention, any party may approach the court and request that a different allocation be ordered.

(8)    The mediator shall enjoy the discretion to modify any term hereof upon stipulation of the parties without further intervention from the court. The mediator may, in addition, direct a party to use its best efforts to have an additional representative available by telephone if he deems such a direction necessary for the success of the mediation, without stipulation of the parties and without further order from this court. The parties shall use their best efforts to comply with any such direction.

(9)    This Order shall constitute the basis for the mediation and shall supersede any prior conflicting orders relating to the mediation.

COBLENTZ, PATCH, DUFFY & BASS, LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CA 94111-4213
(415) 391-4800 • FAX (415) 989-1663

08696.004.0230.b

4

STIPULATION AND ORDER REGARDING MEDIATION

1   SO STIPULATED.

2

3

Dated: February ___, 2004          GCA LAW PARTNERS

4

5   _____
    William Connell
6   Attorneys for QAD Inc., QAD Japan K.K., QAD Japan
    Inc., Lai Foon Lee, and John Doordan
7

8   Dated: March 4, 2004             COBLENTZ, PATCH, DUFFY & BASS, LLP

9

10

11  _____
    Frederick S. Fields
12  Attorneys for Andersen

13

14  Dated: February ___, 2004          LAW OFFICES OF JAMES S. KNOPF

15  _____
    James S. Knopf
16  Attorneys for Vedatech Inc., and Vedatech K.K.

17

18  Dated: February ___, 2004          MANI SUBRAMANIAN

19  _____
    Mani Subramanian (pro per)

20

21  Dated: March 4, 2004             GREENAN, PEFFER, SALLANDER & LALLY LLP

22  _____

23

24  _____
    James Greenan
    Attorneys for St. Paul

25

26

27

28

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CA 94111-4213
(415) 391-4800 • FAX (415) 989-1663
COBLENTZ, PATCH, DUFFY & BASS, LLP

03696.004.0230.b

STIPULATION AND ORDER REGARDING MEDIATION

03/09/2004 13:51 FAX 408 882 2293          SCCSC D17C                          ☒007/008

1    SO STIPULATED.

2

3    Dated: February 27, 2004

4                                          GCA LAW PARTNERS

5                                          _____
                                           William Connell
6                                          Attorneys for QAD Inc., QAD Japan K.K., QAD Japan
                                           Inc., Lai Foon Lee, and John Doordan
7

8    Dated: February ___, 2004

9                                          COBLENTZ, PATCH, DUFFY & BASS, LLP

10

11                                         _____
                                           Frederick S. Fields
12                                         Attorneys for Andersen

13   Dated: February ___, 2004

14                                         LAW OFFICES OF JAMES S. KNOPF

15                                         _____
                                           James S. Knopf
16                                         Attorneys for Vedatech Inc., and Vedatech K.K.

17   Dated: February ___, 2004

18                                         MANI SUBRAMANIAN

19                                         _____
                                           Mani Subramanian (*pro per*)
20

21   Dated: February ___, 2004            GREENAN, PEFFER, SALL ANDER & LALLY LLP

22   _____

23

24                                         _____
                                           James Greenan
25                                         Attorneys for St. Paul

26

27

28

08695.004.0230.b

5

STIPULATION AND ORDER REGARDING MEDIATION

03/09/2004 13:51 FAX 408 882 2293          SCCSC D17C                                   ☒008/008

UPON STIPULATION OF THE PARTIES, IT IS SO ORDERED.

Dated: ~~February:~~ March 4, 2004

The Honorable Jack Komar
JUDGE OF THE SUPERIOR COURT

COBLENTZ, PATCH, DUFFY & BASS, LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CA 94111-4213
(415) 391-4800 • FAX (415) 989-1663

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

03696.004.0230.b

6

STIPULATION AND ORDER REGARDING MEDIATION




Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
95 Seventh Street
Post Office Box 193939
San Francisco, California 94119-3939

Cathy A. Catterson
Clerk of Court

(415) 355-8000

December 11, 2007

USDC, San Francisco
Northern District of California (San Francisco)
Federal Building
P.O. Box 36060
San Francisco, CA 94102

| No. | Title | Agency/D.C. No. |
|---|---|---|
| 05-16255 | St. Paul Fire & M. v. Vedatech Int'l | CV-04-01403-VRW |
| 05-16261 | St. Paul Fire & M. v. Vedatech Int'l | CV-04-01818-VRW |
| 05-16405 | Vedatech, Inc. v. St. Paul Fire & Mari | CV-04-01249-VRW |

Dear Clerk:

The following document in the above listed causes are being sent to you under cover of this letter.

• *Certified copy of the Decree of the Court*

The record on appeal will follow under separate cover. Please acknowledge receipt on the enclosed copy of this letter.

Very truly yours,

Cathy A. Catterson
Clerk of Court

By: Gerald Rosen
Deputy Clerk

Enclosure(s)
cc: All Counsel

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

ST. PAUL FIRE & MARINE
INSURANCE COMPANY; et al.,

       Plaintiffs - Appellees,

    v.

VEDATECH INTERNATIONAL INC.; et
al.,

       Defendants - Appellants.

No.  05-16255
D.C. No.  CV-04-01403-VRW

**JUDGMENT**

---

ST. PAUL FIRE & MARINE
INSURANCE COMPANY; et al.,

       Plaintiffs - Appellees,

    v.

VEDATECH INTERNATIONAL INC.; et
al.,

       Defendants - Appellants.

No.  05-16261
D.C. No.  CV-04-01818-VRW

**JUDGMENT**

---

VEDATECH, INC., a Washington State
Corporation; et al.,

       Plaintiffs - Appellants,

    v.

ST. PAUL FIRE & MARINE

No.  05-16405
D.C. No.  CV-04-01249-VRW

**JUDGMENT**

INSURANCE; et al.,

       Defendants - Appellees.

    Appeal from the United States District Court for the Northern District of California (San Francisco).

    This cause came on to be heard on the Transcript of the Record from the United States District Court for the Northern District of California (San Francisco) and was duly submitted.

    On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 07/19/07