1 | James S. Greenan (SBN 53648)
jgreenan@gpsllp.com
2 | Nelson Hsieh (SBN 177128)
nhsieh@gpsllp.com
3 | Yen Chau (SBN 221087)
ychau@gpsllp.com
4 | GREENAN, PEFFER, SALLANDER & LALLY LLP
Post Office Box 10
5 | 6111 Bollinger Canyon Road, Suite 500
San Ramon, California 94583
6 | Telephone: (925) 866-1000
Facsimile: (925) 830-8787
7
8 | Attorneys for Defendants ST. PAUL FIRE &
MARINE INSURANCE CO. and
9 | GREENAN, PEFFER, SALLANDER &
LALLY LLP

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANI SUBRAMANIAN, as an individual and citizen of Washington, and as a derivative action plaintiff,<br><br>Plaintiff,<br><br>vs.<br><br>ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota Corporation, and QAD, INC., a Delaware Corporation and principal place of business in California, and ARTHUR ANDERSON LLP, a limited liability partnership headquartered in Chicago, Illinois, and ANDERSEN WORLDWIDE SC, a Societe Cooperative headquartered in Geneva, Switzerland, and JOHN DOORDAN, an individual and citizen of California, and LAIFOON LEE, an individual and Citizen of California, and ROLAND DESILETS, an individual and citizen of new jersey, and WILLIAM D. CONNELL, an individual and citizen of California, and GREENAN PEFFER, SALLANDER AND LALLY LLP, a limited liability partnership headquartered in California, and RANDALL WULFF, an Individual, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. C08-1426 VRW<br><br>**ST. PAUL'S NOTICE OF MOTION AND MOTION, MEMORANDUM OF POINTS AND AUTHORITIES TO DECLARE PLAINTIFF MANI SUBRAMANIAN A VEXATIOUS LITIGANT AND FOR A PRE-FILING ORDER PURSUANT TO 28 USC SECTION 1651**<br><br>Date:  October 9, 2008<br>Time:  2:30 p.m.<br>Dept.:  Courtroom 6<br>The Honorable Vaughn R. Walker |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF ISSUES ........................................................................................................... 3

STATEMENT OF FACTS ............................................................................................................ 3
   1.   Related Cases Previously Before This Court ................................................................. 3
   2.   The First Three Related Actions Filed .......................................................................... 4
   3.   The Settlement Agreement ............................................................................................ 5
   4.   The Fourth Action to Enjoin The Settlement Agreement ............................................. 5
   5.   The Removal Rampage .................................................................................................. 6
   6.   The Dismissal, With Prejudice, of the Fourth Action Is Affirmed by the Ninth Circuit .... 6
   7.   The Awards of Attorneys' Fees and Sanctions Against Vedatech, Subramanian and Gonzaga Totaling $49,322 and Admonitions of Further Sanctions .......................................... 6
   8.   The Claims For Relief In The Instant Action Are The Same Claims That Were Dismissed In The Fourth Action ........................................................................................................ 7

POINTS AND AUTHORITIES .................................................................................................. 10
   1.   Subramanian Should Be Declared a Vexatious Litigant ............................................... 10
   2.   The Instant Action Is Barred By The Doctrines of *Res Judicata* and Claims Preclusion, and Also Impermissibly Splits Causes of Action .............................................................. 12
   3.   The Purported New Evidence of Fraud is Insufficient to Justify Setting Aside This Court's Judgment and Order ................................................................................................... 14

CONCLUSION ............................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Adams v. California Dept. of Health Services,* 487 F.3d 684. 689 (9th Cir. 2007) ........................ 13

*Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir., Cal 2002) ..................... 12

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798 (Cal. 2002) ................................ 15

*Florida Evergreen Foliage v. E.I. Du Pont De Nemours Co.,* 135 F.Supp.2d 1271 (Fl. 2001) ... 15

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 244 (1944) ................................. 15

*Hurvitz v. St. Paul* .......................................................................................................................... 9

*Johns v. Town of Los Gatos*, 834 F.Supp. 1230 (N.D. Cal. 1993) ................................................ 10

*Mastini v. American Tel. & Tel. Co.,* 369 F.2d 378 (NY 1966), certiorari denied 87 S.Ct. 2055
   (1967) ........................................................................................................................................ 16

*New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) ................................................................... 12

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979) .......................................................... 12

*QAD Inc. and QAD Japan K.K. v. Mani Subramanian, et al.* ..................................................... 4, 5

*Single Chip Systems Corp. v. Intermec IP Corp,* .495 F.Supp.2d 1052, 1058 (S.D. Cal. 2007) .. 13

*United States v. Beggerly,* 524 U.S. 38, 118 (1998) ..................................................................... 15

*Vedatech, Inc. et al. v. St. Paul Fire & Marine Insurance Co, et al.,* Case No. 04-1249 VRW .... 5

*Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir.1992) ..................................................... 12

**Statutes**

28 U.S.C Section 1651 ................................................................................................................ 1, 2

28 U.S.C. § 1654 ............................................................................................................................ 9

28 U.S.C.A. §1651 ....................................................................................................................... 10

FRCP Rule 60(b) ............................................................................................................................ 2

FRCP Rule 12(b) ............................................................................................................................ 2

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 9, 2008 at 2:30 p.m. in Courtroom 6 of the above entitled court, Defendant St. Paul Fire & Marine ("St. Paul) will hereby move the Court for an Order declaring plaintiff Mani Subramanian ("Subramanian") a vexatious litigant and for a pre-filing Order pursuant to 28 United States Code Section 1651.

