1  WILLIAM D. CONNELL, Cal. State Bar No. 89124
   bconnell@gcalaw.com
2  SALLIE KIM, Cal. State Bar No. 142781
   skim@gcalaw.com
3  GCA LAW PARTNERS LLP
   1891 Landings Drive
4  Mountain View, CA  94043
   (650) 428-3900
5  (650) 428-3901 [fax]

6  Attorneys for Defendants QAD Inc., John Doordan,
   Lai Foon Lee, and William D. Connell
7

8

9              UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  [San Francisco Division]

12

13  MANI SUBRAMANIAN, as an individual        Case No.  08-cv-1426-VRW   [ECF]
    etc.,
14
                    Plaintiff,
15
          vs.
16
    ST. PAUL FIRE AND MARINE               Date:      October 9, 2008
17  INSURANCE COMPANY, et al. (including
    QAD INC., a Delaware Corporation with   Time:      2:30 p.m.
18  principal place of business in California; JOHN
    DOORDAN, an individual and citizen of   Dept:      Courtroom 6
19  California; LAI FOON LEE, an individual and
    citizen of California; ROLAND DESILETS, an  Judge:    Hon. Vaughn R. Walker
20  individual and citizen of New Jersey; and,
    WILLIAM D. CONNELL, an individual and
21  citizen of California),

22                  Defendants.

23

24          MEMORANDUM OF POINTS AND AUTHORITIES
25             IN SUPPORT OF MOTION BY DEFENDANTS
        QAD INC., WILLIAM D. CONNELL, JOHN DOORDAN, AND LAI FOON LEE
26        TO DISMISS COMPLAINT PURSUANT TO FRCP RULE 12(b)(6)

27

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

# TABLE OF CONTENTS

Page No.

INTRODUCTION ................................................................................ 1

STATEMENT OF ISSUES .............................................................. 1

SUMMARY OF ALLEGATIONS AND CLAIMS
PERTAINING TO THE QAD-RELATED DEFENDANTS............................ 2

1.    QAD Inc. ..................................................................... 2

2.    William D. Connell ................................................... 3

3.    John Doordan ............................................................. 4

4.    Lai Foon Lee .............................................................. 5

LEGAL ARGUMENT……………………………………………….. 6

I.    THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED
      BECAUSE: (1) IT IS DUPLICATIVE LITIGATION; AND,
      (2) IT ALLEGES NO "FRAUD ON THE COURT" BY ANY
      DEFENDANT TO JUSTIFY OVERTURNING THE COURT'S
      DISMISSAL ORDER IN CASE NO. 04-01249-VRW ........................ 6

      A.    This Claim Should Be Dismissed as Duplicative Litigation...... 7

      B.    Plaintiff Has Alleged No "Fraud on the Court"
            Justifying Relief ........................................................ 7

II.   THE SECOND CAUSE OF ACTION FOR CIVIL RICO MUST
      BE DISMISSED BECAUSE: (1) IT IS BARRED BY RES
      JUDICATA; (2) IT IS BARRED BY THE STATUTE OF LIMIT-
      ATIONS; (3) IT FAILS TO STATE A CLAIM FOR RELIEF; AND,
      (4) IT IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE. ... 10

      A.    This Claim is Barred by Res Judicata as to All
            QAD-Related Defendants. ........................................... 11

      B.    This Claim is Barred by the Statute of Limitations.................... 14

      C.    The Complaint Fails to State a Claim for Civil
            RICO Violations.......................................................... 16

      D.    This Claim is Barred by the Noerr-Pennington Doctrine........... 17

III.   THE THIRD CAUSE OF ACTION FOR FRAUD MUST BE
       DISMISSED BECAUSE: (1) IT IS BARRED BY RES JUDICATA;
       AND, (2) IT FAILS TO STATE A CLAIM FOR RELIEF. .................  19

       A.   This Claim is Barred by Res Judicata. .......................  20

       B.   The Complaint Fails to State A Claim for Fraud ......................  21

IV.    THE FOURTH CAUSE OF ACTION FOR UNFAIR
       COMPETITION MUST BE DISMISSED BECAUSE: (1) IT IS
       BARRED BY RES JUDICATA; (2) IT IS BARRED BY THE
       FOUR-YEAR STATUTE OF LIMTATIONS; AND, (3) IT FAILS
       TO STATE A CLAIM FOR RELIEF. ...................................  22

       A.   This Claim is Barred by Res Judicata. .......................  23

       B.   This Claim is Barred by the Statute of Limitations...................  23

       C.   The Complaint Fails to State A Claim for
            Unfair Competition ...................................................  23

V.     THE FIFTH CAUSE OF ACTION MUST BE DISMISSED
       BECAUSE: (1) IT IS BARRED BY RES JUDICATA; (2) IT IS
       UNTIMELY UNDER THE APPLICABLE TWO-YEAR STATUTE
       OF LIMITATIONS; AND, (3) IT FAILS TO STATE A CLAIM
       FOR RELIEF..............................................................  24

       A.   This Claim is Barred by Res Judicata. .......................  24

       B.   This Claim is Barred by the Statute of Limitations...................  24

       C.   The Complaint Fails to State A Claim for
            Violation of Civil Rights ...........................................  25

CONCLUSION ...............................................................  26

1

## TABLE OF AUTHORITIES

2

3 <u>Cases</u>                                                                                          <u>Page No.</u>

4 *Adams v. State of California Dept. of Health Services, et al.*,
        487 F.3d 684 (9th Cir. 2007)................................................................7

5 *Agency Holding Corp. v. Malley-Duff & Assocs, Inc*,
        483 U.S. 143, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987) ................................14
6

7 *Auto-shade, Inc. v. Levy, et al.*,
        1993 U.S. Dist. LEXIS 20020, 28 U.S.P.Q.2d 1310 (C.D. Cal. 1993).......... … 8

8 *Blum v. Yaretsky*,
        457 U.S. 991, 73 L.Ed.2d 534, 102 S.Ct. 2777 (1982) ...................................26
9

10 *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
         944 F.2d 1525 (9th Cir. 1991), *aff'd* 508 U.S. 49,
11         113 S. Ct. 1920, 123 L.Ed.2d 611 (1993) ..................................…18

12 *Costantini v. Trans World Airlines*,
         681 F.2d 1199 (9th Cir. 1982)..........................................................20, 21

13

14 *Edwards v. Marin Park, Inc.*,
         356 F.3d 1058 (9th Cir. 2004)................................................................16

15 *Empress LLC v. City & County of S.F.*,
         419 F.3d 1052 (9th Cir. 2005) ..............................................................18
16

17 *F.T.C. v. Garvey*,
         383 F.3d 891 (9th Cir. 2004)................................................................12

18 *Feinstein v. Resolution Trust Corp.*,
         942 F.2d 34 (1st Cir. 1991) ................................................................16
19

20 *Forsyth v. Humana, Inc.*,
         114 F.3d 1467 (9th Cir. 1997) *aff'd*, 525 U.S. 299,
         142 L. Ed. 2d 753, 119 S. Ct. 710 (1999) ........................................11
21

22 *Frank v. United Airlines, Inc.*,
         216 F.3d 845 (9th Cir. 2000)................................................................12

23 *Freeman v. Lasky, Haas & Cohler*,
         410 F.3d 1180 (9th Cir. 2005) ...............................................................18
24

25 *Grimmett v. Brown*,
         75 F.3d 506 (9th Cir. 1996)..............................................................14, 15

26 *Headwaters Inc. v. U.S. Forest Serv.*,
         399 F.3d 1047 (9th Cir. 2005)................................................................12
27

28 *Hells Canyon Preservation Council v. U.S. Forest Service*,
         403 F.3d 683 (9th Cir. 2005) ................................................…12

*Holmes v. Securities Investor Protection Corp.,*
    503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) ................................11

*Hospital Bldg. Co. v. Trustees of Rex Hospital,*
    425 U.S. 738, 96 S. Ct. 1848, 48 L.Ed.2d 338 (1976) ........................................2

*Ileto v. Glock, Inc.,*
    349 F.3d 1191 (9th Cir. 2003)...........................................................................2, 7

*Jarvis v. Regan,*
    833 F.2d 149 (9th Cir. 1987)...............................................................................11

*Jefferson v. Carey, et al.,*
    1999 U.S. Dist. LEXIS 11470 (N.D. Cal. 1999)..................................13-15,20

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179, 138 L.Ed.2d 373, 117 S.Ct. 1984 (1997) ..................................15

*Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991)...............................................................................16

*Lubrizol Corp. v. Exxon Corp.,*
    929 F.2d 960 (3d Cir. 1991) ...............................................................................12

*Pincay v. Andrews,*
    238 F.3d 1106 (9th Cir. 2001)............................................................................14

*Rotella v. Wood,*
    528 U.S. 549, 145 L. Ed. 2d 1047, 120 S. Ct. 1075 (2000) ............................14

*Simon v. Value Behavioral Health, Inc.,*
    208 F.3d 1073, 1084 (9th Cir. 2000), *overruled on other grounds,*
    *Odom v. Microsoft Corp.,* 486 F.3d 541 (9th Cir. 2007) .................................17

*Sosa v. DirecTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006)...............................................................................18

*Sprewell v. Golden State Warriors,*
    266 F.3d 979, as amended, 275 F.3d 1187 (9th Cir. 2001)................................2

*Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency,*
    322 F.3d 1064 (9th Cir. 2003) ...........................................................................12

*Trimble v. City of Santa Rosa,*
    49 F.3d 583 (9th Cir. 1995) ................................................................................25

*United States v. McNeil,*
    320 F.3d 1034 (9th Cir. 2003) ...........................................................................17

*United States v. Standard Oil Co.,*
    73 F.R.D. 612 (N.D. Cal. 1977) ..........................................................................8

*United States ex rel. Barajas v. Northrop Corp.,*
    147 F.3d 905 (9th Cir. 1998)..............................................................................12

*Universal Trading & Investment Company v. Kiritchenko,*
    2008 U.S. Dist. LEXIS 51307, (N.D. Cal. 2008) ...............................................8

<u>Statutes and Other Authorities</u>                                                          <u>Page No.</u>