This Motion to Declare Subramanian a vexatious litigant and for a pre-filing order requiring Subramanian to obtain Court approval before filing any future action or motion related to the settlement agreement of September 2004 is brought on the grounds that Subramanian has continually and repeatedly filed meritless and frivolous motions and pursuant to 28 U.S.C Section 1651.

This motion is based on the accompanying Memorandum of Points and Authorities; the accompanying request for judicial notice; and such other matters as may be presented for the Court's consideration.

## INTRODUCTION

With astounding disregard for this Court's previous admonitions and warnings of sanctions at $1,000 per page of each further frivolous filing – plaintiff Mani Subramanian ("Subramanian") has filed yet another meritless action from the same nucleus of facts that gave rise to four previous actions, four petitions for removal, four remands and the dismissal of one action (Case No. 04-1249 VRW), which was affirmed on appeal. Once again Subramanian has filed another baseless pleading and has frivolously and needlessly multiplied the proceedings. For reasons set forth in this motion, a pre-filing order is necessary to protect the defendants and this Court from Subramanian's continuous attempts to re-litigate these issues.

Subramanian, under the guise of righting fraud upon the Court, seeks relief from a Final Judgment and Order that he previously appealed and lost on the merits in Case No. 04-1249 and related Cases Nos. 04-1403 and 04-1818. In this newest action, Subramanian reasserts the same claims for relief he brought before, including fraud, conspiracy to commit fraud, and unfair competition. This time however, Subramanian claims fraud upon the Court whereas previously

he claimed fraud was had upon him. Additionally, this time he also adds claims of civil RICO violations and violation of his constitutional rights against defendants (an insurance company, a mediator, a law firm, and various individuals). Notwithstanding the assertion of these new claims, it is clear that the purpose of his newest action is to re-litigate the previously dismissed action (Case No. 04-1249 VRW).

These claims for relief arise from the same nucleus of facts that gave rise to his previous suit.[1] Consequently, the action is completely barred by res judicata and because it improperly splits causes of action.

Furthermore, Subramanian's first claim for relief, to set aside the Judgment and Order, is defective on multiple fronts. Preliminarily, Subramanian should have filed a motion under FRCP Rule 60(b), rather than this new action. Notwithstanding the manner in which the alleged fraud upon the Court is raised, the claim for relief fails because the facts as alleged by Subramanian cannot reasonably state a claim for relief. Subramanian establishes *none* of the elements of fraud. Further, even assuming *arguendo* that there was attempted fraud upon the Court, Subramanian fails to show how the "fraud" was of any material consequence to the Judgment and Order. In fact, none of the alleged fraudulent "misrepresentations" to the Court formed any basis of the Order and Judgment that Subramanian now seeks to set aside. In short, procedurally and substantively, there is no basis upon which this action may be maintained. The filing of this instant action is another frivolous action by Subramanian to evade the rulings he lost.[2]

---

[1] Three of the suits were state court actions, all removed by Subramanian and all remanded back to state court, where they are currently pending. The fourth suit, of course, is the federal action that was dismissed by this Court after all parties brought motions under Federal Rules of Civil Procedure ("FRCP") Rule 12(b). These actions are related by a disputed Settlement Agreement. *See Statement of Facts.*

[2] In addition to this action, Subramanian also challenged the enforceability of the Judgment and Order in his Motion for Reconsideration and Stay *(Request for Judicial Notice "RJN", Exhibit 1),* and a Motion for Administrative Relief from the Judgment *(RJN, Exhibit 2)* filed June 5, 2008. After these motions were denied by the Court *(Order, RJN, Exhibit 3)* on July 17, 2008, Subramanian filed a Motion for Clarification, Reconsideration and Further Request to Stay the Order on July 28, 2008. *Motion for Clarification, RJN Exhibit 4.* Without doubt, Subramanian will continue to abusively file baseless motions after motions and actions after actions unless

1    To prevent waste of this Court's resources, as well as the resources of the parties, St. Paul
2    respectfully asks the Court to declare Subramanian a vexatious litigant and require him to obtain
3    leave of the Court to file any future action or motion related to the Settlement Agreement at issue
4    in the consolidated actions. This pre-filing order is proper given Subramanian's history of filing
5    frivolous motions and actions, where monetary sanctions fail to deter plaintiff[3] and where the
6    order requested is narrowly drawn.

## STATEMENT OF ISSUES

1.    Should Subramanian be declared a vexatious litigant and required to obtain leave of the Court to file any future action or motion related to the Settlement Agreement at issue in this action and related Actions Nos. 04-1249 VRW, 04-1818 VRW and 04-1403 VRW?