**United States Code**

18 U.S.C. § 1341 ............................................................................. 16

18 U.S.C. § 1343 ............................................................................. 16

18 U.S.C. § 1344 ............................................................................. 16

18 U.S.C. § 1512 ............................................................................. 16

18 U.S.C. § 1962(c) ................................................................... 10, 11

18 U.S.C. § 1962(d) ................................................................... 10, 17

18 U.S.C. § 2319 ............................................................................. 17

**Federal Rules of Civil Procedure**

F.R.C.P. Rule 9(b)  ....................................................................... 16

F.R.C.P. Rule 12 (b)(6)  ............................................................ 1, 9

F.R.C.P. Rule 26  ............................................................................. 9

F.R.C.P. Rule 60  .............................................................. 1, 6, 7, 10

**California Statutes**

Calif. Business & Professions Code, § 17200……………………………………22, 23

Calif. Business & Professions Code, § 17208……………………………………23

Calif. Civil Code § 47(b)  ........................................................... 13

Calif. Civ. Proc. Code § 335.1  .................................................. 25

**Other**

Ninth Circuit Model Jury Instruction No. 8.106……………………………16

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

QAD Inc. ("QAD"), William D. Connell ("Mr. Connell"), John Doordan ("Mr. Doordan"),

3

and Lai Foon Lee ("Ms. Lee")(collectively the "QAD-related defendants"), submit this Memo-

4

randum in support of their Motion to Dismiss the Complaint ("Complaint") of Plaintiff Mani Sub-

5

ramanian ("Plaintiff" or "Mr. Subramanian") pursuant to Rule 12(b)(6), Fed.R.Civ.Proc. ("FRCP").[1]

6

## INTRODUCTION

7

Having previously faced not only this Court's dismissal of virtually identical claims, but the

8

Ninth Circuit's complete affirmance of that dismissal, Plaintiff re-appears, undeterred, seeking to

9

resurrect those meritless claims one more time, albeit in a different guise and against an ever-

10

expanding set of defendants.  This Complaint should be dismissed in its entirety as to all of the

11

QAD-related defendants for the reasons discussed below: the claims are duplicative and barred by

12

*res judicata*; they fail to set forth all elements necessary to state claims for relief; they are untimely

13

under applicable statutes of limitation; and, in the case of the Civil RICO claims, they are barred by

14

the *Noerr-Pennington* doctrine.  Furthermore, because most, if not all, of the grounds justifying

15

dismissal cannot be remedied by amendment, dismissal with prejudice is warranted.

16

## STATEMENT OF ISSUES

17
18
19

1.      Are the Complaint, and each purported Cause of Action therein, barred by *res judicata* as to all QAD-related defendants given this Court's Dismissal Order in Case No. 04-1249-VRW and, with respect to Ms. Lee, given the summary judgment entered in her favor in *Vedatech-Japan K.K., et al. v. QAD, Inc., et al.*, No. CV 784685, Santa Clara County Superior Court?

20
21

2.      Should this Court exercise its discretion to dismiss the First Cause of Action as duplicative litigation, given Plaintiff's prior and pending FRCP Rule 60 motions in Case No. 04-1249-VRW?

22

3.      Are the Second (Civil RICO), Fourth (Unfair Competition), and Fifth (Civil Rights) Causes of Action barred by their respective statutes of limitation?

23

4.      Do the Complaint, and each purported Cause of Action therein, fail to state claims for relief as to the QAD-related defendants, and each of them?

24
25

5.      Is the Second Cause of Action (Civil RICO) barred by the *Noerr-Pennington* doctrine?

26

27
28

---

[1] The QAD-related defendants are informed that defendants St. Paul Fire & Marine Insurance Co. ("St. Paul"), Randall Wulff ("Wulff"), and Arthur Andersen LLP ("Andersen") are concurrently filing Motions to Dismiss and/or Strike the Complaint herein.  The QAD-related defendants join in those motions and, as appropriate, join in and incorporate herein the Memoranda filed in support of those motions.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

- 1 -

1

2

## SUMMARY OF ALLEGATIONS AND CLAIMS
## PERTAINING TO THE QAD-RELATED DEFENDANTS

3

4

5

6

7

8

9

10

11

        In considering a motion to dismiss, the court must accept as true the factual allegations of the complaint in question, construe the pleading in the light most favorable to plaintiff, and resolve all doubts in his favor.  *See, e.g.*, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L.Ed.2d 338 (1976).  However, "[l]egal conclusions need not be taken as true merely because they are cast in the form of factual allegations." *Ileto v. Glock, Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003)  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 987, as amended, 275 F.3d 1187 (9th Cir.2001).  The following sections summarize the allegations as to each QAD-related defendant in light of these principles.

12

        **1.     QAD Inc.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        The allegations relating to QAD are, in large measure, merely a regurgitation of those set forth in Plaintiff's prior complaints in: (1) *Vedatech-Japan K.K., et al. v. QAD Inc., et al*., Santa Clara County Superior Court Case No. 784685 (referenced in the Complaint as the "VT-COUNTER-ACTION" [Comp. ¶ 28]) regarding the commercial disputes between Plaintiff and QAD that arose  in 1996 and 1997 [*See* QAD Request for Judicial Notice ("RJN"), Exh. A]; and, (2) *Vedatech Inc., et al. v. St. Paul Fire & Marine Insurance Co., et al*., United States District Court Case No. 04-1249-VRW ("Case No. 04-1249-VRW") regarding QAD's conduct in the underlying litigation and the 2004 mediation session, and with respect to the settlement agreement entered into by QAD with St. Paul over Plaintiff's objections.  [RJN, Exh. B]   Thus, Plaintiff alleges that the parties entered into a commercial relationship in 1993 and 1994, which then deteriorated and was terminated in 1997 and 1998 as the result of various alleged misconduct by QAD and its agents (including Mr. Doordan and Ms. Lee, as described more fully below) during that time. [Comp. ¶¶ 29-47]  Echoing charges in Case No. 04-1249-VRW, the Complaint further alleges that, commencing in or about late 1997 and continuing thereafter, QAD has allegedly engaged in various litigation-related activities designed to cause the Vedatech parties financial hardship and "force them to abandon their legal rights and remedies." [Comp. ¶ 49;  RJN, Exh. B, ¶ 25]

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                              -  2  -

1   Commencing in or about 2001, QAD and St. Paul allegedly entered into various joint efforts to

2   "defeat potential claims by VEDATECH and SUBRAMANIAN against QAD" [Comp. ¶ 89],

3   including QAD's purchase of comprehensive general liability insurance from St. Paul, "forcing" the

4   improper 2004 mediation (along with Wulff), entering into the settlement agreement with St. Paul,

5   and, ultimately, dismissing the QAD claims against the Vedatech parties. [*e.g.*, Comp. ¶¶ 90-93,

6   115,127, 144, 158]  Finally, QAD is alleged to have made various misrepresentations or non-

7   disclosures regarding the foregoing activities.  [*e.g.*, Comp. ¶¶ 112, 130, 150-51, 154, 170]

8       **2.    William D. Connell**

9       The Complaint alleges that, since at least January, 1998, Mr. Connell has served as attorney

10  for QAD and related parties, including defendants Lai Foon Lee and John Doordan, in litigation

11  relating to Plaintiff and his Vedatech entities. [Comp. ¶ 13]  With respect to Mr. Connell, the

12  Complaint alleges only communications or conduct relating to that representation, including:

13          (1) Improperly asserting the attorney-client privilege [Comp. ¶ 49(h)];

14          (2) In or around June 1999, fail[ing] to disclose QAD's insurance information
        under the "initial disclosure" provisions of the FRCP Rule 26 [Comp. ¶ 62];
15
16          (3) "[R]elentless[ly] targeting" the attorneys for the Vedatech parties, albeit
        unsuccessfully, during the period from June to December, 1999 [Comp. ¶ 64];

17          (4) "Fraudulently" redacting information from documents produced by QAD
18      in discovery in the underlying state court action "to hide possible insurance defense
        coverage other evidence of QAD wrongdoing [Comp. ¶ 66], and "stonewall(ing) and
19      fraudulently conceal(ing) [QAD's] relationship with ST.PAUL" in form
        interrogatory responses provided by QAD from April 2001 through July 2007 [sic]
20      [Comp. ¶ 91];

21          (5) Participating, sometime prior to January, 2004, in QAD's decision to hold
        the March, 2004 mediation session, joining other defendants in "forcing" that
22      mediation [Comp. ¶¶ 115, 167], and, during that mediation session, joining with St.
        Paul's attorney and the mediator, Wulff, in rejecting Plaintiff's proposal as to how
23      the mediation should proceed [Comp. ¶ 125];

24          (6)  Falsely characterizing (before this Court and/or the Ninth Circuit) the
        Vedatech parties' conduct at the mediation [Comp. ¶ 130];

25          (7)  Representing to the state court on March 16, 2004, that St. Paul and QAD
26      had reached an oral agreement to settle QAD's claims against the Vedatech parties
        [Comp. ¶ 142-43]; and,

27          (8) "Falsely characteriz[ing]  [St. Paul's and QAD's] 'authority' to settle the
28      claims settled by the 'settlement agreement' both to the district court and to the Ninth
        Circuit" [Comp. ¶ 170], and making fraudulent "oral representations and written

Memorandum in Support of QAD Defendants'          -  3  -
Motion to Dismiss [FRCP 12(b)(6)]

submissions both before the district court and the Ninth Circuit [e.g., hiding know-
ledge of the insurance agreement between ST.PAUL and QAD]" [Comp. ¶ 176].