## STATEMENT OF FACTS

**1.    Related Cases Previously Before This Court**

This Court has had previous opportunities to become acquainted with the saga that ensued after QAD Inc. and QAD Japan KK first filed suit against Vedatech Inc., Vedatech KK and Mani Subramanian in state court. *See* Order of Chief Justice Walker in *Vedatech, Inc. et al v. St. Paul Fire & Marine Ins. Co. et al*, 2005 WL 1513130 (N.D. Cal. 2005) ("Order"), *RJN,*

---

checked by this Court.

[3] To date St. Paul has not yet received the monetary sanctions due from Subramanian as ordered by this Court. Subramanian's history of engaging in inappropriate conduct and then refusing to pay resulting sanctions is evident in Subramanian's other cases. Recent developments in an unrelated case litigated by Subramanian in England and in California (the "*Crystal Decisions* litigation") further demonstrate that monetary considerations will not stop Subramanian's abuse of the judicial system. On May 9, 2007, an Approved Judgment and Order for Judgment and Permanent Anti-suit Injunction were issued by the English court in the *Crystal Decisions* litigation against Subramanian which, among other things, ordered Subramanian to pay costs estimated to be U.S. $1.37 million. *See RJN, Exhibit 5, [at Exhibits A and B of the Declaration of Andrew Jones in Support of Dismissal].* However, neither the large sum of this assessment against Subramanian nor the finality of the judgments (see the Court of Appeal's subsequent June 10, 2008 Order denying Subramanian permission to further appeal or re-open the matter (*RJN, Exhibit 5 at Exhibit C of the Declaration of Andrew Jones in Support of Dismissal)),* has deterred Subramanian from blithely making the incredible assertion, in the California version of the litigation, that "substantive English proceedings are still ongoing." *(See, RJN, Exhibit 6, at 1:16-18).*

*Exhibit 7*, and Judgment dated December 2006, filed in Related Actions Nos. 04-1249 VRW, 04-1818 VRW and 04-1403 VRW, *RJN, Exhibit 8.*

**2.      The First Three Related Actions Filed**

In January 1998, QAD and QAD Japan KK ("QAD KK") filed suit in state court against Vedatech Inc., Vedatech KK (collectively "Vedatech") and Vedatech's owner, Mani Subramanian for contract and tort claims arising out of contractual relations between QAD on one hand and Subramanian on the other to develop computer software in Japan (the "First Action"). These claims were premised on state law. *See* Complaint, *QAD Inc. and QAD Japan K.K. v. Mani Subramanian, et al.,* Santa Clara County Superior Court Case No. CV-771638, *RJN, Exhibit 9.*

Instead of filing a counter-claim, in September 1999, Subramanian and Vedatech filed their own action (the "Second Action") against QAD, QAD KK, Arthur Anderson LLP, Foon Lee and John Doordan for contractual and tort claims arising from Vedatech and Subramanian's agreement to develop software for QAD. This action was filed in state court, and was eventually consolidated with the First Action, after QAD brought counterclaims in the Second Action, duplicating their affirmative allegations in the First Action. *See* Complaint, *Vedatech KK et al. v. QAD, Inc. et al.,* Case No. CV-784685, filed in Santa Clara Superior Court, consolidated with Case No. CV-771638, *RJN, Exhibit 10*.

In January 1999, Vedatech tendered its defense of the consolidated First and Second Actions to St. Paul, its general liability insurer from 1997 to 2000. St. Paul agreed to defend Subramanian and Vedatech in the consolidated action, subject to a reservation of rights. St. Paul eventually filed a declaratory relief action (hereafter the "Third Action"), seeking a determination of its duty to defend and indemnify Subramanian and Vedatech in the entire consolidated actions after St. Paul became aware that the events at issue occurred principally in Japan (whereas St. Paul's policy provided only domestic coverage). Vedatech and Subramanian counterclaimed in the Third Action against St. Paul, bringing causes of action for unfair competition in denying benefits, breach of contract, bad faith and sought a judicial declaration that St. Paul had an obligation to fund the prosecution of Vedatech and Subramanian's

*affirmative claims* in the Second Action. *See* Complaint for Declaratory Relief and Cross-Complaint, *St. Paul Fire & Marine Insurance Co v. Vedatech International, Inc. et al.,* Case No. CV-805197, *RJN, Exhibit 11.*

### 3. The Settlement Agreement

In January 2004, in the consolidated actions, the parties were ordered to attend mediation by Santa Clara Superior Court Judge Jack Komar. With Vedatech and Subramanian's agreement, Judge Komar ordered the parties to attend mediation before mediator Randall Wulff. The parties, including St. Paul as Vedatech and Subramanian's insurer, attended. The mediation commenced in the morning, and Vedatech and Subramanian inexplicably decided to leave the mediation at 4:00 p.m. St. Paul and QAD elected to continue with the mediation and were able to reach a settlement of the claims against Vedatech and Subramanian in the First Action and QAD's cross-complaint against Vedatech and Subramanian in the Second Action. *See* Complaint, *Vedatech, Inc. et al. v. St. Paul Fire & Marine Insurance Co, et al.,* Case No. 04-1249 VRW, *RJN, Exhibit 12* at ¶¶21-22. Under the terms of the settlement agreement, St. Paul agreed to pay $500,000 to QAD in exchange for a release and dismissal of QAD's claims against Vedatech and Subramanian in the First Action and QAD's counterclaims against them in the Second Action. The settlement agreement also specifically provided that Vedatech and Subramanian could continue to litigate their affirmative claims against QAD in the Second Action. The settlement agreement did not have any bearing on the Third Action. *See* Complaint, *RJN, Exhibit 1 at Attachement A to Complaint*.