The sole cause of action alleged against Mr. Connell based on these allegations is the Second
Cause of Action (Civil RICO).[2]

### 3.    John Doordan

The factual allegations pertaining to Mr. Doordan basically re-plead, with only minor
additions, allegations previously set forth regarding Mr. Doordan in Case No. CV784685.  [RJN,
Exh. A]  Plaintiff there alleged twelve (12) causes of action against Mr. Doordan, including, among
others, claims for fraud, business interference, and unfair competition.  In May, 2006, Plaintiff
voluntarily dismissed all of these claims against Mr. Doordan. [RJN, Exh. C]

The present complaint alleges the following with respect to Mr. Doordan: [3]

(1)    He has been an employee of QAD since 1986, holding various
executive management positions with the company [Comp. ¶ 9];

(2)    Beginning in or after "mid-1996," he undertook various actions
designed to terminate the relationship then existing between QAD and the Vedatech
parties [Comp. ¶¶ 32-3; VTCA/TAC ¶¶ 115-16,124-25,134-35, 145, 152-53, 181-82,
303-07], which included:
(a) sending a letter on April 16, 1997, purporting to terminate QAD's
contractual relationship with Vedatech K.K. on improper grounds and stating that the
prior agreement between QAD and Vedatech K.K. would not be honored beyond
July 31, 1997 [Comp. ¶ 34; VTCA/TAC ¶ 194];

(b) interfering with payments from QAD to Vedatech K.K. "in order
to put undue pressure on SUBRAMANIAN to sign a 'release'" [Comp. ¶ 40;
VTCA/TAC ¶¶ 308-11];

(c) inducing Vedatech K.K. to provide services beyond July 31, 1997,
by falsely promising to get approval for a new contract while "proceeding with the
explicit goal of sabotaging any prospects for a new agreement" [Comp. ¶ 43;
VTCA/TAC ¶¶ 308-11, 352, 397-98];

---

[2]   The First Cause of Action alleges Mr. Connell was one of the "officers of the Court" who "fraudulently"
represented to the Court the alleged relationship between St. Paul and QAD (or, more accurately, failed to
disclose it by "hiding knowledge of the insurance agreement between ST. PAUL and QAD" [Comp. ¶ 176]).
However, that Cause of Action seeks no relief with respect to Mr. Connell personally.
[3]   For reference, in addition to listing the relevant paragraph(s) in the instant Complaint, this Memorandum
also cites to the corresponding paragraphs relating to Mr. Doordan in the Third Amended Complaint in
*Vedatech-Japan K.K., et al. v. QAD, Inc., et al.*, No. CV 784685, Santa Clara County Superior Court. [RJN,
Exh. XX]  The instant Complaint refers to that earlier matter as the "VT-COUNTER-ACTION" [Comp. ¶¶
28, 68-9]; accordingly, it is abbreviated herein as "VTCA/TAC ¶ X" [i.e., VT-COUNTER-ACTION/Third
Amended Complaint ¶ X].

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

(d)  between August and September, 1997, using the Tokyo affiliate of Arthur Andersen improperly to establish a "secret bank account" in Tokyo "in an attempt to force SUBRAMANIAN to resign [as Representative Director of QAD Japan K.K., QAD's subsidiary in Japan] by starving QAD Japan K.K. of funds [Comp. ¶ 51; VTCA/TAC ¶¶ 290-92];

(e) engaging in unspecified "other active efforts" in December, 1997, and January, 1998, that "seriously impaired" and "damaged VEDATECH and SUBRAMANIAN's business relationships with [their] customers" [Comp. ¶ 56; VTCA/TAC ¶¶ 334-35, 346];  and,

(f) in or before December, 1997 – January, 1998, discussing with QAD "possible ways of canceling or limiting QAD's insurance policies that would cover SUBRAMANIAN" against lawsuits to be brought against Plaintiff in California "and would have helped provide for defense of such claims against SUBRAMANIAN" [Comp. ¶ 58]; and,

(3)  Sometime prior to January, 2004, participating in QAD's decision to hold a mediation with St. Paul and the Vedatech parties in front of defendant Wulff; and, (2) thereafter joining with other defendants in "forcing" that March, 2004 mediation. [Comp. ¶¶ 115, 167]

Mr. Doordan is named as a defendant only in the Second (Civil RICO), Fourth (Unfair Competition), and Fifth (Violation of Civil and Constitutional Rights) Causes of Action.

### 4.    Lai Foon Lee

As a threshold matter, it must be noted that all of the defendants have ample grounds for dismay at being forced to respond to yet another of Plaintiff's frivolous filings, but none more so than Ms. Lee.  Despite the fact that her employment at QAD lasted for less than a year and ended more than ten years ago, and despite having already obtained summary judgment against Mr. Subramanian on virtually identical claims in the VT-COUNTER-ACTION (Case No. CV784685), Ms. Lee finds herself dragged back into court by Mr. Subramanian once more to defend against those same frivolous claims.  Indeed, while one of the claims alleged in the instant complaint (Civil RICO) purports to rely on a new legal theory, the other (Unfair Competition) merely repeats a claim on which she already obtained summary judgment. [RJN, Exh. A and Exh. D]

With respect to Ms. Lee, the present complaint alleges as follows:[4]

(1)  Ms. Lee was an employee of QAD from April, 1997, to March, 1998, during which time she worked on matters involving QAD's initial public offering

---

[4] As above, the corresponding paragraphs from the Third Amended Complaint in the earlier "VT-COUNTER-ACTION" (Case No. CV784685) [RJN, Exh. XX] are referenced as "VTCA/TAC ¶ X."

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]    - 5 -

(which occurred in August, 1997) and held various financial titles at QAD. [Comp. ¶¶ 10, 36, 46; VTCA/TAC ¶¶ 29, 199];

(2)    She has not been employed by QAD since March, 1998, and her only "affiliation" with these matters since then (before the filing of the instant case) has been as a defendant in Case No. CV784685. [Comp. ¶ 28; VTCA/TAC ¶ 28];

(3)    In her work on QAD's initial public offering, Ms. Lee engaged Arthur Andersen ("Andersen") to perform audits in 1997 of various QAD subsidiaries, including QAD Japan K.K. [Comp. ¶¶ 36, 39; VTCA/TAC ¶¶ 201, 228, 279];

(4)    She attempted to and/or did influence Andersen to modify its audit report with respect to QAD Japan K.K. to mischaracterize a July, 1997 payment involving Mr. Subramanian as an improper "diversion of funds" [Comp. ¶ 40; VTCA/TAC ¶¶ 355, 407-08, 509-10, 512] and, along with others, she "used the Tokyo affiliate of Anderson" improperly to open a secret Tokyo bank account as part of an effort in 1997 to force Mr. Subramanian to resign as Representative Director of QAD Japan K.K. and otherwise injure the Vedatech parties [Comp. ¶ 51; VTCA/TAC ¶¶ 290-92, 313-15, 377];

(5)    She participated with others in an unsuccessful attempt in June, 1997 to "intimidate" Mr. Subramanian into signing a release agreement with QAD. [Comp. ¶¶ 38, 39; VTCA/TAC ¶¶ 241, 376]; and,

(6)    In the December , 1997 – January, 1998 time frame, Ms. Lee engaged in unspecified "other active efforts" that "seriously impaired VEDATECH and SUBRAMANIAN from offering any services relating to the QAD products and further damaged VEDATECH and SUBRAMANIAN's business relationships with such customers." [Comp. ¶ 56]

Beyond the foregoing conduct – all of which was alleged to have occurred between April, 1997 and March, 1998, and was previously pleaded as the basis for Mr. Subramanian's claims against Ms. Lee in Case No. CV784685 – the present Complaint alleges only one subsequent activity by Ms. Lee: that "in the period from August 2005 to May 2006, [she provided] false declarations that successfully defeated the action against her in the QAD-FIRST-ACTION." [Comp. ¶ 169]

Ms. Lee is only named in the Civil RICO and Unfair Competition causes of action.

## LEGAL ARGUMENT

I.    **THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE: (1) IT IS DUPLICATIVE LITIGATION; AND, (2) IT ALLEGES NO "FRAUD ON THE COURT" BY ANY DEFENDANT TO JUSTIFY OVER-TURNING THE COURT'S DISMISSAL ORDER IN CASE NO. 04-01249-VRW.**

Plaintiff's First Cause of Action seeks to invoke this Court's equitable power, expressly recognized in FRCP Rule 60(d), to "entertain an independent action to relieve a party from a judgment, order, or proceeding" on the grounds of "fraud on the court." Specifically, Plaintiff seeks

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                        -  6  -

1   to set aside this Court's June 22, 2005 Order ("the Dismissal Order"), and the Judgment thereon,

2   which dismissed, with prejudice, all of the claims against QAD in *Vedatech, Inc. v. St. Paul Fire &*

3   *Marine Insurance Co.*, Case No. 04-1249-VRW ("Case No. 04-1249-VRW"). [RJN, Exh. E][5]

4           **A.      This Claim Should Be Dismissed as Duplicative Litigation.**

5           As a threshold procedural matter, this cause of action should be dismissed as duplicative and

6   as an improper multiplication of proceedings, given that Plaintiff even now continues, before this

7   Court, to pursue FRCP Rule 60 motions for reconsideration in Case No. 04-1249-VRW challenging

8   the very same Order and Judgment.  As the Ninth Circuit recently observed in *Adams v. State of*

9   *California Dept. of Health Services, et al.*, 487 F.3d 684, 688 (9th Cir. 2007), "[p]laintiffs generally

10  have 'no right to maintain two separate actions involving the same subject matter at the same time in

11  the same court and against the same defendant.' *Walton [v. Eaton Corp.], 563 F.2d [66] at 70 [(3d*

12  *Cir. 1977)]*; [additional citations omitted]."  That is precisely what Plaintiff seeks to do here, as he

13  continues to pursue his familiar strategy of litigation multiplication.[6]  This Court clearly has the

14  authority to dismiss this action as duplicative, and it should exercise its discretion to do so.  *Id.*

15          **B.      Plaintiff Has Alleged No "Fraud on the Court" Justifying Relief.**

16          Dismissal is also warranted given the lack of any substantive justification for overturning the

17  Court's prior Dismissal Order and the judgment thereon. The sparse and formulaic allegations of

18  this claim consist of a non-specific incorporation of the Complaint's preceding 174 paragraphs

19  [Comp.  ¶ 175], a brief summary of the defendants' alleged "fraud" [Comp. ¶ 176], and a conclusory

20  statement that Plaintiff's allegations are sufficient to meet the legal standards required to support an

21  action based on "fraud on the court." [Comp. ¶ 177-78][7]  With respect to QAD, the only specific

22  allegation of "fraud upon the court" is that "CONNELL [QAD's attorney] in his oral representations

23  and written submissions both before the district court and the Ninth Circuit [e.g., hiding knowledge

---

5   Although the Dismissal Order stayed one of the claims as to St. Paul, all of the claims as to QAD were
dismissed, with prejudice.