### 4. The Fourth Action to Enjoin The Settlement Agreement

In March 2004, Vedatech and Subramanian filed yet another action in federal court, pleading seven claims for relief against St. Paul, QAD, and Wulff (hereinafter the "Fourth Action"). *See* Complaint, *Vedatech, Inc. et al. v. St. Paul Fire & Marine Insurance Co, et al.,* Case No. 04-1249 VRW, *RJN, Exhibit 12*. Vedatech and Subramanian sought to enjoin the settlement, based upon the alleged fraud of defendants into supposedly "tricking" Vedatech and Subramanian into consenting and participating in the mediation. The parties were alleged to have "colluded to settle" the consolidated actions to the detriment of Vedatech and Subramanian

because the terms were not in the best interests of Vedatech and Subramanian. The settlement agreement was purportedly not "favorable" because it weakened Vedatech's and Subramanian's legal representation of the affirmative claims in the Second Action. *RJN, Exhibit 12 at \*3.* Vedatech and Subramanian brought causes of action for 1) declaratory relief, 2) injunctive relief, 3) fraud, 4) constructive fraud, 5) negligent misrepresentation, 6) insurance bad faith, and 7) unfair competition. *RJN, Exhibit 12.*

## 5. The Removal Rampage

Vedatech and Subramanian also began what this Court termed as a "removal rampage." Following the mediation and settlement agreement, Vedatech and Subramanian sought to have all three of the state court actions removed to federal court. In the period of three months between March and May 2004, Vedatech and Subramanian filed four petitions for removal. The fourth petition for removal sought to remove the Third Action, which had *already* been removed. All four removals were eventually remanded, including the two petitions for removal of the Third Action. *See Order, RJN, Exhibit 7, at \*7-8.*

## 6. The Dismissal, With Prejudice, of the Fourth Action Is Affirmed by the Ninth Circuit

As to the causes of action asserted against Wulff, St. Paul and QAD, this Court dismissed all but one claim.[4] Vedatech and Subramanian appealed this Court's Order to the Ninth Circuit. The Ninth Circuit dismissed the appeal, affirming entirely this Court's Order of June 2005. *See* Mandate of Ninth Circuit Court in No. 05-16255 (D.C. No. CV-04-1403 VRW), filed July 19, 2007, *RJN, Exhibit 13.*

## 7. The Awards of Attorneys' Fees and Sanctions Against Vedatech, Subramanian and Gonzaga Totaling $49,322 and Admonitions of Further Sanctions

With respect to the Court's granting of its motion to remand the Third Action, St. Paul requested reasonable attorneys' fees from Vedatech and Subramanian, pursuant to 28 USC

---

[4] Only the insurance bad faith cause of action was stayed pending the resolution in state court of the same issue. This Court ordered that "To be clear, Vedatech and Subramanian are *not* to file any other memoranda relating to this cause of action save [a status report within 30 days of disposition of the insurance bad faith claim in state court]." *Order, RJN, Exhibit 5, at \*23.*

Greenan, Peffer, Sallander & Lally LLP

section 1447(c). St. Paul's attorneys' fees request was fully granted in the amount of $20,738.75. *Judgment, RJN, Exhibit 8*. The Court also ordered that Vedatech and Subramanian pay defendant Randall Wulff's attorney's fees of $22,584.

St. Paul also requested Rule 11 sanctions for the frivolous removals filed by Vedatech and Subramanian, *pro se*. This Court granted Rule 11 sanctions against Christina Gonzaga, Vedatech's counsel in the amount of $5,000, and against Subramanian, *pro se*, in the amount of $1,000. *Judgment, RJN, Exhibit 8*. Most notably this court stated:

> [T]he court SANCTIONS Subramanian $1,000 pursuant to Rule 11. Subramanian is admonished, however, that the court will not hesitate to impose much harsher Rule 11 sanctions should he continue to engage in the conduct described in this order. If Subramanian files in this court (1) another frivolous petition for removal, (2) any frivolous motions in these cases, **(3) a new frivolous cause of action or (4) any other filing worthy of Rule 11 sanctions, the court will impose sanctions at $1,000 per page of each filing.**

*Order, RJN, Exhibit 8, at \*11*. [emphasis added].