6   As this Court chronicled in the Dismissal Order, for example, Plaintiff filed multiple improper removal
petitions with respect to the same underlying state court actions involving QAD as well as the same insurance
actions involving St. Paul. [RJN, Exh. E]

7   As noted above, "[l]egal conclusions need not be taken as true  merely because they are cast in the form of
factual allegations."  *Ileto*, 349 F.3d at 1200.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

–  7   –

1  of the insurance agreement between ST. PAUL and QAD], … ."  [Comp. ¶ 176]

2      This allegation against QAD, whether taken alone or in the context of the similar, barebones

3  allegations of "fraud" by St. Paul and Wulff, manifestly fails to justify overturning the Court's

4  Dismissal Order in Case No. 04-01249-VRW.  The sole "factual" claim against QAD is that it failed

5  to advise this Court (and, subsequently, the Ninth Circuit) that, since in or about April, 2001, QAD

6  has obtained Comprehensive General Liability (CGL) insurance from St. Paul. [Comp. ¶¶ 90-92,

7  176]  Plaintiff contends that QAD's failure to reveal this fact amounted to "fraud on the court"

8  requiring that this Court's Order dismissing all claims against QAD, affirmed fully on appeal, be set

9  aside.  Plaintiff is wrong.

10      As recently summarized in *Universal Trading & Investment Company v. Kiritchenko*, 2008

11  U.S. Dist. LEXIS 51307, at *6 (N.D. Cal. 2008):

12      "In order to set aside a judgment or order because of fraud upon the court under *Rule 60(b)* . . . it is necessary to show an unconscionable plan or scheme which is
13      designed to improperly influence the court in its decision." *England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960)* (citations omitted). Further, a finding of fraud on the
14      court requires that "a 'grave miscarriage of justice'" have occurred. *See Appling v. State Farm Mutual Automobile Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003)* (quoting
15      *United States v. Beggerly, 524 U.S. 38, 47, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998)*). Consequently, "[n]on-disclosure [of documents], or perjury by a party or witness,
16      does not, by itself, amount to fraud on the court." *Id.* (citation omitted).

17      "[T]he burden is on the moving party to establish the fraud by clear and convincing evidence." *England, 281 F.2d at 309-10*. The "court places a high burden on a
18      plaintiff seeking relief  [*7] from a judgment based on fraud on the court." *See Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1104 (9th Cir. 2006)*.
19      "Liberal application [of the doctrine] is not encouraged, as fraud on the court should be read narrowly, in the interest of preserving the finality of judgments." *Id.*

20  *See also, Auto-shade, Inc. v. Levy, et al.*, 1993 U.S. Dist. LEXIS 20020, at *5-6, 28 U.S.P.Q.2d

21  1310 (C.D. Cal. 1993); *United States v. Standard Oil Co.*, 73 F.R.D. 612, 614-15 (N.D. Cal. 1977).

22      The only "facts" alleged by Plaintiff to support the purported "fraud" are that, several years

23  after the events giving rise to the underlying litigation between Plaintiff and QAD (and, indeed,

24  many years after the filing of the complaints comprising that litigation), QAD switched its insurance

25  carrier and began purchasing its CGL insurance from St. Paul.  [Comp. ¶¶ 90-93]  Plaintiff has not

26  alleged, nor can he, given his admitted lack of knowledge [Comp. ¶ 93], that the premiums paid by

27  QAD are not commercially reasonable and appropriate for the type and amount of coverage

28  purchased.  Nor has he alleged that the policies purchased are sham, inappropriate, or otherwise

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                    -  8  -

1  void or unenforceable.  In other words, Plaintiff has alleged no facts to support any reasonable

2  inference that this amounts to anything other than a legitimate purchase of insurance.  Furthermore,

3  Plaintiff has not alleged that any of the policies purchased by QAD from St. Paul in or after 2001 –

4  that is, after both the circumstances occurred and Plaintiff filed Case No. CV784685 -- provided any

5  coverage for the claims involved in the underlying litigation brought by Plaintiff against QAD.

6      Plaintiff has not shown (nor can he) that either QAD or its attorney had any duty to disclose

7  the existence of the alleged insurance policies to this Court (or to the Ninth Circuit) in connection

8  with its FRCP Rule 12(b)(6) motion to dismiss Case No. 04-1249-VRW or Plaintiff's subsequent

9  appeal of the Dismissal Order.  Plaintiff's complaint against QAD in that case was dismissed

10  pursuant to a motion under FRCP Rule 12(b)(6), which looked only to the allegations of the

11  Plaintiff's complaint.[8]  Plaintiff's claims against the defendants, including QAD, in Case No. 04-

12  01249-VRW were dismissed before any disclosures or discovery responses under FRCP Rule 26,

13  were required.  Thus, even if it were assumed that FRCP Rule 26 would have imposed a duty on

14  QAD to disclose these policies to Plaintiff – an assumption QAD disputes and Plaintiff's complaint

15  fails to validate – such a duty never arose in Case No. 04-1249-VRW, as that action was dismissed,

16  for failure to state any claims against QAD, before any FRCP Rule 26 disclosures were required.

17      Finally, it must be noted that Plaintiff does not, nor can he, allege that QAD (or its attorneys)

18  made any affirmative misrepresentations **to the Court** (or, for that matter, even to Plaintiff) either

19  denying the existence of, or otherwise mischaracterizing, the subject insurance policies.  Plaintiff

20  alleges only that QAD was **silent** in this regard and "hid knowledge" of the policies' existence – that

21  is, it failed to disclose them.  Such alleged non-disclosure falls well short of establishing even

22  simple fraud, let alone a  "fraud on the court" amounting to the "narrow" type of behavior, or

23  causing any "grave miscarriage of justice," sufficient to justify  setting aside an order under FRCP

24  Rule 60.

25

26  [8] Moreover, Plaintiff's complaint in Case No. 04-1249-VRW **already** contained similar allegations of conspiracy and conflict of interest between St. Paul and QAD, such that any references to this "new"

27  information would simply have been cumulative evidentiary allegations.  *See, e.g.,* RJN, Exh. B, ¶ 152(kk), in which QAD is alleged to have "refused to provide CGL policies covering relevant periods in spite of

28  repeated requests for the same, while at the same time *engaging in secret collusive deals with the insurer of the Vedatech Parties*." (emphasis added) *See also,* ¶¶ 68, 135, 152(o) [RJN, Exh. B]

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900      Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]      - 9 -

1    In sum, the First Cause of Action is simply another desperate, unjustifiable attempt by

2    Plaintiff to get "a second (or even third[9]) bite at the apple." It should be dismissed, with prejudice.

3    **II.    THE SECOND CAUSE OF ACTION FOR CIVIL RICO MUST BE**
     **DISMISSED BECAUSE: (1) IT IS BARRED BY RES JUDICATA;**

4    **(2) IT IS BARRED BY THE STATUTE OF LIMITATIONS; (3) IT**
     **FAILS TO STATE A CLAIM FOR RELIEF; AND, (4) IT IS BARRED**

5    **BY THE *NOERR-PENNINGTON* DOCTRINE.**

6    Plaintiff's Second Cause of Action is entitled Civil RICO and divided into two parts. In

7    "Part I," based on 18 U.S.C. § 1962(c), Plaintiff purports to set forth claims against eight of the

8    named defendants (i.e., all except Andersen) based on alleged violations of 18 U.S.C. §1512

9    (corruptly influencing official proceedings); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire

10   fraud); 18 U.S.C. § 1344 (bank fraud); and, 18 U.S.C. §2319 (criminal copyright infringement)

11   [Comp. ¶ 183 *et seq.*]. In "Part II," based on 18 U.S.C. § 1962(d), Plaintiff further alleges that all of

12   the named defendants (including Arthur Andersen) are also liable for conspiracy to engage in each

13   of the Section 1962(c) violations described in Part I. [Comp. ¶¶ 193-95]

14   According to the Complaint, the defendants combined to form three (3) separate RICO

15   "enterprises:" (1) the "DN-Enterprise," which allegedly included defendants QAD, Mr. Doordan,

16   Mr. Desilets, Ms. Lee, and their attorney, Mr. Connell, among others (including Arthur Andersen),

17   and existed for the purpose of "engag[ing] in racketeering activities designed to intimidate

18   VEDATECH and SUBRAMANIAN from pursuing any such legal remedies and causing financial,

19   economic, and business harm that will weaken VEDATECH and SUBRAMANIAN sufficiently to

20   force them to abandon all such legal rights and remedies" [Comp. ¶ 49]; (2) the "SP-Enterprise,"

21   which allegedly included defendant St. Paul and its attorneys, GPS, among others, and existed for

22   the same purpose as the "DN-Enterprise (as well as intimidating the Vedatech parties "from

23   pursuing their benefits under the policies") [Comp. ¶ 84]; and, (3) the "DN-SP-enterprise," which

24   came into existence "in or around April 2001" [Comp. ¶ 89], included all members of the other two

25   enterprises, joined by defendant Wulff, among others, and existed for the same purpose as the other

26

27   _____

[9]  On June 5, 2008, Plaintiff filed FRCP Rule 60 motions in Case No. 04-1249-VRW seeking reconsideration
of the Court's judgment. On July 17, 2008, the Court denied that Motion. [Case No. 04-1249-VRW, Dkt.

28   #231] On July 28, 2008, Plaintiff filed a motion seeking reconsideration of that denial (Id., Dkt # 233),
which is presently set for hearing on October 16, 2008.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1    two alleged enterprises. [Comp. ¶ 96]. As participant in one or more of these so-called enterprises,

2    the QAD-related defendants are alleged to have engaged in the various activities summarized above.