The Order of this Court, which was affirmed by the Ninth Circuit, was entered as a Judgment on December 27, 2007. *Judgment, RJN, Exhibit 8*. As of the date of this motion, Vedatech and Subramanian have not complied with the Judgment. Consequently, St. Paul and Wulff moved for an order of contempt and a debtor's examination of Vedatech and Subramanian. On July 17, 2008, the Court granted St. Paul and Wulff's motions, ordering Subramanian to satisfy the outstanding judgments by July 31, 2008, or to show cause why he should not be held in contempt. The Court also referred the matter to a magistrate judge for a debtor's examination of Subramanian. *See RJN, Exhibit 3*.

**8.    The Claims For Relief In The Instant Action Are The Same Claims That Were Dismissed In The Fourth Action**

Save for his new allegations of fraud upon the Court, Subramanian's new action is based upon the exact same nucleus of facts that formed the basis of his previous action: that QAD, on one hand, and Vedatech and Subramanian, on the other, had a contractual relationship that formed the basis of the first and second causes of action (consolidated);[5] that St. Paul accepted

---

[5] Complaint at ¶¶29-31, 60, and 68-70.

1  the tender of defense of Vedatech and Subramanian under a reservation of rights;[6] that St. Paul
2  filed a declaratory relief action;[7] the events at the case management conference lead up to the
3  order to attend mediation;[8] the parties participated in mediation;[9] the resulting settlement;[10] and
4  he requested that the Court set aside the settlement.[11]  The only factual difference in his new
5  action is that Subramanian now alleges that St. Paul engaged in fraud upon the Court by failing
6  to inform the Court that it has been QAD's general liability insurer since 2001.[12]

> Neither ST. PAUL nor QAD nor WULFF informed the district court of the fact that ST. PAUL was QAD's insurers from April 2001, and were QAD's insurers at the time of the 'mediation' and indeed had renewed their insurance agreement in August 2004, just a month before the oral hearing on September 16, 2004 in the district court.

Complaint at ¶150.  Subramanian alleges that he learned of St. Paul's insurance of QAD in lead up of a settlement conference in a state court action in August 2006.  *See* Complaint, at ¶ 163.

Subramanian also alleges that St. Paul committed fraud by falsely characterizing its "authority" to enter into the settlement.[13]

> ST. PAUL, QAD and CONNEL falsely characterized their "authority 'to settle the claims settled by the 'settlement agreement' both to the district court and to the Ninth Circuit.  First, the 'agreement' itself, in reserving ST. PAUL's rights to pursue the ST. PAUL-DECL-ACTION was reserving the right to prove that the underlying insurance agreements are void and/or voidable for fraud [claim for rescission].  As detailed further in the paragraphs under the cause of action for 'fraud' below, ST. PAUL not only did not have authority to 'settle' without

---

[6] Complaint at ¶¶71-72.
[7] Complaint at ¶98.
[8] Complaint at ¶¶115-119.
[9] Complaint at ¶¶121-122.
[10] Complaint at ¶138-144.
[11] Complaint at ¶¶138-145.
[12] Previously, Subramanian sought to set aside the Settlement Agreement as having been obtained by the defendants by fraud.  Subramanian alleged that he was tricked into consenting to mediation because St. Paul did not disclose that Wulff had previously conducted mediations for St. Paul.  In this Complaint, Subramanian admits and incorporates court testimony of James Greenan, counsel for St. Paul in the January 2004 Case Management Conference leading up to the court ordered mediation: "I also saw the name of some of the papers of a very skilled mediator: Randy [WULFF] suggested.  I have had experience with [WULFF], and I have confidence in him.  And I would make a suggestion that we court order parties participate in mediation and find the first available date for [WULFF], if he was acceptable to all parties."
[13] As noted in the Order, "the language of the insurance policy stated, in pertinent part, that 'St. Paul may at [its] discretion, investigate any 'occurrence' and settle any claim or suit that may result.'"  *Order, RJN, Exhibit 7 at Section C, p. 1.*

>permission from the Vedatech parties, [especially in light of its fraudulent withholding of its status as insurers for QAD], the statement by St. Paul, QAD and CONNEL repeatedly to the Court that all they did was to "settle' is a serious misrepresentation which attempted to hide the fundamental problem with the 'agreement'- a term of the agreement states that ST. PAUL does not have the authority [or reserves its rights to prove that it does not so have authority] to enter into such an agreement.

Complaint at ¶170.

Subramanian also attacks the legal arguments of St. Paul in its briefs to both this Court and the Ninth Circuit Court, alleging that the advocacy of the St. Paul amounted to fraud.

>Specifically the misrepresentation extends to the presentation by both QAD and St. Paul of the *Hurvitz v. St. Paul* case in support of the purported right to so 'settle' the matter, whereas that case would be even more inapplicable in a situation where the 'insurer' has a serious conflict of interest in representing both sides of the dispute.