3         Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with

4    any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

5    conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

6    pattern of racketeering activity or collection of unlawful debt." In order to state a valid RICO claim

7    under § 1962(c), a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, and

8    (4) of racketeering activity." *Jarvis v. Regan,* 833 F.2d 149, 151-52 (9th Cir. 1987)(citations

9    omitted). "Racketeering activity" is defined by reference to various specific crimes and statutes.

10   Furthermore, in order to maintain a cause of action under RICO, a plaintiff must show a causal

11   connection between the alleged RICO conduct and the asserted injury. *Forsyth v. Humana, Inc.,* 114

12   F.3d 1467, 1481 (9th Cir. 1997) *aff'd,* 525 U.S. 299, 142 L. Ed. 2d 753, 119 S. Ct. 710 (1999). A

13   showing of injury also requires proof of concrete financial loss. *Id.* Mere "injury to a valuable

14   intangible property interest" is not sufficient. A plaintiff must allege that it suffered an injury to its

15   "business or property" as a proximate result of the alleged racketeering activity, *Holmes v.*

16   *Securities Investor Protection Corp.*, 503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).

17   **A.        This Claim is Barred by Res Judicata as to All QAD-Related Defendants.**

18        As explained above, defendants' alleged conduct and the injuries allegedly sustained by

19   Plaintiff are, in all material respects, virtually identical to those set forth by Plaintiff in his three

20   prior lawsuits – the VTCA (Case No. CV784685), the insurance coverage complaint against St.

21   Paul, and Case No. 04-1249-VRW. With respect to the QAD-related parties, all of the claims in

22   those prior lawsuits have resulted in dismissals, whether through a decision on the merits and

23   judgment by a court or as the result of Plaintiff's voluntary dismissal. As previously noted, the

24   instant Complaint raises only one "new" factual allegation – QAD's purchase of CGL insurance

25   policies from St. Paul commencing in or about 2001 -- which, along with its non-disclosure,

26   Plaintiff asserts as the linchpin of this new action. However, even considered in the light most

27   favorable to Plaintiff, these allegations add nothing material to the prior complaints. The purported

28   significance of QAD's purchase of CGL insurance from St. Paul is that it gave rise to an

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                        - 11 -

1   undisclosed conflict of interest on St. Paul's part and supports Plaintiff's allegations of a conspiracy

2   among defendants to injure Plaintiff and the Vedatech parties by impairing their ability to pursue the

3   litigation against QAD.  According to Plaintiff, however, defendants' infliction of this injury has

4   been ongoing since at least 1998, culminating in March, 2004, with the improper mediation and

5   settlement agreement over Plaintiff's objections.  Those injuries are exactly what was asserted in

6   Case No. 04-1249-VRW.

7         In light of the foregoing, Plaintiff's present complaint against QAD, as well as the other

8   QAD-related defendants based on their privity with QAD, is clearly subject to dismissal under the

9   doctrine of *res judicata*, or claim preclusion, which "bars relitigation of all grounds of recovery that

10  were asserted, or could have been asserted, in a previous action between the parties, where the

11  previous action was resolved on the merits." *Tahoe-Sierra Preservation Council v. Tahoe Regional

12  Planning Agency,* 322 F.3d 1064, 1078 (9th Cir. 2003); *United States ex rel. Barajas v. Northrop

13  Corp.,* 147 F.3d 905, 909 (9th Cir. 1998). *Res judicata* applies when there is (1) an identity of

14  claims, (2) a final judgment on the merits, and (3) privity between the parties. *Hells Canyon

15  Preservation Council v. U.S. Forest Service,* 403 F.3d 683, 686 (9th Cir. 2005); *Headwaters Inc. v.

16  U.S. Forest Serv.,* 399 F.3d 1047, 1052 (9th Cir. 2005); *Tahoe-Sierra,* 322 F.3d at 1077.

17        All of the requisite elements are manifestly present here.  "The central criterion in

18  determining whether there is an identity of claims between the first and second adjudications is

19  whether the two suits arise out of the same transactional nucleus of facts." *Frank v. United Airlines,

20  Inc.,* 216 F.3d 845, 851 (9th Cir. 2000)(internal quotations omitted).  The allegations summarized

21  above clearly show the same transactional nucleus.  Second, there can be no question that there has

22  been a final judgment on the merits of the dismissals in Case No. 04-1249-VRW, which, indeed,

23  have already been affirmed on appeal.  Finally, a finding of privity between QAD and the other

24  QAD-related defendants is obviously warranted here.  "Privity . . . is a legal conclusion designating

25  a person so identified in interest with a party to former litigation that he represents precisely the

26  same right in respect to the subject matter involved." *F.T.C. v. Garvey,* 383 F.3d 891, 897 (9th Cir.

27  2004).  *See also*, *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991).

28

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                 - 12 -

1    Moreover, defendant Lai Foon Lee has an additional basis for invoking *res judicata* to bar

2    all claims against her.  In Mr. Subramanian's earlier VT-COUNTER-ACTION (Case No.

3    CV784685), Ms. Lee was named as a defendant in eleven (11) causes of action, including claims for

4    fraud, business interference, and unfair competition, based on virtually identical allegations as those

5    herein.  In May, 2006, Ms. Lee moved the Superior Court for summary judgment as to all those

6    claims, and the Superior Court granted Ms. Lee's motion in full (including as to the unfair

7    competition claim).[10]  [RJN, Exh. D]

8    Mr. Subramanian's Complaint against Ms. Lee is, thus, also barred by *res judicata* based on

9    the state court's judgment, as this Court's analysis in *Jefferson v. Carey, et al.*, 1999 U.S. Dist.

10   LEXIS 11470 (N.D. Cal. 1999) makes undeniably clear.  In that matter, plaintiff had previously

11   brought an action in California Superior Court alleging various claims against defendants, who had

12   obtained summary judgment from the state court dismissing all of plaintiff's claims against them.

13   Plaintiff then filed a new action in federal court, alleging new causes of action, based on the same

14   conduct, for: (1) violation of the civil RICO statutes, and (2) fraud and deceit.  Defendants moved to

15   dismiss the federal action, arguing, *inter alia*, that both causes of action were barred by *res judicata*

16   in light of the state court summary judgment.  Based on an analysis fully applicable to Ms. Lee's

17   situation, this Court concluded that *res judicata* barred both the RICO and the fraud claims.

18   This Court first noted that, as here, both actions involved the same parties.  Second, this

19   Court observed that, as here, "[r]eviewing both complaints, it is also apparent that both actions seek

20   to recover for the same conduct… ."  *Id.* at *4.  In fact, just as here, the plaintiff in *Jefferson*

21   identified only "one factual allegation that he argues exceeds the scope of his complaint in his state

22   action against [the defendants]: the filing of a false declaration by [defendants] in support of its

23   motion for summary judgment in the state court action." *Id.*  However, as this Court observed there

24   and is equally true here, a declaration in support of a summary judgment motion is subject to the

25   absolute privilege of California Civil Code §47(b), which provides that "[a] privileged publication

26

27

28   [10]  Mr. Subramanian filed a Notice of Appeal with respect to the summary judgment, but that appeal was dismissed by the California Court of Appeal for the Sixth District on procedural grounds, and the California Supreme Court denied Mr. Subramanian's petition for review. [RJN, Exh. F]

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]    - 13 -

1    or broadcast is one made … in any … judicial proceeding."   There, as here, the declaration in

2    question was made during a judicial proceeding and executed by defendant for the purpose of

3    prevailing in the action, leading this Court to conclude that, "[a]s such, this declaration is clearly

4    within the privilege," and could not serve as a basis for plaintiff's new claims. *Id.* at *5.

5         Finally, this Court observed in *Jefferson*, as is equally true here with respect to Ms. Lee, that

6    "it is clear that the instant action and the earlier state action seek to vindicate the same primary right

7    … . Defendants are alleged to have breached the same primary duty in both actions… . And the

8    'delict or wrong done' by defendants is the same in both complaints … ." *Id.* at *6-*7.  Based on the

9    foregoing analysis, this Court reached a conclusion that applies with equal force to the claims

10   against Ms. Lee in the instant action:

11        In short, plaintiff cannot take the same series of events that formed the basis for his
         abuse of process, malicious prosecution and intentional infliction of emotional
12        distress claims in state court, replead them as RICO and fraud claims and expect to
         escape the effect of the state court judgment rendered against him. Jefferson's causes
13        of action are *res judicata* and he may not litigate them anew.     *Id.* at *7.

14   **B.        This Claim is Barred by the Statute of Limitations.**

15        The statute of limitations for a civil RICO claim is four years.  *Agency Holding Corp. v.*

16   *Malley-Duff & Assocs, Inc,* 483 U.S. 143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987);  *Pincay v.*

17   *Andrews,* 238 F.3d 1106, 1108 (9th Cir. 2001); *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.

18   1996).  In determining when the four-year period commences to run, it is well-established in the

19   Ninth Circuit that the "injury discovery" rule is to be applied.  As stated in *Grimmett*, 75 F.3d at

20   511:

21        [W]e have faithfully followed the "injury discovery" rule for over a decade. *See Stitt*
         *v. Williams, 919 F.2d 516, 525 (9th Cir. 1990)* ("The limitations period [for civil
22        RICO actions] begins to run when a plaintiff knows or should know of the injury
         which is the basis for the action."); *Beneficial Standard Life Ins. Co. v. Madariaga,*
23        *851 F.2d 271, 275 (9th Cir. 1988)* (holding that civil RICO claim accrues "when [the
         plaintiff has] actual or constructive knowledge of the fraud."); *Volk v. D.A. Davidson*
24        *& Co., 816 F.2d 1406, 1415 (9th Cir. 1987)* ("The limitations period begins to run
         when a plaintiff knows or should know of the injury which is the basis for the
25        action."); *Compton v. Ide, 732 F.2d 1429, 1433 (9th Cir. 1984)* (reasoning that the
         general rule for accrual, plaintiff's discovery of the injury, should apply to civil
26        RICO claims).

27   For a RICO claim, "discovery of the injury, not discovery of the other elements of a claim, is what

28   starts the clock."  *Rotella v. Wood,* 528 U.S. 549, 555, 145 L. Ed. 2d 1047, 120 S. Ct. 1075 (2000).