Complaint at ¶152. Subramanian also cited as an example of further fraud upon the Court:

>In oral argument and written submissions both in the district court, and again before the Court of Appeals in the Mediation case, WULFF through his attorneys at FBM (Mr. Young), **attempted to corruptly influence the court by denigrating SUBRAMANIAN's status as a *pro* se litigant** [putting aside the fact that the continuing inability to afford qualify **[sic]** legal support is directly because of the various activities of these various defendants as detailed herein], in a derogatory and corrupt way, and attempted to stigmatize SUBRAMANIAN and **create prejudice in the mind of the court by falsely characterizing the legal disputes as one between SUBRAMANIAN in his *pro se* capacity and Judges and attorneys and the legal profession in general on the other side.** WULFF and his attorneys mocked the statutory right of SUBRAMANIAN to conduct his own case under *28 U.S.C. § 1654* as somehow being an improper means of seeking justice and thus **corruptly diverted attention away from the merits of the case and diverted attention away from their extensive abuse of the judicial process, and purposefully misled the Court into making orders that disregarded the legal issues and facts underlying the dispute.**

Complaint at ¶165 (emphasis added). Otherwise, Subramanian argues that St. Paul did not have authority to enter into the settlement negotiations (the enforceability of the settlement agreement has been attacked in all four actions), and that St. Paul fraudulently misrepresented the scope of its duties as Subramanian's insurer (issues already litigated in the previous actions).

**POINTS AND AUTHORITIES**

**1.    Subramanian Should Be Declared a Vexatious Litigant**

St. Paul asks that Subramanian be required to obtain leave of the Court to file any future action in connection with enforceability of the settlement of the consolidated actions. The All Writs Act vests federal courts with the power to enjoin vexatious litigants. 28 U.S.C.A. §1651. To issue a pre-filing order the court must: 1) give plaintiff notice and opportunity to oppose the order *before it is entered*; (2) create an adequate record for review; (3) make substantive findings of frivolousness;[14] and (4) the order must be narrowly tailored. *De Long v. Hennessey,* 912 F.2d 1144, 1147 (9th Cir. 1990); s*ee also Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047 (9th Cir. 2007). While such orders are extraordinary remedies that should be sparingly used, "since fewer sanctions are available against a pro per litigant, the power to declare him vexatious becomes an important tool for the courts to manage their dockets and prevent frivolous claims." *Doran v. Vicorp Restaurants, Inc.,* 407 F.Supp.2d 1115, 1118 (2005). When appropriate, courts have utilized this authority to control their dockets and protect defendants. *See DeNardo v. Murphy*, 781 F.2d 1345 (9th Cir. 1986) (in view of plaintiff's three suits against the same defendants for the same underlying claim that was time barred, the district court's pre-filing order was proper); also *Futernick v. Sumpter TP*, 207 F.3d 305 (6th Cir. 2000) (District Court's pre-filing order affirmed where plaintiff filed two post-judgment motions that were denied after his complaint was dismissed).

Orders declaring parties to be vexatious litigants, requiring pre-filing review before a new action can be filed, have also been issued by the Northern District Court of California. In *Johns v. Town of Los Gatos*, 834 F.Supp. 1230 (N.D. Cal. 1993), respondents filed a motion to declare petitioner Johns a vexatious litigant. Johns filed a total of four suits against respondents based

---

[14] In order to make substantive findings of frivolousness, the court must find that a filing is both baseless and made without a reasonable and competent inquiry. Sanctions are appropriate if there is bad faith, improper motive or reckless disregard of the duty owed to the court. *New Alaska Develop. Corp. v. Guetschow,* 869 F.2d 1298 (1989). Bad faith may be found when an attorney knowingly or recklessly pursues a frivolous claim. *In re Keegan Management Co, Securities Litigation,* 78 F.3d 431, 436 (1996). Furthermore *pro se* litigants may be sanctioned under section 1927. *Wages v. Internal Revenue Service,* 973 F.2d 1230, 1235-1236 (1990).

on the same factual allegations and claims. After losing three actions, which he appealed and lost, Johns filed petitions for a writ of mandamus and petitions for re-hearing, all of which were denied. *Id.* at 1231-1232. Johns then filed the fourth action, asserting the same claims. Respondents filed a motion to have Johns declared a vexatious litigant. Respondents' motion was granted and the Court found all four *DeLong* conditions were satisfied:

> A pre-filing review will relieve the Respondents from the burden of defending themselves against claims they have litigated over and over again since 1982. At the same time, the order will preserve Petitioner's right of access to the Court should he bring forth a non-frivolous claim in the future.

*Id.* at 1232.

The circumstances and litigation history here warrant a pre-filing order as much, if not more, than the pre-filing order issued in *Johns.* As in *Johns*, there is an ample record here of numerous frivolous filings. The Court has found that Subramanian's prior action (based upon the same claims as the instant action) and his multiple removals to be frivolous and brought in bad faith, findings which were affirmed by the Court of Appeals. These actions have been extremely costly for St. Paul and the other defendants, and a waste of valuable court time. This Court previously admonished Subramanian and ordered him to pay nearly $50,000 in a combination of attorneys' fees and sanctions in the prior action. Subramanian however, has not only refused to pay these fees and sanctions as ordered by this Court, but Subramanian also ignored the Court's warning not to file further frivolous actions at the risk of hefty sanctions.