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                          -  14  -

1    The Ninth Circuit also follows "separate accrual" rule, " 'which provides that a new cause of

2    action accrues for each new and independent injury.' *[Grimmett v. Brown, 75 F.3d] at 510*, quoting

3    *Pocahontas Supreme Coal Co v Bethlehem Steel Corp, 828 F.2d 211, 220 (4th Cir 1987)*. 'Two

4    elements characterize an overt act which will restart the statute of limitations: 1) it must be a new

5    and independent act that is not merely a reaffirmation or a previous act; and 2) it must inflict new

6    and accumulating injury on the plaintiff.' *Pace Industries [Inc. v. Three Phoenix Co., 813 F.2d 234,*

7    *238 (9th Cir. 1987)].*" *Jefferson v. Carey, et al.*, 1999 U.S. Dist. LEXIS 11470 at *7 (N.D. Cal.

8    1999). As a corollary to this rule, "damages may not be recovered for injuries sustained as a result

9    of acts committed outside the limitations period." *Grimmett*, 75 F.3d at 512. "[T]he plaintiff cannot

10   use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier

11   predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S.

12   179, 180, 138 L.Ed.2d 373, 117 S.Ct. 1984 (1997).

13   This action was filed on March 12, 2008. Accordingly, any alleged RICO claims accruing

14   prior to March 12, 2004, are barred by the statute of limitations. In fact, the Complaint makes clear

15   that ***all*** of the alleged claims in this matter are so barred, as Plaintiff himself alleges awareness well

16   before that date of his purported injuries claimed to have resulted from the alleged RICO violations.

17   The Complaint alleges wrongful conduct of each of the QAD-related defendants (the so-

18   called "DN-Enterprise") commencing no later than January, 1998. Plaintiff's allegations indicate he

19   was aware of the injuries he is claiming to have arisen from defendants' alleged RICO activities

20   from their inception, and, in any event, well before March, 2004. [*See., e.g.,* Comp. ¶¶ 44, 51, 54-

21   56, 63-64, 66, 99] Indeed, the fact that many, if not all, of the same alleged injuries formed the basis

22   for Plaintiff's claims in both the Third Amended Complaint in Case No. CV784685 and his First

23   Amended Complaint in Case No. 04-1249-VRW, filed on December 27, 2001, and March 30, 2004,

24   respectively, clearly precludes Plaintiff from contending otherwise at this late date. Similarly, the

25   injuries claimed to have been inflicted by both the "SP-Enterprise" and the "DN-SP-enterprise"

26   were also clearly known to Plaintiff more than four years prior to the filing of the instant action, as

27   they, too, were pleaded as injuries in both the prior actions against St. Paul and in Case No. 04-

28   1249-VRW. [*See, e.g.*, RJN, Exh. B, at ¶¶ 25-26, 31, 68, 88, 111, 135]

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                        - 15 -

1

**C.     The Complaint Fails to State a Claim for Civil RICO Violations.**

2

As a threshold matter, Plaintiff's Second Cause of Action wholly fails to comply with the

3

pleading requirements of FRCP Rule 9(b), requiring that the circumstances of the claims be pleaded

4

with particularity, not in the conclusory manner adopted by Plaintiff.  *Edwards v. Marin Park, Inc.*,

5

356 F.3d 1058, 1065-66 (9th Cir. 2004)(FRCP Rule 9(b) applies to Civil RICO); *Lancaster Comm.*

6

*Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)(FRCP Rule 9(b) applies to

7

RICO claims founded on mail and wire fraud).  *See also*, *Feinstein v. Resolution Trust Corp.*, 942

8

F.2d 34, 42 (1st Cir. 1991)("It is not enough for a plaintiff to file a RICO claim, chant the statutory

9

mantra, and leave the identification of predicate acts to the time of trial.")

10

Plaintiff purports to allege predicate acts of mail fraud (18 U.S.C. §1341) and wire fraud (18

11

U.S.C. §1343).  To allege a violation of the mail fraud statute, it is necessary to show that the

12

defendants (1) formed a scheme or artifice to defraud; (2) used the United States mails or caused a

13

use of the United States mails in furtherance of the scheme; and (3) did so with the specific intent to

14

deceive or defraud. *United States v. Green*, 745 F.2d 1205, 1207-08 (9th Cir.), *cert. denied*, 474

15

U.S. 925, 106 S. Ct. 259, 88 L. Ed. 2d 266 (1985).  Similarly, wire fraud violations consists of (1)

16

the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of

17

the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud.

18

*United States v. Louderman*, 576 F.2d 1383, 1387-88 & n.3 (9th Cir.), *cert. denied*, 439 U.S. 896, 99

19

S. Ct. 257, 58 L. Ed. 2d 243 (1978).  These elements must be pleaded with particularity as to the

20

"time, place, and specific content" of the alleged false representations, which Plaintiff wholly fails

21

to do [Comp. ¶¶ 183.2 and 183.3], as he also fails to do with respect to the allegations of a violation

22

of 18 U.S.C. § 1512.

23

Plaintiff also alleges a predicate act is for "bank fraud" (18 U.S.C. §1344), alleged to have

24

arisen out of various payments by or between defendants QAD, St. Paul, and Wulff.[11]  There is

25

nothing in the Complaint that supports a claim for bank fraud, whether based upon the transactions

26

---

27

[11]  Although Plaintiff conclusorily alleges that "the acts complained of above by defendants …DOORDAN, DESILETS, CONNELL, LEE, and GPS fall under this category," the Complaint contains no allegations that

28

these defendants made or received any payments whatsoever, so these defendants are manifestly subject to dismissal on this claim given the absence of any reasonable basis to allege involvement in these acts.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   alleged or otherwise.  The elements for this offense are:  1) carrying out a scheme or plan to obtain

2   money or property from a federally chartered financial institution by making false statements or

3   promises; 2) knowing that the statements or promises were false; 3) the statements or promises were

4   material; and, 4) intent to defraud.  *See Ninth Circuit Model Jury Instruction* No. 8.106.  No such

5   allegations appear here, as the only use of banks alleged was payments by and between QAD, St.

6   Paul, and Wulff that were knowingly and willingly made, reached their intended recipients, and

7   were made for reasons fully disclosed between the payors and payees.  Thus, the conduct alleged

8   does not remotely resemble bank fraud.  *See, e.g.*, *United States v. McNeil*, 320 F.3d 1034, 1037

9   (9th Cir. 2003)(requiring that "there be an attempt to obtain…property from the bank by deceptive

10  means")

11        Plaintiff's last RICO claim is based on alleged criminal copyright infringement (18 U.S.C.

12  §2319 ) by QAD that has been "continuing and repeated…since at least 1998."  In addition to being

13  clearly subject to dismissal, on its face, as barred by the four-year RICO statute of limitations, the

14  Complaint wholly fails to show that this alleged "predicate act" of copyright infringement by QAD

15  has anything to do with the conduct of any of the alleged "enterprises" or with any "pattern of

16  racketeering activity" by any of the defendants.

17        Finally, given that each of the individual claims under Part I is insufficient, the allegations in

18  Part II of conspiracy liability for all defendants (including Andersen) under 18 U.S.C. §1642(d)

19  necessarily fail as well.  A RICO conspiracy claim under 18 U.S.C. § 1962(d) requires adequate

20  pleading of an underlying 18 U.S.C. §1962(c) RICO claim.  *See Simon v. Value Behavioral Health,*

21  *Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000), *overruled on other grounds*, *Odom v. Microsoft Corp.*,

22  486 F.3d 541 (9th Cir. 2007).

23        **D.     This Claim is Barred by the *Noerr-Pennington* Doctrine.**

24        To the extent that Plaintiff's RICO claims are based on alleged communications and/or

25  conduct relating to the ongoing litigation between Plaintiff and the other defendants, those claims

26  are subject to dismissal under the *Noerr-Pennington* doctrine.  Dismissal on this basis necessarily

27  includes ***all*** claims as to Mr. Connell, whose alleged RICO activities arise exclusively out of his

28  communications and conduct as litigation counsel to QAD and other QAD-related persons and

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

- 17 -

1  entities since 1998.  Furthermore, given that all alleged activities by the other QAD-related

2  defendants after early 1998 – and, indisputably, all such activities within the four years prior to the

3  filing of the complaint – also arise solely out of those defendants' litigation-related activities,

4  dismissal on *Noerr-Pennington* grounds is equally mandated as to those defendants.

5        Under the *Noerr-Pennington* doctrine, which derives from the First Amendment's guarantee

6  of the right to petition, those who petition any department of the government for redress are

7  generally immune from claims of statutory liability for their petitioning conduct. *Empress LLC v.

8  City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)(citing *Manistee Town Center v. City of

9  Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)).  It is well-established that litigation is within the

10  scope of petitioning conduct covered by the doctrine, and the Ninth Circuit has expressly held that

11  the doctrine extends to actions seeking to impose RICO liability.  *Sosa v. DirecTV, Inc.*, 437 F.3d

12  923, 937 (9th Cir. 2006).

13        In the litigation context, the doctrine applies to and protects not only petitions sent directly

14  to the court (i.e., pleadings and other court filings), but also "conduct incidental to the prosecution

15  of the suit."  *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525,

16  1528-29 (9th Cir. 1991), *aff'd* 508 U.S. 49, 113 S. Ct. 1920, 123 L.Ed.2d 611 (1993).  More

17  specifically, the Ninth Circuit has held that protected "incidental conduct" expressly includes

18  discovery communications (*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir.

19  2005), as well as communications between private parties (such as settlement communications) that

20  are "sufficiently relating to petitioning activity."  *Sosa*, 437 F.3d at 937.

21        All of the predicate acts alleged with respect to the QAD-related defendants (excepting only

22  Paragraph 183.5 (alleged criminal copyright infringement), which relates only to QAD and, as

23  discussed above, fails to support a RICO claim in any event) expressly involve court filings or

24  conduct incidental to the prior litigation.  *See,* Comp. ¶ 183.1 (based on alleged statements in court

25  filings and proceedings, and "related acts"); Comp. ¶¶ 183.2 and 183.3 (based on alleged schemes

26  and practices in "obstructing justice"; and, Comp. ¶ 183.4 (based on payments allegedly made in

27  connection with (i.e., "incidental to") the mediation proceeding and/or settlement agreement in the

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

– 18 –

1    underlying litigation).  Accordingly, all of those claims are subject to dismissal under the *Noerr-*

2    *Pennington* doctrine.