Instead, Subramanian filed this newest action to set aside the judgment and order which he had litigated extensively up to appeal. Not only is this in contradiction to the Court's admonition, but the newest action is entirely meritless (see argument below and St. Paul's simultaneously filed Motion to Dismiss). And because that was not enough, he filed not one but two motions in the resolved Fourth Action to again challenge the validity of the Settlement Agreement. When those motions were dismissed by this Court Subramanian immediately filed a motion for reconsideration of that Order. *(RJN, Exhibits 3 and 4).*

The need for a pre-filing order could not be more clear. Indeed, it is apparent that, since

he has blithely ignored previous Court orders, monetary sanctions will not serve to deter Mr. Subramanian; the only means to prevent further frivolous motions or actions is an order requiring Subramanian to obtain leave of the Court to file any future action or motion related to the Settlement Agreement.

Without doubt the newest action is nothing but an attempt to re-litigate old issues, using old arguments. The frivolousness of the instant action supports St. Paul's request for a pre-filing order and exemplifies the need to limit the number of baseless filings by Subramanian. Below, St. Paul sets forth briefly why the instant action is entirely without merit (-In conjunction to this motion for a pre-filing order, St. Paul additionally files its motion to dismiss this action in its entirety. St. Paul's Motion to Dismiss, as do the Motions to Dismiss of defendants Randall Wulff, QAD, William Connell, John Doordan, and Lai Foon Lee, set forth more fully why this action is meritless and frivolous).

**2.     The Instant Action Is Barred By The Doctrines of *Res Judicata* and Claims Preclusion, and Also Impermissibly Splits Causes of Action**

"Claim preclusion, or *res judicata*, bars 'successive litigation of the very same claim' following a final adjudication on the merits involving the same parties or their privies." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir., Cal 2002), citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001); *accord Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979) ("Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir.1992).

To ascertain whether successive causes of action are the same, the transaction test is used:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether

1         substantially the same evidence is presented in the two actions; (3) whether the
two suits involve infringement of the same right; and (4) whether the two suits
2         arise out of the same transactional nucleus of facts.

3   *Adams v. California Dept. of Health Services,* 487 F.3d 684. 689 (9th Cir. 2007). The last

4   of these criteria is the most important. *Id.*

5         The doctrine of claim splitting bars a party from subsequent litigation where the "same

6   controversy" exists. The "main purpose behind the rule preventing claim splitting is 'to protect

7   the defendant from being harassed by repetitive actions based on the same claim." *Single Chip*

8   *Systems Corp. v. Intermec IP Corp,* .495 F.Supp.2d 1052, 1058 (S.D. Cal. 2007) (internal

9   citations omitted).

10        Without doubt, this instant action arises out of the same transactional nucleus of facts as

11   the previous action, and is not only barred by *res judicata* or claims preclusion but also an

12   impermissible splitting of claims. Here the need to protect defendants from being further

13   harassed by repetitive actions based on the same claim cannot be stronger.

14        As set forth in the Complaint, the operative facts are: QAD and Vedatech and

15   Subramanian had a contractual relationship that formed the basis of the First and Second Actions

16   (consolidated); St. Paul accepted the tender of defense of Vedatech and Subramanian in the

17   consolidated action under a reservation of rights; St. Paul subsequently filed a declaratory relief

18   action to determine its obligations and duties to Vedatech and Subramanian; at a case

19   management conference, the parties were ordered to attend mediation in the consolidated action;

20   and the defendants colluded to achieve both the mediation and the settlement agreement,

21   resulting in Vedatech and Subramanian's filing of the Fourth Action to set aside the settlement.

22        The instant action also alleges that St. Paul did not have authority to enter into the

23   settlement, St. Paul fraudulently misrepresented the scope of its duties as Subramanian and

24   Vedatech's insurer, St. Paul failed to provide an adequate defense to Subramanian and Vedatech,

25   and St. Paul had the responsibility to fund the litigation of Subramanian and Vedatech's

26   *affirmative claims* in the Second Action. All of these facts formed the basis of Subramanian's

27   claims in the previous actions. Consequently, this instant action arises from the same nucleus of

28   facts as the previous suit.

1   Subramanian initiated both proceedings and Defendants defended the prior action and
2   obtained a judgment of dismissal with prejudice, and now must defend the instant action based
3   on the same nucleus of facts. Moreover, Subramanian's new claims of civil RICO and violation
4   of constitutional rights add nothing. Notwithstanding the assertion of new claims, since the
5   nucleus of facts involves the same transaction as the prior claim, the filing of the action
6   constitutes an impermissible splitting of causes of action. *Adams,* 487 F.3d 684, at 690. Thus
7   the action can not stand, and its filing is yet another continued attempt to frustrate the upheld
8   rulings.