3    **III.    THE THIRD CAUSE OF ACTION FOR FRAUD MUST BE DISMISSED**
         **BECAUSE: (1) IT IS BARRED BY RES JUDICATA; AND, (2) IT FAILS TO**
4        **STATE A CLAIM FOR RELIEF.**

5            Plaintiff's Third Cause of Action, entitled "Fraud," is alleged only against St. Paul, QAD,

6    and Wulff.  It "re-alleges all of the allegations in paragraphs 1 – 199 above" [Comp. ¶ 200], declares

7    that those facts "plead with particularity a cause of action for fraud" against these defendants

8    [Comp. ¶ 201], and, for good measure, reiterates later that all elements of a fraud claim "have been

9    pleaded adequately" [Comp. ¶ 215].  It then proceeds to repeat the same basic allegations and legal

10   arguments already set forth by Plaintiff (and already dismissed by this Court) in Case No. 04-01249-

11   VRW concerning: (1) St. Paul's right (or the absence thereof) to settle litigation against the

12   Vedatech parties [Comp. ¶¶ 202-08]; (2) defendants' alleged misconduct and/or fraud in bringing

13   about the 2004 mediation in the QAD-FIRST-ACTION [Comp. ¶¶ 210-13, 216-17]; (3) the alleged

14   strategy of QAD and St. Paul to prevent the Vedatech parties from obtaining "competent legal help

15   to pursue the claims against QAD and ST. PAUL vigorously" [Comp. ¶ 214]; and, (4) St. Paul's

16   alleged misuse of the settlement agreement with QAD to deny various benefits Plaintiff claims are

17   owed by St. Paul to the Vedatech parties. [Comp. ¶ 218]

18           A comparison of the material allegations in the instant complaint with those contained in the

19   First Amended Complaint in Case No. 04-01249-VRW easily confirms the virtual identity between

20   this fraud claim and that previously alleged by Plaintiff  -- and dismissed by this Court -- in Case

21   No. 04-01249-VRW.  *See, e.g.*, RJN, Exh. B, ¶¶ 103 (concealment of reasons for mediation); 104

22   (concealment of prior relationships between parties and Wulff); 117 (fraudulent and collusive

23   scheme by QAD and St. Paul to damage Plaintiff); 135 (improper settlement agreement to avoid

24   malicious prosecution); 152(coercion of Plaintiff to participate in mediation).

25           Indeed, the instant complaint purports to allege only a single "new" allegation of conduct not

26   specifically pleaded before: the alleged "misrepresentations regarding the non-disclosure of (a) the

27   fact that ST. PAUL was and had been QAD's CGL insurers from April 2001 through at least August

28   2007 now [sic], and that ST. PAUL was receiving premiums orders of magnitude more than the

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1    much smaller amounts it received from the Vedatech parties." [Comp. ¶ 201]  Just as he alleged in

2    Case No. 04-1249-VRW that defendants failed to reveal to the Court or to the Vedatech parties that

3    St. Paul (and/or its attorneys) had a prior relationship with Wulff, Plaintiff now alleges that

4    defendants also failed to reveal that "ST. PAUL was QAD's insurers [sic]" at the time of the

5    mediation. [Comp. ¶ 112]  As a result, in language virtually identical to that used in Case No. 04-

6    01249-VRW, Plaintiff now asserts that "[i]f SUBRAMANIAN had known of the conflict of interest

7    between ST. PAUL and QAD, he would have left in the morning and reported that to Judge

8    Komar," [Comp. ¶ 131]  and presumably kept the mediation from proceeding.[12]

9        In sum, with the sole exception of this additional allegation of non-disclosure by defendants,

10   the fraud claim in the instant Complaint is, in all material respects, identical to that in Case No. 04-

11   1249-VRW, which this Court dismissed, with prejudice, by its June 22, 2005, Order.  Because that

12   "new" allegation is, in fact, neither a material nor significant addition to the Plaintiff's claim, the

13   Third Cause of Action in this matter deserves identical treatment.  It is barred by *res judicata*, and,

14   substantively, it fails to establish at least two of the elements necessary to state a fraud claim.

15       **A.       This Claim is Barred by Res Judicata.**

16       The doctrine of *res judicata* clearly bars Plaintiff's attempt to resurrect his fraud claim

17   against any of the defendants, including QAD.  "[A] federal court sitting in diversity must apply the

18   *res judicata* law of the state in which it sits. [citation omitted]"  *Costantini v. Trans World Airlines*,

19   681 F.2d 1199, 1201 (9th Cir. 1982).  As this Court explained in *Jefferson v. Carey*, 1999 U.S. Dist.

20   LEXIS 11470, at *3 (N.D. Calif. 1999):

21           Under California law, "the doctrine of *res judicata* gives certain conclusive effect to
22           a former judgment in a subsequent litigation involving the same controversy. It seeks
             to curtail multiple litigation causing vexation and expense to the parties and wasted
             effort and expense in judicial administration.'" *Nakash v Superior Court, 196 Cal.*
23           *App. 3d 59, 67, 241 Cal. Rptr. 578 (1988)*, quoting 7 Witkin, *California Procedure* §
             188 (3d ed 1985). To determine whether plaintiff is seeking to relitigate the same
24           controversy, California applies the primary right theory, according to which

25               a cause of action consists of 1) a primary right possessed by the plaintiff, 2)
                 a corresponding primary duty devolving upon the defendant, and 3) a delict
26

27   ───────────────────────
     [12]  In Case No. 04-01249-VRW, Plaintiff alleged that "[i]f SUBRAMANIAN had known that Mr. Greenan or
28   his firm or ST. PAUL had personally conducted prior mediations of any sort with WULFF, or if ST. PAUL
     or WULFF had disclosed such matters to him, as they should have, SUBRAMANIAN would have withdrawn
     before the start of the mediation." [RJN, Exh. B, at ¶ 54]

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'            - 20 -
Motion to Dismiss [FRCP 12(b)(6)]

1

2

> or wrong done by the defendant which consists of a breach of such primary right and duty. Thus, two actions constitute a single cause of action if they both affect the same primary right.

3

4

*Acuna v Regents of the University of California*, 56 Cal. App. 4th 639, 648 (1997), quoting *Gamble v General Foods Corporation*, 229 Cal. App. 3d 893, 898, 280 Cal. Rptr. 457 (1991).

5

6

7

8

9

10

All of the factors justifying application of *res judicata* exist in this matter.  On its face, this fraud claim is virtually identical to that already dismissed, with prejudice, in Case No. 04-01249-VRW.  The parties to the claim are identical.  The claim is based on the same alleged primary right and purported injury thereto – that is, the alleged impairment of Plaintiff's ability to defend and prosecute his litigation against QAD and St. Paul resulting from the allegedly improper 1994 mediation and subsequent settlement agreement.

11

12

13

14

15

16

17

18

19

20

The only "difference" between Plaintiff's fraud claim in this case and that in Case No. 04-01249-VRW is that, in addition to alleging defendants' fraudulent concealment of a prior relationship between St. Paul and Wulff, Plaintiff now alleges that defendants also fraudulently concealed one aspect of a prior relationship between St. Paul and QAD.  As previously noted, however,  the complaint in Case No. 04-01249-VRW *already* contained allegations of improper conspiracy and collusion between St. Paul and QAD.  [*See* page 9, fn. 8, *supra*]  Thus, as far as Plaintiff's theories of liability are concerned, the new allegations, even construed most favorably to Plaintiff, are simply cumulative, evidentiary allegations setting forth similar conduct to that contained in the previously-dismissed claim.  As such, these allegations do nothing to preclude the application of *res judicata* to bar this claim.  They clearly arise out of the same nucleus of events.

21

22

23

24

25

A plaintiff cannot avoid the bar of *res judicata* merely by alleging additional conduct not set forth in the prior action, nor even by pleading a new legal theory.  "Rather, the crucial question is whether [plaintiff] has stated in the instant suit a cause of action different from those raised in his first suit. [footnote/citations omitted]"  *Costantini*, 681 F.2d at 1201.  Here, the answer to that question is indisputably "No," and, as a result, the bar of *res judicata* clearly applies.

26

**B.    The Complaint Fails to State A Claim for Fraud.**

27

28

Even if addition of the new allegations were sufficient to preclude *res judicata*, the claim would still be subject to dismissal, with prejudice, on the same substantive basis stated by this Court

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                    - 21 -

1  in dismissing Plaintiff's fraud claim in Case No. 04-01249-VRW.  While stating that Plaintiff's

2  earlier allegations were sufficient to plead the first two elements of fraud (knowing false

3  representation with intent to deceive or induce reliance), this Court concluded that those allegations

4  – i.e., regarding defendants' failure to disclose St. Paul's alleged prior relationship with Wulff  --

5  did not, and could not, given other facts alleged by Plaintiff, establish either the third or fourth

6  elements of such a claim (Plaintiff's justifiable reliance and damages resulting from the fraud).  *See*

7  Dismissal Order, 2005 WL 1513130, at *20 ("[Plaintiffs] cannot prove facts showing their

8  attendance at the mediation was based upon justifiable reliance on defendants' alleged omissions;

9  their attendance was based upon court order.  Because they can offer no facts to prove this third

10  element of fraud, [plaintiffs] have failed to state a cause of action for fraud.")

11        The same reasoning applies with equal force here to the additional allegations that

12  defendants failed to disclose facts purportedly showing an improper prior relationship between St.