### 3. The Purported New Evidence of Fraud is Insufficient to Justify Setting Aside This Court's Judgment and Order

Subramanian's claim for relief to set aside the Judgment and Order is defective on multiple fronts. (See Motion to Dismiss, filed contemporaneously with this motion.) First, procedurally, Subramanian should have filed a FRCP Rule 60(b) motion for relief from a judgment or order in the Fourth Action. The Judgment became final in December 2007, after Subramanian's appeal was denied by the Court of Appeals. Assuming *arguendo* that Subramanian's alleged discovery of St. Paul's insurance policies with QAD in August 2006 (Complaint, ¶ 163) amounted to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," the proper procedure was for Subramanian to file a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which would have brought the issue back before Judge Walker, who decided the Fourth Action[15]. Instead, Subramanian filed this independent action, seeking to re-litigate his case before a different judge. Subramanian's actions are an improper attempt to circumvent the

---

[15] Subramanian's attempt has been thwarted as this case has since been re-assigned to Judge Walker. Furthermore, in addition to this complaint, Plaintiff Subramanian has subsequently filed a Rule 60(b) motion for relief from the Judgment entered in the Fourth Action. Plaintiff has further filed a Motion for Correction and Clarification of the December 2007 Judgment. In essence, plaintiff filed three petitions for relief from the December 2007 Judgment subsequent to his lost appeal of that same order. The motions for relief from Judgment entered on the Fourth Action and to correct and clarify the December 2007 Judgment were consolidated with the motions for contempt and for a debtor's examination, and denied by the Court in its most recent order in this matter. *July 17, 2008 Order, RJN, Exhibit 3.*

requirements of *United States v. Beggerly,* 524 U.S. 38, 118 (1998).

In the *Beggerly* case, the United States government sued claimants and others to quiet title to land it sought for a federal park. The government and claimants entered into a settlement whereby title to the disputed land was quieted in favor of the United States in return for a payment of $208,175.87. Judgment was entered based upon the settlement. Beggerly, after judgment, found evidence the land could not have ever been owned by the government, and sought to have the judgment set aside by filing the independent action. The Supreme Court, in ruling that such action could not be had, opined:

> If relief may be obtained through an independent action in a case such as this, where the most that may be charged against the Government is a failure to furnish relevant information that would at best form the basis for a Rule 60(b)(3) motion, the strict 1-year time limit on such motions would be set at naught. Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of "injustices which, in certain instances, are deemed sufficiently gross to demand a departure" from rigid adherence to the doctrine of res judicata.

*Id.,* at 46 (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 244 (1944)). The Supreme Court concluded that the government's failure to furnish relevant information did not amount to gross injustice warranting the independent action. *See also Florida Evergreen Foliage v. E.I. Du Pont De Nemours Co.,* 135 F.Supp.2d 1271 (Fl. 2001) (due to the universal interest in finality of judgments, resort to an independent action for relief from a judgment is only permitted under unusual and exceptional circumstances). Here, as in *Beggerly*, assuming the truth of Subramanian's allegations, the failure of St. Paul to inform the Court of its insurance policies with QAD does not amount to a gross injustice, and relief through an independent action was unwarranted.

Second, the facts as alleged by Subramanian cannot reasonably state a claim for fraud.

> The elements of fraud are: (1) misrepresentation, which may be false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud, that is, to induce reliance; (4) justifiable reliance; and (5) resulting damage.

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798 (Cal. 2002).

No where does Subramanian set forth any facts constituting misrepresentation of the parties to the Court or the parties' knowledge of the falsity. No where does Subramanian allege

any facts to evidence the intent of the parties to commit fraud. Moreover, Subramanian has not shown that the Court relied upon any misrepresentations or damages which pertain to *him*.

Even assuming *arguendo* that there was fraud upon the Court, Subramanian fails to show how the "fraud" was of any material consequence to the Judgment and Order. In fact none of the alleged fraudulent "misrepresentations" to the Court formed the basis of the Order and Judgment which Subramanian seeks to set aside. These new allegations of fraud by Subramanian are nothing more than another attempt to re-litigate his case.

> A motion for relief from judgment on the ground of fraud properly was denied when the movant merely was attempting to use the motion to relitigate the merits of his patent infringement claim, and allegations of fraud were not substantiated.

*Mastini v. American Tel. & Tel. Co.,* 369 F.2d 378 (NY 1966), certiorari denied 87 S.Ct. 2055 (1967). Subramanian's new action is nothing more than an attempt to relitigate the merits of his Fourth Action. It is frivolous, meritless and needlessly multiplies the proceedings, and should be sanctioned.

## **CONCLUSION**

Subramanian's instant action should be dismissed and Subramanian should be declared a vexatious litigant because this action frivolously and needlessly multiplies proceedings in this Court. All these issues were brought and determined on their merits previously, and in some circumstances, addressed multiple times. Thus, St. Paul respectfully requests that the Court declare Subramanian a vexatious litigant and require Subramanian to obtain leave of the Court to file any future action or motion related to the Settlement Agreement.

Dated: August 4, 2008

GREENAN, PEFFER, SALLANDER & LALLY LLP

By    /s/
James S. Greenan
Attorneys for Defendants ST. PAUL FIRE & MARINE INSURANCE CO. and GREENAN PEFFER SALLANDER & LALLY, LLP