13  Paul and  QAD.  The asserted relevance of the alleged non-disclosure is identical to that previously

14  alleged -- that "[i]f SUBRAMANIAN had known of the conflict of interest between ST. PAUL and

15  QAD, he would have left in the morning and reported that to Judge Komar." [Comp. ¶ 131]

16  However, for the same reason that this assertion failed with respect to the alleged non-disclosure of

17  St. Paul's relationship with Wulff, that is, lack of causation, it fails here.

18

19  **IV.    THE FOURTH CAUSE OF ACTION FOR UNFAIR COMPETITION**
   **MUST BE DISMISSED BECAUSE: (1) IT IS BARRED BY RES JUDICATA;**

20  **(2) IT IS BARRED BY THE FOUR-YEAR STATUTE OF LIMTATIONS; AND,**
   **(3) IT FAILS TO STATE A CLAI M FOR RELIEF.**

21        The Fourth Cause of Action for Unfair Competition under Calif. Business & Professions

22  Code §§ 17200 *et seq*., is alleged against QAD, Mr. Doordan, and Ms. Lee, as well as certain other

23  defendants (but *not* including Messrs. Connell or Desilets).  Mr. Subramanian's attempt to resurrect

24  an Unfair Competition claim as to any defendant is patently frivolous on several grounds.

25  Moreover, Mr. Subramanian's continued baseless pursuit of this claim against defendants

26  demonstrates bad faith on plaintiff's part that cannot reasonably be disputed.  Having been fully

27  apprised on numerous prior occasions – including by this Court -- of the fatal defects in this claim

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

– 22 –

1  based on the conduct and injuries alleged,  Mr. Subramanian nevertheless heedlessly persists in

2  making it, thereby wasting the time and resources of both defendants and this Court.

3       **A.       This Claim is Barred by Res Judicata.**

4       As a threshold matter, this claim is clearly barred by *res judicata*. Ms. Lee obtained a

5  summary judgment against Mr. Subramanian in the Superior Court dismissing an Unfair

6  Competition claim against her that was based on virtually identical allegations regarding her

7  activities at QAD in 1997 and 1998.  Similarly, QAD (as well as St. Paul and Wulff) obtained

8  dismissal of the Unfair Competition claim against those defendants in Case No. 04-1249-VRW that,

9  again, was based on virtually identical allegations.  Finally, although the earlier unfair competition

10 claim against Mr. Doordan was dismissed voluntarily, without prejudice, he is entitled to assert *res*

11 *judicata* based on this Court's Dismissal Order as a result of his manifest privity with QAD.

12      **B.       This Claim is Barred by the Statute of Limitations.**

13      With respect to both Ms. Lee and Mr. Doordan (and, if not entirely, at least in substantial

14 part with respect to QAD as well), this claim is clearly barred by the four-year statute of limitations

15 applicable to actions for unfair competition under Calif. Bus. & Prof. Code §17200.  See Calif. Bus.

16 & Prof. Code §17208.  The alleged conduct by these defendants took place at least ten years or more

17 before the filing of the present Complaint in March, 2008.[13]

18      **C.       The Complaint Fails to State a Claim for Unfair Competition.**

19      Finally, for reasons already brought to Mr. Subramanian's attention on numerous prior

20 occasions, including in this Court's Dismissal Order in Case No. 04-1249-VRW [RJN, Exh. E, at p.

21 17], the claim for unfair competition against all defendants must be dismissed as a substantive

22 matter because it clearly alleges injury and seeks relief inappropriate and unavailable under

23 California law.  The Complaint allegations themselves clearly reveal Plaintiff's awareness of the

24 limitation on remedies for unfair competition, both in its use of "Restitutionary disgorgement of

25 profits" as a sub-heading and in the tortured – and patently absurd –  attempts to describe the

26

---

27 [13] Ms. Lee's alleged filing of "false declarations," and, indeed, any other litigation filings by any defendants
within the four years prior to the filing of this action cannot "save" it for statute of limitations purposes.  As
28 discussed above, such filings or other publications fall clearly within the "litigation privilege" established by
Calif. Civil Code § 47(b) and cannot provide the basis for any claim under state law.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   injuries claimed and relief sought as something *other* than "damages."  Thus, for example , the

2   Complaint alleges that defendants have been "enriched by not having to pay VEDATECH for the

3   damages [they] would have otherwise paid pursuant to liability in the QAD-FIRST-ACTION … ."

4   [Comp. ¶¶ 227, 229, 230] , and it seeks to have the defendants "disgorge" the amount by which they

5   were so "enriched."  It is hard to imagine a more transparent (or improper) prayer for recovery of

6   damages.

7           Thus, despite being fully aware that he may not seek such relief under this theory, Plaintiff

8   persists in attempting to do so.  Plaintiff's bad faith in doing so is undeniable, and, in any event, the

9   cause of action must be dismissed, in its entirety and as to all defendants, with prejudice, for failure

10  to set forth a claim for relief.

11  **V.    THE FIFTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE:
        (1) IT IS BARRED BY RES JUDICATA; (2) IT IS UNTIMELY UNDER
12      THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS; AND,
        (3) IT FAILS TO STATE A CLAIM FOR RELIEF.**

13

14          Plaintiff's Fifth Cause of Action, entitled "Violation of Civil and Constitutional Rights,"

15  though (uncharacteristically) brief, borders on unintelligible.  Plaintiff apparently seeks to set forth a

16  claim that his civil rights were violated when he was required to participate in the March 2004

17  mediation.  Alternatively, he appears to claim that he was denied the right to a jury trial in the

18  underlying litigation as a result of the fact that, following that mediation, QAD dismissed its claims

19  against him as part of the settlement agreement between QAD and St. Paul. [Comp. ¶¶ 236-37][14]

20          **A.      This Claim is Barred by Res Judicata.**

21          To the extent this claim represents simply a different legal theory by which Plaintiff seeks to

22  attack the 2004 mediation and/or the St. Paul-QAD settlement agreement, it is barred by *res*

23  *judicata*, for the same reasons discussed above. Furthermore, as noted above, the *res judicata* bar

24  applies with respect to all QAD-related defendants named in this claim, (i.e., Mr. Doordan and Mr.

25  Desilets), because they were clearly in privity with QAD.

26          **B.      This Claim is Barred by the Statute of Limitations.**

27

28  ---
    [14]  Plaintiff voluntarily dismissed the VTCA in May, 2006, shortly before trial was to commence on that
    action. Thus, his own voluntary dismissal was what "deprived" him of a jury trial on those claims.

1    The Fifth Cause of Action is also barred by the applicable statute of limitations. "The statute

2   of limitations for *section 1983* actions is determined by state law. *Harding v. Galceran, 889 F.2d*

3   *906, 907 (9th Cir. 1989), cert. denied, 498 U.S. 1082, 112 L. Ed. 2d 1040, 111 S. Ct. 951 (1991).*

4   *Section 1983* actions are characterized as personal injury actions for statute of limitations purposes.

5   *Id.*" *Trimble v. City of Santa Rosa*, 49 F.3d 583 (9th Cir. 1995). In California, since 2002, the

6   statute of limitations for such actions is two years. Cal. Civ. Proc. Code §335.1.

7    The mediation giving rise to this litigation took place on March 12, 2004. Mr. Subramanian

8   filed his first action against Wulff on March 30, 2004, alleging essentially the same wrongdoing by

9   Wulff in conducting the mediation as alleged here. Thus, to the extent this claim purports to allege

10  a Section 1983 claim against Wulff, or against any other defendants (including QAD and Messrs.

11  Doordan and Desilets), for participating and/or conspiring with Wulff in his conduct relating to the

12  mediation, the statute of limitations on any such claim clearly commenced no later than March,

13  2004, and expired two years later (i.e., March, 2006) – *two years* before this action was filed.

14   Similarly, to the extent this claim purports to be based on the St. Paul-QAD settlement

15  agreement, or even on QAD's dismissal of claims that resulted therefrom, it is also manifestly

16  untimely. QAD and St. Paul entered into the settlement agreement at issue in March, 2004, a fact

17  known to Plaintiff very shortly after it occurred [Comp. ¶ 144]. Then, when that litigation was

18  remanded to state court following Plaintiff's improper removal(s), the settlement payment was made

19  and QAD filed its dismissals of Mr. Subramanian and the Vedatech parties in August, 2005. [Comp.

20  ¶ 158] Again, the filing of these dismissals was fully known to Plaintiff at the time. Thus, even if

21  the two-year statute of limitations were not deemed to have commenced running until August, 2005,

22  it *still* would have expired no later than August, 2007 -- *more than six months* before this action

23  was filed. In sum, however one interprets this claim, it should be dismissed, with prejudice, as

24  barred by the statute of limitations.

25  **C.    The Complaint Fails to State a Claim for Violation of Civil Rights.**

26   Finally, even if this claim were not otherwise barred due to *res judicata* and the statute of

27  limitations, it would still be subject to dismissal for failure to state a claim for relief as to the QAD-

28  related defendants. To state a claim under §1983, Plaintiff must establish that he was deprived of a

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]

- 25 -

1   right secured under the Constitution or laws of the United States and that the deprivation was

2   committed under color of state law.  The "under-color-of-state-law" element excludes from its reach

3   " 'merely private conduct, no matter how discriminatory or wrongful… .' " *Blum v. Yaretsky*, 457

4   U.S. 991, 1002, 73 L.Ed.2d 534, 102 S.Ct. 2777 (1982)(quoting *Shelley v. Kraemer*, 334 U.S. 1, 13,

5   92 L.Ed. 1161, 68 S.Ct. 836 (1948).  All relevant conduct alleged here by the QAD-related

6   defendants was clearly private.

7                                               **CONCLUSION**

8          For all of the foregoing reasons, QAD, Mr. Doordan, Mr. Connell, and Ms. Lee respectfully

9   request that the Court reject Plaintiff's latest attempt to revive these moribund claims by dismissing

10  the entire Complaint, and each cause of action therein, with prejudice.

11  Dated: August 4, 2008

12                                           WILLIAM D. CONNELL
                                             SALLIE KIM
13                                           GCA LAW PARTNERS LLP

14                                           By:    *William D. Connell*        .
                                                    William D. Connell
15

16                                           By:    *Sallie Kim*                .
                                                    Sallie Kim
17

18                                           Attorneys for Defendants QAD Inc.,
                                             John Doordan, Lai Foon Lee, and
19                                           William D. Connell

20

21

22

23

24

25

26

27

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Memorandum in Support of QAD Defendants'
Motion to Dismiss [FRCP 12(b)(6)]                       –  26  –